ROBIE & MATTHAI
A Professional Corporation
Edith R. Matthai, Esq. (SBN 66730)
Email: ematthai@romalaw.com
T. John Fitzgibbons, Esq. (SBN 238439)
Email: jfitzgibbons@romalaw.com
350 S. Grand Avenue, Suite 3950
Los Angeles, California 90071-2609
Telephone: (213) 706-8000
Facsimile: (213) 706-9913

Attorneys for Defendant THOMAS H. PETERS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWON JONES, an individual and California taxpayer,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL N. FEUER, in his individual and official capacities; JAMES P. CLARK, in his individual and former official capacities; THOMAS H. PETERS, in his individual and former official capacities<br><br>                    Defendants, | CASE NO. 2:20-cv-11502-VAP-JCx<br><br>**DEFENDANT THOMAS H. PETERS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>DATE:          June 21, 2021<br>TIME:          2:00 p.m.<br>CTRM.:       First Street Courthouse – 8A<br><br>[Assigned to the Hon. Virginia A. Phillips]<br><br>Filing Date:       December 21, 2020<br>Trial Date:        None Set |

1

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

ARGUMENT............................................................................................................1

      I.     The section 526a claim against Peters should be dismissed
            because Peters never had authority and did not authorize the
            challenged expenditures. ........................................................................1

CONCLUSION.........................................................................................................8

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

# TABLE OF AUTHORITIES

CASES

3
4

*Edwards v. Arthur Anderson LLP,*
   44 Cal.4th 937 (2008) ............................................................5

5

*Leider v. Lewis,*
   2 Cal. 5th 1121 (2017) ..........................................................5

6

*Peninsula Guardians, Inc. v. Peninsula Health Care Dist.,*
   200 Cal. App. 4th 1108 (2011) .............................................5

7
8

*Stanson v. Mott,*
   17 Cal.3d 206 (1976) ...................................................passim

9

*Stevens v. Geduldig,*
   42 Cal. 3d 24 (1986) .............................................................5

10
11

*Vargas v. City of Salinas,*
   46 Cal.4th 1 (2009) ...............................................................5

12

*Weatherford v. City of San Rafael,*
   2 Cal. 5th 1241 (2017) ..........................................................5

13
14

STATUTES

Cal. Code Civ. Proc. §1021.5 ....................................................2

15

Cal. Code Civ. Proc. §526a ...............................................passim

16

Cal. Gov. Code §820.2 ...............................................................6

17

Cal. Labor Code §2802................................................................5

18
19
20
21
22
23
24
25
26
27
28

PETERS' REPLY IN SUPPORT OF MOTION TO
DISMISS                                                                2:20-cv-11502- VAP-JCx

**INTRODUCTION**

In his motion to dismiss, Thomas Peters demonstrated that Antwon Jones's section 526a claim against him failed for six reasons. Those grounds were discussed thoroughly in the motion, and most of them overlap with grounds raised by the other defendants, Michael Feuer and James Clark. Peters joins their arguments on all those grounds. This brief, however, focuses on Peters' first argument: that the section 526a claim against him should be dismissed because he never had authority to authorize the expenditures Jones challenges.

Because he cannot overcome that argument, Jones instead argues that the statute allows claims against officials whose acts or omissions cause a government to expend funds. That is not the legal standard; if it were, it would expose government officials to breathtaking potential liability. Under section 526a and the cases that have cited it, the only government officials who may be held personally liable are those who "either retain custody of public funds or are authorized to direct the expenditure of such funds"—only those "officers who control public funds." *Stanson v. Mott*, 17 Cal.3d 206, 225, 226 (1976). Peters was never such an official; the Complaint and Opposition do not allege otherwise. Because of that, section 526a simply does not apply to him, and the claim against him should be dismissed.

**ARGUMENT**

**I.  The section 526a claim against Peters should be dismissed because Peters never had authority and did not authorize the challenged expenditures.**

The Opposition claims that when he was at the City Attorney's Office, Peters engaged in a host of illegal and unethical acts which caused (or may cause) the expenditure of public funds and, thus, a taxpayer action for damages lies against him, personally, under California Code of Civil Procedure 526a.

