1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Antwon Jones,

        Plaintiff,

        v.

City of Los Angeles, et al.,

        Defendants.

2:20-cv-11502-VAP-JCx

**Order GRANTING in Part Motion to Dismiss (Dkt. 24).**

12  Before the Court are three Motions to Dismiss Plaintiff Antwon

13  Jones's Complaint filed by Defendant Thomas Peters, Defendants the City

14  of Los Angeles and Michael Feuer, and Defendant James Clark.  (Dkts. 21,

15  24, 25.)  Plaintiff opposes the Motions.  (Dkts. 34–36.)

16

17  After considering all papers filed in connection to the Motions, as well

18  as the arguments advanced at the hearing, the Court **GRANTS in part** the

19  Motion to Dismiss filed by the City of Los Angeles and Michael Feuer.  (Dkt.

20  24.)  For the reasons stated herein, the Court does not reach the Motions to

21  Dismiss filed by Defendants Thomas Peters and James Clark.  (Dkts. 21,

22  25.)

23

24  **I. BACKGROUND**

25  This action challenges the propriety of the named Defendants' alleged

26  participation in, and cover-up of misconduct related to, the settlement of a

lawsuit over the 2014 billing practices of the Los Angeles Department of Water and Power ("LADWP"), a municipal agency of the City of Los Angeles ("City").[1]  (Compl. ¶¶ 1, 21.)  In 2013, the LADWP contracted with consulting firm PricewaterhouseCoopers LLP ("PwC") to implement a new billing system.  (*Id.* ¶ 1.)  The implementation of the billing system the following year resulted in overcharges to customers for utility services.  (*Id.*)

Plaintiff Antwon Jones was one such customer.  (*Id.* ¶ 2.)  In late 2014, attorney Paul Paradis contacted Plaintiff regarding a potential class action lawsuit related to the overcharges.  (*Id.* ¶ 3.)  In April 2015, Plaintiff was named the putative class representative in a class action against the City, titled *Jones v. City of Los Angeles*, Los Angeles Superior Court, No. BC577267 ("*Jones* Class Action").  (*Id.* ¶ 4.)  The case was assigned to Judge Elihu M. Berle.[2]  In June 2015, just six weeks after the *Jones* Class Action was filed and before responsive pleadings had been filed or discovery commenced*,* the parties participated in private mediation.  (*Id.* ¶¶ 136–38.)  The parties thereafter entered into a settlement agreement, which was approved by Judge Berle in 2017.  (*Id.* ¶ 5.)  The terms required the City to, *inter alia*, repay overcharged bills, commit funds to remediate the billing system, and pay $19 million in attorneys' fees including approximately $11.7 million to counsel of record in the *Jones* Class Action.  (*Id.* ¶ 183.)

---

[1] The "background" section is based on the factual allegations of the Complaint, which are assumed to be true for purposes of this Order.

[2] By this time, four class actions had been filed asserting similar claims in connection with the City's billing system.  (Compl. ¶ 46.)  These class actions, the *Jones* Class Action, and the City's suit against PwC, discussed below, were deemed related and proceeded before Judge Berle.  (*Id.* ¶ 133.)

2

United States District Court
Central District of California

1  Except for limited carveouts, the settlement agreement included a broad

2  release of class members' claims.  (*Id.* ¶ 184.)

3

4      Plaintiff now alleges "collusion and fraud on the Court" by his

5  attorneys and the Defendants named in the present litigation: City Attorney,

6  Defendant Michael Feuer; his Chief Deputy, Defendant James Clark; and

7  the Chief of the Civil Litigation Branch of the City Attorney's Office,

8  Defendant Thomas Peters.  (*Id.* ¶ 6.)  Specifically, Plaintiff alleges his

9  attorney, Paradis, represented him in the *Jones* Class Action, while

10 simultaneously representing the City as special counsel in its related

11 litigation against PwC, titled *City of Los Angeles v. Pricewaterhouse*

12 *Coopers, LLP et al.*, Los Angeles Superior Court, No. BC574690 ("*PwC*

13 *Action*").  (*Id.* ¶¶ 6–7.)  Plaintiff alleges that City officials, including Clark,

14 Peters, and Feuer, colluded with Paradis and other Plaintiff's counsel in the

15 *Jones* Class Action, thus allowing the City to obtain a highly advantageous

16 settlement.  (*Id.* ¶¶ 5, 145.)