1

1    The text of that statute says nothing about suits for damages; it speaks only to

2  equitable relief. The Opposition nevertheless asserts that *Stanson v. Mott*, 1 Cal.3d

3  206 (1976), provides authority to recover millions from Peters under 526a since his

4  conduct allegedly "…*caused* the City to illegally expend and/or waste millions of

5  dollars…." (Opp. p. 10, ll. 18-19, emphasis added). Plaintiff claims *Stanson*

6  supports the notion that "[a] plaintiff bringing an action under section 526a can seek

7  repayment from *responsible* local officials." (Opp. p. 12, ll. 1-2, emphasis added).

8  The dispositive questions left unanswered by the Opposition, but directly answered

9  by *Stanson* itself, are (a) who is a "responsible local official" and (b) for just what is

10  that official potentially responsible?

11    The Opposition's pinpoint citation to exactly where *Stanson* authorizes a suit

12  for damages against a former local official such as Peters covers six pages—222-

13  227. (Opp. p. 12, l.3.) The Opposition offers neither a quotation nor a paraphrasing

14  of the case's language. It is as if the Opposition hopes this Court will spirit out of

15  these half-dozen pages a radical new rule allowing taxpayer damage suits (with

16  potential attorney's fees under Cal. Code Civ. Proc. 1021.5) against any current or

17  former government officer, agent, or other person acting on the government's

18  behalf, provided something done (or not done) can be characterized as wrongful.

19    Fortunately for all governmental employees—and governmental lawyers in

20  particular—that is not even close to what *Stanson* holds. Instead, the California

21  Supreme Court held in *Stanson* that "[w]e conclude [contrary to earlier precedent]

22  that *such public officials* must use 'due care,' i.e. reasonable diligence,[1] *in*

23  *authorizing* the expenditure of public funds, and may be subject to personal liability

24

---

25  [1] The "failure to use reasonable care to prevent harm" is the definition of negligence
26  under California law. Judicial Council of California Civil Jury Instructions, No. 401
(Nov. 2020). The rule of *Stanson* can thus be fairly said to impose a negligence
27  standard upon those to whom it applies.

28

PETERS' REPLY IN SUPPORT OF MOTION TO
DISMISS                                                    2:20-cv-11502- VAP-JCx

1  for improper *expenditures* made in the absence of such due care." *Id.* at 226-27

2  (emphasis added).

3       The identity of "such public officials" is revealed earlier in the paragraph just

4  quoted. The Court notes it is seeking to determine "…under what circumstances a

5  public official may be held personally liable for an *unauthorized expenditur*e of

6  public funds…." *Id.* at 226 (emphasis added). After exploring at length a then-recent

7  expansion in the scope of the California Tort Claims Act, the Court held "[i]n light

8  of the considerable authority enjoyed by officials *who control public funds…"* the

9  standard of care to which public officials who may *authorize* the *expenditure* of

10 public funds are to be held is "due care." *Id.* (emphasis added.) This is the relevant

11 rule of *Stanson.*

12      Notwithstanding this express limitation of liability to those who control

13 public funds and improperly authorize the expenditure of those funds, neither the

14 Complaint nor the Opposition alleges that Peters was ever "in control of public

15 funds," nor is he said to have ever been empowered to "authorize" the "expenditure"

16 of a single cent of City or DWP funds. In truth, Peters never had any such authority,

17 as the Opposition concedes *sub silentio.* Indeed, and fatal to the sole claim against

18 Peters, the Opposition fails to rebut the Complaint's express admission (¶249) that

19 Peters resigned his public employment in March of 2019, long before the

20 "expenditure" of any of the monies at issue is alleged to have occurred.[2]

21

22

---

23 [2] As noted in Peters' Motion and the RJN, the $2.5 million in sanctions imposed by
the trial court is on appeal and thus has yet to be authorized for payment by someone
24 with control of relevant public funds. Obviously, if the appeal succeeds, no
sanctions will ever be authorized for payment. If no sanctions are paid, logic dictates
25 that the attorney's fees expended in defeating the sanctions effort were (and will be)
neither wasteful nor illegal. A ripeness issue thus emerges. Too, how a public
26 official in control of public funds could lawfully refuse to authorize payment of a
judicially imposed sanctions award once that award is final is not addressed in the
27 Opposition.