17

18     Plaintiff alleges that the attorneys involved covered up their

19 misconduct, thus preventing it from coming to light until 2019.[3]  (*See id.* ¶

20 315.)  This "cover-up" included perjury, discovery abuses,

21 misrepresentations to the Court, and suppression and destruction of

22 evidence in the *PwC* Action as well as the commissioning of an ethics report

23

24 _____

25 [3] In 2019, Judge Berle appointed new class counsel and a special master to investigate the fairness of the settlement and related misconduct, including the relationships between the City's counsel and Plaintiff's counsel in the *Jones*

26 Class Action.  (Compl. ¶¶ 256, 269.)

3

that falsely exonerated the City's officials for their role in the misconduct.[4] (*Id.* ¶¶ 9, 315.)  As a result, Plaintiff contends that his discovery of the misconduct came too late for him to initiate timely legal action against Paradis or the City, and he was thus deprived of his constitutional right to access the courts.  (*Id.* ¶ 10.)

Plaintiff now asserts two claims in his individual capacity: a claim against the City pursuant to 42 U.S.C. § 1983 for deprivation of his constitutional rights, and a claim against all Defendants for waste of taxpayer funds under California Code of Civil Procedure § 526a. Defendants each have filed a Motion to Dismiss the Complaint.[5]  (Dkts. 21, 24, 25.)

## II.    LEGAL STANDARD

### A.  Motion pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R.

---

[4] The 122-page Complaint details the misconduct, cover-up, and involvement of the Defendants individually-named in this action.  In summary, Clark was responsible for the City's defense in the *Jones* Class Action and the litigation of its claims in the *PwC* Action.  (Compl. ¶ 19.)  He reported directly to Feuer who was the head attorney for the City and the policymaker in the City Attorney's Office.  (*Id.* ¶¶ 18–19.)  Peters, who reported to Clark, was responsible for supervising Paradis and his co-counsel in the *PwC* Action.  (*Id.* ¶ 20.)  Peters was also involved in defending and settling the *Jones* Class Action.  (*Id.*)

[5] The Motions to Dismiss filed by Defendants Clark and Peters challenge only the taxpayer claim.

United States District Court
Central District of California

Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

1

2        **B.   Motion pursuant to Rule 12(b)(1)**

3               Dismissal under Rule 12(b)(1) is proper if the Court lacks subject

4        matter jurisdiction to adjudicate claims asserted in a plaintiff's complaint.[6]

5        Fed. R. Civ. P. 12(b)(1).  To satisfy Article III's standing requirements, the

6        party invoking federal jurisdiction must demonstrate that it has "(1) suffered

7        an injury in fact, (2) that is fairly traceable to the challenged conduct of the

8        defendant, and (3) that is likely to be redressed by a favorable judicial

9        decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A motion

10       to dismiss under a Rule 12(b)(1) challenge to subject matter jurisdiction may

11       be facial or factual.  Here, Defendants present a facial attack, which

12       "accepts the truth of the plaintiff's allegations but asserts that they are

13       insufficient on their face to invoke federal jurisdiction."  *Leite v. Crane Co*.,

14       749 F.3d 1117, 1121 (9th Cir. 2014).

15

16              To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears

17       the burden of proving that the Court has jurisdiction to hear his claims.  *See*

18       *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an

19       "affirmative obligation to ensure that it is acting within the scope of its

20       jurisdictional authority."  *Grand Lodge of Fraternal Order of Police v.*

21       *Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the

22       [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in

23       resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to

24

25       _____

26       [6] To the extent the Motion brought by the City and Feuer challenges Plaintiff's
         standing, the Court considers it under Rule 12(b)(1).

United States District Court
Central District of California

6

1  state a claim." *Id*. at 13-14 (internal quotation marks and citation omitted)

2  (alteration in original).