28

3

Further, the tense used in the rule of *Stanson*—that a public official may be personally liable when the official fails to use due care "in authorizing … improper expenditures" (*Id.* at 226-27)—strongly implies, if not establishes, a temporal requirement that the authorizing public official in control of the relevant public funds must be acting at the time those expenditures are authorized, not, as alleged here, months or years earlier.

In conceding Peters was no longer a public employee when any relevant expenditure was authorized by whomever authorized it (a person whose identity has not been alleged), and in likewise failing to allege Peters ever had control of public funds or the authority to authorize their expenditure, the Opposition exempts Peters from the population of City or DWP employees who could have been in control of (or may come to be in control of) public funds, and could have made (or may someday make) the decision to authorize expenditure of those funds.[3]

Predictably, no court has ever affirmed the deployment of 526a in the manner urged by plaintiff. As revealed by the cases cited in the Opposition (as well as by many cases not cited in the Opposition), 526a is traditionally a mechanism by which taxpayers who object to the "illegal" or "wasteful" expenditure of public money *in connection with a political campaign* may seek judicial intervention to stop such expenditures and to (at least theoretically) hold personally responsible those public officials in control of that money who authorized such expenditures.[4] *See, e.g.,*

---

[3] With respect to the funds paid to expert ethicist Ellen Pansky, the Opposition asks the Court to grant leave to retract the Complaint's admission that Peters was not an actor who even "caused" the City to pay Pansky. (Opp. p. 24, ll. 17-19; fn. 9). Under *Stanson*, however, the issue is whether a public official "who controls public funds" failed to use "due care" in "authorizing the expenditure of public funds." Thus, leave to amend the Complaint to allege Peters "caused" the City to hire Pansky, even including Peters' "involvement in hiring Pansky," would get plaintiff no closer to satisfying the commands of *Stanson.*

[4] Our research found no case in which a current or former governmental employee has ultimately been held personally liable for damages under 526a, even in the context of political expenditures. The Opposition points to none.

4

*Stanson, supra* (alleged 526a violation resulting from official authorizing expenditure of public funds for promotional campaign materials supporting a bond measure); *Stevens v. Geduldig*, 42 Cal. 3d 24 (1986) (alleged advocacy by public officials of a Reagan gubernatorial era tax reduction ballot measure; finding of personal liability reversed); *Vargas v. City of Salinas,* 46 Cal.4th 1 (2009) (supporters of local ballot measure seeking to repeal a utility tax sue municipality for allegedly improperly "campaigning" against that measure with public funds); *Peninsula Guardians, Inc. v. Peninsula Health Care Dist.,* 200 Cal. App. 4th 1108 (2011) (public funds being allegedly wastefully expended to distribute campaign materials supporting construction of a public hospital).

There is a state Supreme Court case in which a taxpayer invoked 526a to enjoin the authorization of an expenditure of public money for a city-owned zoo's elephant exhibit which was claimed to have been cruel. *Leider v. Lewis,* 2 Cal. 5th 1121 (2017). Other situations admittedly exist (*e.g. Weatherford v. City of San Rafael,* 2 Cal. 5th 1241 (2017) (taxpayers object to a city's practice of impounding vehicles allegedly without proper notice)), but nothing remotely resembles the instant matter.

Moreover, even if the rule of *Stanson* was somehow unclear—and it is not—and even if room existed for debate about the liability of a former employee like Peters despite the plain holding of *Stanson* itself—and it does not—plaintiff's argument flies in the face of California public policy favoring the indemnification of employees by their employers. *See, e.g.,* Cal. Labor Code §2802; *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, 952 (2008) ("California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment …. The purpose of Lab. Code §2802 is 'to protect employees from suffering expenses in direct consequence of doing their jobs'… Lab. Code

5

§2802 'shows a legislative intent that duty-related losses ultimately fall on the business enterprise, not on the individual employee'.") (citations omitted). Plaintiff's argument also would make 526a an end run around the immunity provided to governmental employees for exercising discretion. Cal. Gov. Code §820.2.