3

4              **III.    DISCUSSION**

5  **A.   Requests for Judicial Notice**

6          In connection with the Motion to Dismiss, Defendants City of Los

7  Angeles and Michael Feuer request, *inter alia,* judicial notice of the City of

8  Los Angeles Charter and certain court records in *In re Paul Oliva Paradis,*

9  No. 2:20-bk-06724-PS (Bankr. D. Ariz.) (the "Paradis Bankruptcy").  (Dkt.

10  26.)  The Court finds that the Charter is a proper subject of judicial notice

11  and **GRANTS** the request.  *See, e.g., Ass'n of Los Angeles City Attorneys v.*

12  *City of Los Angeles,* No. CV 12-4235-MMM-JCx, 2012 WL 12887541, at *6

13  (C.D. Cal. Nov. 20, 2012) ("The court takes judicial notice of the Charter

14  because it is not subject to reasonable dispute, it is a public record

15  commonly known in this jurisdiction, and its accuracy can be readily

16  determined from sources that cannot reasonably be questioned.").  The

17  Court also **GRANTS** the request as to the Paradis Bankruptcy filings, which

18  are appropriate for judicial notice for the purpose of determining the nature

19  of Plaintiff's pending claims in that matter.  *See Reyn's Pasta Bella, LLC v.*

20  *Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir. 2006) ("To determine what

21  issues were actually litigated in the *Wal–Mart* courts, we take judicial notice

22  of Plaintiffs' briefs in those courts and the transcript of the *Wal–Mart* fairness

23  hearing."); *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014)

24  (holding that "pleadings filed and orders issued in related litigation are

25  proper subjects of judicial notice under Rule 201" and collecting cases).

26  The Court does not reach the parties' remaining requests for judicial notice

United States District Court
Central District of California

7

1  as it does not rely on the underlying documents in its Order.  (*See* Dkts. 22,

2  26, 27, 40.)

3

4  **B.  Section 1983 Claim**

5        Plaintiff's claim against the City under 42 U.S.C. § 1983 is based on

6  the alleged cover-up and resulting deprivation of his access to the courts, as

7  explained above.  "Section 1983 allows for a civil action against any person

8  who, under color of law, causes the 'deprivation of any rights, privileges, or

9  immunities secured by the Constitution and laws.'"  *Barnett v. Cty. of Los*

10  *Angeles*, No. 20-cv-2530-ODW-ASx, 2020 WL 5350286, at *3 (C.D. Cal.

11  Sept. 3, 2020) (quoting 42 U.S.C. § 1983).  The parties dispute whether (1)

12  the City may be liable under *Monell v. Dep't of Soc. Servs. of the City of*

13  *New York*, 436 U.S. 658, 694 (1978) and (2) Plaintiff has been deprived of a

14  constitutional right.

15

16     1.   Municipal Liability

17        A government entity may not be held liable under § 1983 unless a

18  policy, practice, or custom of the entity can be shown to be a moving force

19  behind a violation of constitutional rights.  *Monell*, 436 U.S. at 694.  The

20  moving force requirement can be proven under three possible theories.  *See*

21  *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018)

22  (citations omitted).  "First, a local government may be liable if 'execution of a

23  government's policy or custom, whether made by its lawmakers or by those

24  whose edicts or acts may fairly be said to represent official policy, inflict[ed]

25  the injury.'  Second, a local government can fail to train employees in a

26  manner that amounts to 'deliberate indifference' to a constitutional right,

United States District Court
Central District of California

8

United States District Court
Central District of California

such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'  Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'"  *Id.* (citations omitted).

Plaintiff pursues his claims under the first and third theories.  As to the former, Plaintiff plausibly alleges the existence of a "persistent and coordinated" practice of fraud by the City "against [Plaintiff], on the public and the court, involving discovery abuses, collusion, perjury and an active cover-up that spanned over five years and six lawsuits."  (Dkt. 34 at 15; Compl. ¶¶ 10, 248, 280, 283, 286, 289, 294, 304, 305, 325.)  Although the City argues that Plaintiff has not alleged any "formal rules or understanding," the law is clear that a formal policy is not required.[7]  (Dkt. 24-1 at 10.)  Plaintiff may instead allege the existence of a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).  Although liability may not be predicated on "isolated or sporadic incidents," it may lie where, as here, the plaintiff alleges "practices