Notwithstanding this public policy, the Opposition's foundational argument is that 526a may be used to hold public employees personally liable to reimburse their governmental employer when such employee's alleged negligence (or worse) has "caused" the employing public entity to expend funds. Plaintiff's conception would invite unbridled and crippling harassment of public officials. Were courts to endorse plaintiff's view, every municipal settlement in litigation could be challenged under 526a by any taxpayer who felt the settlement was "too big" and blamed as a reason some municipal lawyer's alleged failure to use due care in, *e.g.*, not trying the case, or taking the wrong depositions, or propounding the wrong discovery, or not providing a complete and accurate summary of the case to those governmental decision makers who actually did control public funds and were authorized to expend them to settle matters. Any of these—and boundless other—plausible critiques of attorney conduct which could be characterized as negligent and to have thereby "caused" a waste of public money would then expose that attorney to unlimited personal liability. Indeed, nothing would prevent a taxpayer from bringing a 526a action against a government attorney for supposedly wasteful litigation conduct, even if that taxpayer is simultaneously a plaintiff in the very case in which the purportedly wasteful conduct is alleged to be occurring.

In sum, plaintiff seeks to make public employees personal indemnitors for any payment of public funds traceable to the employees' asserted misconduct. Were plaintiff's vision of 526a liability to become the law, every public employee – every police officer, every school bus driver, every municipal janitor, every public hospital

6

doctor or nurse, and more—whose alleged failure to use due care can be said to have eventually "caused" a public expenditure to be authorized would face ruinous personal liability. And that exposure would include not just the reimbursement of monies paid out in settlements and judgments, but also the cost of remediating a malfunctioning system (as was, for example, the case with the multi-million dollar DWP customer care and billing system purchased from PwC notwithstanding irregularities in the purchasing process that DWP employees allegedly failed to properly address (*see* Complaint ¶ 45)), the cost of additional equipment (*e.g.*, the multi-million dollar implementation of body cameras for LAPD officers, department-wide, arguably due to one or more officers' alleged misconduct), or the cost of extensive retraining (the payment of overtime and other costs, for example, to retrain all sanitation workers in safe driving techniques following a tragic accident). Such a staggering expansion of potential governmental employee personal liability would chill the actions of such employees (and the desire of anyone to seek public employment) to absolute zero.

Contrary to the claims in the Opposition, the *Stanson* rule merely allows suit against the few public employees who do control public funds and are empowered to authorize their expenditure. *Stanson* does not create personal liability for the vast array of public employees who daily engage in conduct that, for want of due care, may cause the eventual expenditure of public money. Plaintiff's attempt to radically expand the ambit of 526a liability so far beyond – indeed, breathtakingly beyond— what is authorized by the *Stanson* rule should only succeed following contemplative legislative action by the Assembly, Senate and Governor, or by an express recasting and expansion of the rule by the California Supreme Court itself.

Until such an extraordinary change in the law occurs, public employees (such as Peters), who are merely alleged to have acted in a manner which ultimately "caused" public funds to be authorized for expenditure by someone in control of the

7

relevant public fisc, must be excused from any suit seeking repayment of that expenditure, no matter how heinous the "causing" employee's acts are claimed to have been. No conceivable amendment to the complaint can overcome the limitations on 526a liability. The motion to dismiss should be granted.

## CONCLUSION

Because Thomas Peters never had authority over public funds nor authorized the expenditures challenged in the Complaint, section 526a does not apply to him. The Complaint against him should be dismissed without leave to amend.

DATED: June 7, 2021

ROBIE & MATTHAI
A Professional Corporation

By: /s/ Edith R. Matthai
EDITH R. MATTHAI
T. JOHN FITZGIBBONS
Attorneys for Defendant THOMAS H. PETERS