---

[7] The City relies on *Grizzle v. Cty. of San Diego*, No. 17-CV-813-JLS (PCLx), 2018 WL 3689153, at *7 (S.D. Cal. Aug. 3, 2018).  That court went on to explain that even if a "formal policy is not present, a plaintiff may be able to prove the existence of a widespread practice."  *Id.* (internal quotation marks and citation omitted).

of sufficient duration, frequency and consistency." *Id.*  The Court finds

unpersuasive the City's argument that the incidents alleged to have been

committed by at least three City officials in multiple legal actions over a

period of years must be treated as a single isolated incident concerning

Plaintiff alone.[8]  (Dkt. 44 at 7–9.)  Plaintiff has alleged *Monell* liability

sufficiently under this theory.


As to the latter theory, Plaintiff alleges that the City is liable based on

the actions of City Attorney Feuer, who he alleges had final policymaking

authority regarding the management of the City's litigation and could ratify

the conduct of his subordinates.  (Compl. ¶ 18; Dkt. 34 at 17–18.)  To

proceed under that theory, Plaintiff must establish that the official (1) had

final policymaking authority "concerning the action alleged to have caused

the particular constitutional or statutory violation at issue" and (2) was the

policymaker for the local governing body for the purposes of the particular

act. *Weiner v. San Diego Cty*., 210 F.3d 1025, 1028 (9th Cir. 2000); *see*

*also Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) ("When determining

whether an individual has final policymaking authority, [the courts] ask

whether he or she has authority in a particular area, or on a particular

issue.").  This inquiry is governed by state law.  *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 483 (1986).  As to liability premised on the policy-

maker's ratification of a subordinate's actions, the "complaint must allege

that the ratification was a conscious, affirmative choice."  *Waring v. Cty. of*

---

[8] The Ninth Circuit has held that "normally, the question of whether a policy or custom exists would be a jury question."  *Trevino*, 99 F.3d at 920.

United States District Court
Central District of California

United States District Court
Central District of California

*Orange*, No. SACV200066-JVS-KESx, 2020 WL 7232119, at *6 (C.D. Cal. Oct. 9, 2020).

Here, the Complaint and the City Charter, of which the Court takes judicial notice, provide the factual basis for the City's liability.  The relevant allegations include:

- Feuer, as City Attorney, "shall represent the City in all legal proceedings against the City" and "shall manage all litigation of the City."  (Dkt. 26-17 §§ 271, 272.)

- Peters reported to Clark, and Clark, as Feuer's Chief Deputy, reported directly to Feuer.  (Compl. ¶ 19.)

- Clark and Peters obtained Feuer's approval of their key litigation decisions, including of "the entire strategy" for the *Jones* Class Action.  (*Id.* ¶¶ 65, 73, 264.)

- Feuer was aware of allegations of collusion in connection with the settlement in the *Jones* Class Action.  For example, Feuer was notified that the attorneys on the earlier-filed class action suits against the City in connection with the overbilling practices were excluded from the settlement negotiations.  (*Id.* ¶ 134.)

- Peters and Clark engaged in conduct designed to conceal the underlying collusion, including submitting false and misleading declarations, providing false and misleading deposition testimony, and destroying evidence.  (*See, e.g.*, *id.* ¶¶ 9, 201, 208, 228, 241, 264.)

- Feuer directly participated in the cover-up of the misconduct by commissioning an ethics report to exonerate the City and its officials

United States District Court
Central District of California

1    and shift blame to special counsel in the *Jones* Class Action.  (*Id.* ¶¶

2    235–38, 295–300.)

3

4        The Court finds these allegations sufficient to support a claim for

5    *Monell* liability.  Taking the well-pled facts in the Complaint as true, as the

6    Court must, Feuer was aware of and participated in the collusive conduct

7    alleged in connection with *Jones* Class Action.  Clark and Peters ultimately

8    reported to him and sought his approval for their litigation-related actions,

9    plausibly including those taken to conceal the misconduct Feuer himself is

10   alleged to have participated in.  Moreover, Plaintiff has alleged that Feuer

11   directly participated in the cover-up by commissioning the ethics report to

12   exonerate the City and its officials, including Clark and Peters.  Aiding in the

13   cover up of a subordinate's actions goes beyond the mere failure to

14   reprimand that courts have held insufficient to establish ratification.  *See*

15   *Dorger v. City of Napa*, No. 12-CV-440 YGR, 2012 WL 3791447, at *5 (N.D.

16   Cal. Aug. 31, 2012) ("[W]hile failure to reprimand, standing on its own, may

17   not be sufficient to establish ratification, additional evidence of agreement or

18   acquiescence to the conduct will support a finding of ratification.").

19

20       The City also argues that the City Attorney is not the final policy

21   maker in connection with the actions alleged here.  (Dkt. 44 at 15.)  It cites

22   provisions of the City Charter stating that the City Attorney's management of

23   all litigation of the City is "subject to client direction in accordance with this

24   section."  (Dkt. 26-17 § 272.)  That section indicates that "client decisions,

25   including a decision to initiate litigation," as well as to settle litigation, shall

26   be made by the Mayor, the Council, or the Boards.  (*Id.*)  The Court is not

persuaded.  That other persons may have had control over "client decisions," does not require the conclusion that Feuer lacked final authority otherwise to manage the City's litigation as alleged above.

Accordingly, Plaintiff has stated plausible bases for the City's liability.

2.    Constitutional Violation

The parties next dispute whether Plaintiff has alleged a violation of his constitutional rights.  Plaintiff contends that he has sufficiently alleged a "'backward-looking' access-to-court claim" based on official acts that "caused the inadequate settlement of a meritorious case, the loss of an opportunity to sue or the loss of an opportunity to seek some particular order or relief."  (Dkt. 34 at 20 (citing *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002).)  To state such a claim, Plaintiff must show: (1) an "underlying cause of action"; (2) "official acts frustrating the litigation"; and (3) "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."  *Harbury*, 536 U.S at 415.

As explained above, Plaintiff alleges that the City engaged in a cover-up consisting of discovery abuses, suppression of evidence, commissioning false reports to exonerate its officials, and more.  (*See* Compl. ¶ 315.)  As a result of this misconduct, Plaintiff allegedly lacked sufficient knowledge of his potential claims against his attorney, Paradis, and the City to file them timely. [9]  (*Id*. ¶¶ 315–23 (citing Cal. Code Civ. Proc. § 340.6 and Cal. Gov.

---

[9] The Complaint lists and describes the basis for the underlying claims against Paradis and the City.  (Compl. ¶¶ 313–14.)

Code § 911.2).)  The Complaint identifies and describes the basis for the underlying claims against Paradis and the City.  (*Id*. ¶¶ 313–14.)  Plaintiff also names the remedies he would have been entitled to had he been able to pursue such claims.  (*Id.* ¶ 324.)

The City challenges Plaintiff's ability to allege he lost any "nonfrivolous" claims against it.  *See, e.g., Ontiveros v. California Dep't of Corr. & Rehab*., No. 119CV01651-LJO-EPGx, 2020 WL 133294, at *5 (E.D. Cal. Jan. 13, 2020).  The City relies on California Government Code § 815(a), which states that "[e]xcept as otherwise provided by statute," a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Indeed, plaintiffs "must plead a statutory basis showing that [each municipal entity] may be held liable for their claims."  *Blanco v. Cty. of Kings*, 142 F. Supp. 3d 986, 1003 (E.D. Cal. 2015) (internal quotation marks and citation omitted); *see also Valenzuela v. San Diego Police Dep't*, No. 19-CV-00002-BAS-BLMx, 2020 WL 804923, at *6 (S.D. Cal. Feb. 18, 2020).

Here, Plaintiff pleads claims for breach of fiduciary duty and constructive fraud; aiding and abetting Paradis's breaches of fiduciary duty and fraud; conspiracy; and intentional interference with contractual relations. (Compl. ¶ 314.)   While Plaintiff lists in his Complaint several statutory provisions that these underlying claims purportedly "arise from," he fails to allege or support that those provisions create an adequate basis for municipal liability.  (*Id.*)  The underlying claims, however, are not rendered frivolous by this deficiency; the Complaint alleges Plaintiff's entitlement to

United States District Court
Central District of California

injunctive relief against the City on those claims, to which § 815 does not apply.  *See* Cal. Gov. Code § 814 ("Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."); *Montoya v. City of San Diego*, 434 F. Supp. 3d 830, 842 (S.D. Cal. 2020) ("[T]he California Government Tort Liability Act [does] not bar equitable remedies.").[10]

As to the underlying claims against Paradis, Defendant argues that Plaintiff's pursuit of identical claims in the Paradis Bankruptcy evidences Plaintiff's ongoing access to the courts.  (Dkt. 24-1 at 5–6.)  The question, however, is not whether Plaintiff lacks *all* access to the courts.  As noted by the Supreme Court, the right to access may be violated by the loss of an opportunity to seek "some particular order or relief."  *See Harbury*, 536 U.S. at 413–414.  Here, Plaintiff alleges that he would have been entitled to certain equitable relief in state court, including injunctive relief, that is unavailable as a remedy in the bankruptcy proceeding.  (Dkt. 34 at 20–21; Compl. ¶ 324.)  The City does not dispute that such relief would be

---

[10] The City disputes the sufficiency of the pleading of Plaintiff's fraud and conspiracy claims but does not challenge the claims for aiding and abetting Paradis's breaches of fiduciary duty and intentional interference with contractual relations. (*See* Dkt. 24-1 at 14–15.)  The Court cannot dismiss part of a claim.  Moreover, the Court finds the City's arguments as to the fraud and conspiracy claims unpersuasive.  First, its argument that conspiracy is not "acknowledged" under California law is based on an over-broad reading of the law; courts in this circuit have recognized such claims. *See, e.g., Jian Na Wu v. Oregon Trail Corp*., No. CV194162-PSG-JPRx, 2019 WL 6603172, at *2 (C.D. Cal. July 31, 2019); *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838, at *17 (N.D. Cal. Mar. 25, 2021).  Second, assuming a Rule 9(b) standard applied to the pleading of the underlying claim for fraud as the City alleges, the detailed allegations of the Complaint plainly satisfy that standard.

1   unavailable.  Accordingly, Plaintiff has also stated a constitutional violation

2   premised on his loss of the opportunity to seek certain relief against

3   Paradis.[11]

4

5       3.   Conclusion as to Section 1983 Claim

6       For the reasons stated above, Plaintiff has pled adequately a

7   deprivation of a constitutional right as well as a basis for the City's liability.

8   The Court accordingly **DENIES** the Motion to Dismiss brought by the City

9   and Feuer to the extent it seeks dismissal of the § 1983 claim against the

10  City.

11

12  **C.  State Law Claim**

13      Plaintiff also brings a municipal taxpayer claim pursuant to California

14  Code of Civil Procedure § 526a.  A plaintiff bringing a taxpayer claim under

15  California law must nonetheless comply with the Article III standing

16  requirements applicable in federal court.  The City and Feuer contend that

17  Plaintiff lacks standing under Article III.  (Dkt. 24-1 at 15–18.)

18

19

20

21  [11] The City argues briefly that Plaintiff's Complaint does not allege plausibly
    proximate cause.  The Court disagrees.  It is plausible that the alleged cover-
22  up would foreseeably result in Plaintiff's lack of awareness of the factual basis
    for his claims against the City and his attorney, thus preventing him from filing
23  suit timely.  *See Reinhardt v. Santa Clara Cty.*, No. C05-05143, 2006 WL
    3147691, at *5 (N.D. Cal. Nov. 1, 2006) ("[I]n this circuit the causation element
24  of a § 1983 claim is not a high hurdle at the pleading stage.").  To the extent
    the City argues that Plaintiff's own actions, namely his unnecessary delay in
25  pursuing his claims, breaks the causal chain, the Court declines to address that
    issue on the present record.  (Dkt. 24-1 at 12–13.)
26

United States District Court
Central District of California

"Although a federal or state taxpayer generally does not have Article III standing to challenge an alleged misuse of public funds, local taxpayers may have standing 'to enjoin the illegal use of the moneys of a municipal corporation.'"  *Burwell v. Portland Sch. Dist. No. 1J*, --- Fed. App'x. ----, 2021 WL 2071980, at *1 (9th Cir. May 24, 2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006)).  The Supreme Court has reasoned that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate," and arises from the "peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation."  *Frothingham v. Mellon*, 262 U.S. 447, 486–87 (1923); 74 Am. Jur. 2d Taxpayers' Actions § 13 (2021) ("Since the taxpayer is considered an equitable owner of municipal funds and is obliged to replenish the public treasury for any deficiency that would be caused by the misappropriation or wrongful expenditure thereof, the principle permitting taxpayers' actions in matters involving municipal corporations is based primarily on an analogy to a well-settled doctrine in equity governing private corporations whereby each stockholder has an interest in the property or funds of the corporation and may intervene to protect such property or funds from the illegal or fraudulent acts of the corporate officers.").  In contrast, the "comparatively minute and indeterminable" interests of state and federal taxpayers in expenditures of tax funds are shared with millions of others and do not generally support standing.  *Frothingham*, 262 U.S. at 487; *DaimlerChrysler*, 547 U.S. at 345 (the "rationale for rejecting federal taxpayer standing applies with undiminished force to state taxpayers").

1    Thus, to invoke the exception for municipal taxpayer standing, a

2  threshold requirement is that "the plaintiff must actually be a taxpayer of the

3  municipality that [he] wishes to sue."  *Protect Our Parks, Inc. v. Chicago*

4  *Park Dist*., 971 F.3d 722, 734 (7th Cir. 2020); *Freedom From Religion*

5  *Found., Inc. v. Zielke*, 845 F.2d 1463, 1470 (7th Cir. 1988) (no standing

6  where plaintiff failed to allege that she "actually is a [City of] La Crosse

7  municipal taxpayer.")   Plaintiff generally alleges that he paid or is liable to

8  pay "taxes that fund the City."  (Compl. ¶ 330.)

9

10    The City and Feuer argue that Plaintiff's allegation is insufficient to

11  establish municipal taxpayer standing as it leaves open the possibility that

12  he paid only taxes at the federal or state level, or to another municipality,

13  that then indirectly funded the City.  (Dkt. 44 at 5–6.)  Indeed, district courts

14  have declined to find municipal taxpayer standing "where the taxpayers did

15  not pay taxes directly to the municipal defendant."  *Huizenga v. Anoka-*

16  *Hennepin Education Minnesota*, No. 20-CV-2445 (NEB/ECW), 2021 WL

17  2515361, at *3 (D. Minn. June 18, 2021) (collecting cases).  In such a

18  scenario, the private corporation-stockholder relationship identified in

19  *Frothingham* is not analogous, and the taxpayer accordingly lacks the

20  "direct and immediate" interest held by a payer of a municipal tax in that

21  municipality's use of the funds.[12]  Plaintiff's Opposition does not address

22  ───────────────

23  [12] Plaintiff also alleges that he has paid or is liable to pay income tax and sales
   tax.  (Compl. ¶ 330.)  He does not, however, specify whether the taxes are
24  municipal, state, or federal.  Additionally, the City and Feuer provide authorities
   finding inadequate for taxpayer standing allegations of payment of sales tax
25  "because [municipal] sales tax is imposed on the retailer, not the consumer."
   *Reynolds v. City of Calistoga*, 223 Cal. App. 4th 865, 872 (2014) (collecting
26  cases).  At the hearing on the Motion, Plaintiff's Counsel represented that a
   2019 amendment to § 526a clarified that a plaintiff's payment of a sales and

Defendants' argument or provide support for the sufficiency of his

allegations.  The claim is therefore **DISMISSED** for lack of standing with

leave to amend.

## IV.    CONCLUSION

The Court therefore **GRANTS in part** the Motion to Dismiss filed by

the City of Los Angeles and Michael Feuer, with leave to file an amended

complaint no later than July 19, 2021.  As the Court has dismissed the state

law claim on the standing grounds presented in the City's and Feuer's

Motion, the Court does not reach the Motions to Dismiss filed by Defendants

James Clark and Thomas Peters.

**IT IS SO ORDERED.**

Dated:      6/25/21

Virginia A. Phillips
United States District Judge

use tax is sufficient to support a claim.  Nonetheless, Plaintiff has not alleged
he paid such a tax to the City, as required for Article III standing here.

19