ROBIE & MATTHAI
A Professional Corporation
Edith R. Matthai, Esq. (SBN 66730)
Email: ematthai@romalaw.com
T. John Fitzgibbons, Esq. (SBN 238439)
Email: jfitzgibbons@romalaw.com
350 S. Grand Avenue, Suite 3950
Los Angeles, California 90071-2609
Telephone: (213) 706-8000
Facsimile: (213) 706-9913

Attorneys for Defendant THOMAS H. PETERS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTWON JONES, an individual and California taxpayer,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL N. FEUER, in his individual and official capacities; JAMES P. CLARK, in his individual and former official capacities; THOMAS H. PETERS, in his individual and former official capacities<br><br>Defendants, | CASE NO. 2:20-cv-11502-VAP-JCx<br><br>**DEFENDANT THOMAS H. PETERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>DATE:      October 4, 2021<br>TIME:      2:00 p.m.<br>CTRM.:    First Street Courthouse – 8A<br><br>[Assigned to the Hon. Virginia A. Phillips]<br><br>Filing Date:    December 21, 2020<br>Trial Date:      None Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 4, 2021, at 2:00 p.m. or as soon thereafter as this matter may be heard before the Honorable Virginia A. Phillips, United States District Judge, in the above-entitled Court, at 350 W. First Street, Los Angeles, California, 90012, Defendant Thomas Peters will and hereby does move the Court under Federal Rules of Civil Procedure 12(b)(6) for dismissal of Plaintiff Antwon Jones's First Amended Complaint (Dkt. 50) in its entirety and with prejudice. Only the Second Claim is asserted against Peters.

The motion is made on the ground that Peters cannot be liable under California Code of Civil Procedure section 526a because he lacked the power to authorize the expenditures challenged in Jones's complaint. Peters also joins the arguments of the other defendants that Jones did not comply with pre-suit requirements, his section 526a claim is untimely, and his section 526a claim is barred by the litigation privilege and the Noerr-Pennington doctrine.

The motion is based on this notice of motion, the accompanying memorandum of points and authorities, the accompanying request for judicial notice, all pleadings and documents on file, and on such further evidence and argument as the Court may entertain.

This motion is made following the conference of counsel under Local Rule 7-3, which took place on August 9, 2021.

DATED: August 16, 2021

ROBIE & MATTHAI
A Professional Corporation

By:  /s/ T. John Fitzgibbons
EDITH R. MATTHAI
T. JOHN FITZGIBBONS
Attorneys for Defendant,
THOMAS H. PETERS

2

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................6

ARGUMENT ..................................................................................................7

    I.     Overview of the applicable pleading standard......................................7

    II.    Overview of the statutory basis upon which the cause of action is asserted against Peters.......................................................................8

    III.   The case against Peters should be dismissed because the FAC fails to allege essential facts establishing he controlled public funds and authorized their expenditure, and to the extent any such facts are alleged, they are conclusory and insufficient under *Twombly/Iqbal.* .......................................................................9

    IV.   The section 526a claim against Peters should be dismissed because the FAC concedes he left City employment March 22, 2019, and did not have control over, nor could have authorized, the expenditure of the $176,195 allegedly paid for the Report which issued October 22, 2019. ........................................12

    V.    Section 526a has not been used in the manner urged here and to allow it to be would result in limitless personal exposure of governmental employees contrary to established law and sound public policy.........................................................................13

CONCLUSION................................................................................17

# TABLE OF AUTHORITIES

FEDERAL CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 7, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 7, 8

*Moss v. U.S. Secret Service*,
  572 F.3d 962 (9th Cir. 2009) ............................................................... 8

*Nayab v. Capital One Bank USA*,
  942 F.3d 480 (9th Cir. 2019) ............................................................... 7

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
  514 F.3d 856 (9th Cir. 2007) ............................................................. 10


CALIFORNIA CASES

*Edwards v. Arthur Anderson LLP*,
  44 Cal.4th 937 (2008) ....................................................................... 15

*Leider v. Lewis*,
  2 Cal. 5th 1121 (2017) ...................................................................... 14

*Peninsula Guardians, Inc. v. Peninsula Health Care Dist.*,
  200 Cal. App. 4th 1108 (2011) ......................................................... 14

*Stanson v. Mott*,
  17 Cal.3d 206 (1976) ................................................................. passim

*Stevens v. Geduldig*,
  42 Cal. 3d 24 (1986) ......................................................................... 14

*Vargas v. City of Salinas*,
  46 Cal.4th 1 (2009) ........................................................................... 14

*Weatherford v. City of San Rafael*,
  2 Cal. 5th 1241 (2017) ...................................................................... 14


CALIFORNIA STATUTES

Cal. Code of Civ. Pro. §1021.5 ............................................................. 9

Cal. Code of Civ. Proc. § 526a ..................................................... 6, 9, 13

Cal. Labor Code §2802 ......................................................................... 15

4

OTHER AUTHORITIES

City of Los Angeles Administrative Code, §20.20 ...................................................11

City of Los Angeles Administrative Code, §20.27 ...................................................11

City of Los Angeles Charter, §272 ..........................................................................11

City of Los Angeles Charter, §370 ..........................................................................11

5

1
2

### MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

3       The sole claim against defendant Thomas Peters alleged in the First Amended
4   Complaint is that he, along with Michael Feuer and James Clark, "authorized" the
5   allegedly illegal and wasteful payment of $176,195 to expert ethicist Ellen Pansky
6   in order for her to "prepare and release a report favorable to F[euer] and the [City
7   Attorney's Office]…." (FAC ¶¶242, 306). The initial complaint alleged at length
8   myriad acts and omissions of the named defendants and others which "*caused*" the
9   improper expenditure of millions of City dollars. The original complaint alleged
10  such monies were or would be paid out for discovery sanctions, attorneys' fees, and
11  fees for an ethics report prepared by Ellen Pansky (the "Pansky Report"). It was
12  alleged the individual defendants should be personally liable to reimburse the City
13  for all those payments and also pay attorneys' fees to plaintiff and his lawyer. No
14  facts were pleaded alleging Peters ever controlled the relevant funds or authorized
15  their payment to anyone. The statute under which Peters is sued, California Code of
16  Civil Procedure §526a, only applies to public officials who are *in control of* public
17  funds and *personally authorize* such funds' expenditure.

18      In 12(b)(6) briefing related to the original complaint, Peters pointed out that
19  plaintiff's proposed legal standard—liability for all current or former public
20  employees whose acts or omissions can be shown to have somehow "caused" an
21  illegal or wasteful public expenditure, as opposed to liability only for those officials
22  who were in control of and personally authorized such expenditure—would expose
23  government officials to breathtaking, nearly limitless liability. (Dkt. 42, at 1, 6-8.)
24  As explained in that briefing (Dkt. 42 at 2-4), the actual legal standard under
25  section 526a and the cases interpreting it is that the only government officials who
26  may be held personally liable are "officers who control public funds" at issue.

27
28

DEFENDANT THOMAS H. PETERS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT                                      2:20-cv-11502- VAP-JCx

*Stanson v. Mott*, 17 Cal.3d 206, 225-226 (1976). The FAC doesn't claim Peters ever did.

Alerted to this problem, the FAC now makes the entirely conclusory allegation that the three individual defendants (apparently jointly and severally) all personally authorized the expenditure of $176,195 of public funds for the Pansky Report. (FAC ¶306.) But the FAC never alleges that Peters had control over the public funds at issue, nor that he had the power to authorize expenditure of those funds. Leaving aside the implausibility of three separate City officials—Peters, his boss, and his boss's boss—all contemporaneously authorizing this expenditure, the very documents which plaintiff's counsel seeks this Court to consider in support of the claim that Peters *et al.* authorized the $176,195 to be paid for the Pansky Report establish that Peters did *not* authorize the expenditure of such funds. And the FAC itself notes the Report did not issue until October 22, 2019, yet concedes Peters left his City employment seven months earlier, on March 22, 2019.

Because of this, section 526a does not and cannot apply to Peters. The claim against him should be dismissed.

## ARGUMENT

## I.   Overview of the applicable pleading standard.

The *Twombly* standard for a motion to dismiss under Rule 12(b)(6) is now familiar. To survive, a complaint must include sufficient factual context to state a claim for relief that is "plausible on its face," meaning that all claims must be accompanied by alleged facts which allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *Nayab v. Capital One Bank USA*, 942 F.3d 480, 496 (9th Cir. 2019). This "facial plausibility" cannot be supported by "mere conclusory statements," and

DEFENDANT THOMAS H. PETERS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT                                           2:20-cv-11502- VAP-JCx

1   a reviewing court is required to "draw on its experience and common sense" in its

2   determination of plausibility. *Iqbal*, 556 U.S. at 678-79. Absent plausible, non-

3   conclusory factual allegations satisfying all of a cause of action's required elements,

4   that cause of action must be dismissed. *Twombly*, 550 U.S. at 570; *Moss v. U.S.*

5   *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

6   **II.     Overview of the statutory basis upon which the cause of action is**

7   **          asserted against Peters.**

8         The only cause of action asserted against Peters in the FAC seeks payment by

9   him, personally, of $176,195 (plus attorneys' fees to plaintiff) for the City's

10  allegedly illegal, wasteful expenditure for a report written by ethicist Pansky in

11  connection with ongoing Superior Court litigation. The statute upon which plaintiff

12  seeks to proceed is California Code of Civil Procedure section 526a. The text of

13  section 526a says nothing about suits for damages; the statute speaks only to

14  equitable relief. The FAC nevertheless asserts that *Stanson v. Mott*, 1 Cal.3d 206

15  (1976), provides authority to recover from Peters personally under section 526a

16  since his conduct allegedly caused the City to illegally expend and waste public

17  dollars on the Pansky Report. The FAC baldly asserts that *Stanson* holds "a plaintiff

18  in a taxpayer action under section 526a(a) can seek repayment from local officials of

19  illegal and/or wasteful expenditures of taxpayer funds, where the local officials were

20  *responsible* for those expenditures." (FAC ¶339; emphasis added.)

21        That is not what *Stanson* holds. Not even close.

22        The FAC's pinpoint citation to exactly where *Stanson* supposedly sets forth

23  plaintiff's "responsibility" standard encompasses six pages—pp. 222-227. (FAC

24  ¶339.) The FAC offers neither a quotation nor a paraphrasing of *Stanson's* language.

25  It is as if plaintiff hopes this Court will divine out of these half-dozen pages a radical

26  new rule allowing taxpayer damage suits (with potential attorney's fees under Cal.

27                                          8

Code of Civ. Pro. §1021.5) against any current or former government employee provided something she did or didn't do can be said to have been "responsible" for an expenditure ultimately paid by the public entity.

Fortunately for all governmental employees—and governmental lawyers in particular— *Stanson* holds: "[w]e conclude [contrary to earlier precedent] that *such public officials* must use 'due care,' i.e. reasonable diligence, in *authorizing* the expenditure of public funds, and may be subject to personal liability for improper expenditures made in the absence of such due care." *Id.* at 226-27 (emphasis added).

The identity of "*such public officials*" is revealed earlier in the paragraph just quoted. The court notes it is seeking to determine "under what circumstances a public official may be held personally liable for *an unauthorized* expenditure of public funds." *Id.* at 226 (emphasis added). After exploring in detail a then-recent expansion in the scope of the California Tort Claims Act, the court held "[i]n light of the considerable authority enjoyed by *officials who control public funds*," the standard of care to which public officials who may authorize the expenditure of public funds are to be held is "due care." *Id.* (emphasis added). This is the rule of *Stanson*. As a matter of law, control of public funds is the *sine qua non* of authorization of their expenditure.

III. **The case against Peters should be dismissed because the FAC fails to allege essential facts establishing he controlled public funds and authorized their expenditure, and to the extent any such facts are alleged, they are conclusory and insufficient under *Twombly/Iqbal*.**

The actual holding of *Stanson* as set forth above was addressed by Peters in earlier Rule 12(b)(6) briefing. (Dkt. 42 at 2-4.) Now aware of the fatal infirmity of predicating section 526a liability on a former City employee's allegedly being "responsible for" or otherwise "causing" an improper expenditure of public funds,

9

1  plaintiff now jettisons his theory that "causing" an expenditure may give rise to a

2  claim under section 526a. Instead, the FAC now baldly asserts Peters "authorized"

3  those expenditures.[1] (*Compare* Complaint ¶¶ 299, 331, and 331(a) *with* FAC ¶¶ 306,

4  344, 345.) There is no allegation – not even an implausible or conclusory one – that

5  Peters was ever in control of the $176,195 of City funds paid to Pansky, nor is there

6  any claim he ever had authority to command such payment to her.[2]

7      Indeed, of the FAC's 348 paragraphs the only new allegation arguably

8  relevant to Peters' potential section 526a liability is paragraph 236. There, it is

9  alleged that "P[eters] negotiated [the] terms of Pansky's retainer agreement" and

10  that the retainer agreement "was *originally* drafted for [Peters'] signature…."

11  (Emphasis added). Paragraph 236 also notes Peters sent Pansky an e-mail on

12  February 28, 2019, indicating Peters intended to get City bureaucracy involved in

13  paying her anticipated retainer fee (an email that was sent at least 11 days before

14  any retainer agreement was executed by Pansky or the City).[3]

15

16

---

17  [1] While a party may allege in the alternative, a party that blatantly changes its
18  allegations without support risks sanctions under Rule 11. *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).

19  [2] Or that he was even in a position to theoretically control public funds and
20  authorize their expenditure. As the FAC concedes, Peters left City employment on
   March 22, 2019, and the $176,195 Pansky Report was not issued until October 22, 2019. (FAC ¶¶ 254, 301, Prayer for Relief re Second Cause of Action, ¶2).

21  [3] The FAC does not tell a complete story about Pansky's retention. In response to
22  Peters' motion to dismiss his original complaint, plaintiff submitted a request for
   judicial notice (Dkt. 40) and a declaration from plaintiff's counsel, Jeffrey B. Isaacs
23  (Dkt. 40-1). Exhibit 4 to the Isaacs declaration included a March 11, 2019 email
   from the City Attorney's Chief of Staff, Leela Kapur, to Pansky, reflecting that
24  negotiations concerning Pansky's terms of retention were still ongoing, and that the
   Chief of Staff had become involved with them. (Dkt. 40-1, at 19.) That day,
25  referring to Pansky's draft retainer agreement, Kapur wrote: "*I* will send a redlined
   version back today." (Dkt. 40-1, at 19 (emphasis added).) The FAC's allegation that
26  Peters "negotiated [the] terms of Pansky's retainer agreement" is thus incomplete
   and misleading.

27                                    10

1    Critically, Peters is never alleged to have had control of the $176,195 in

2    public funds ultimately paid to Pansky (again, he had been gone for seven months

3    when the Report issued).[4] In short, the FAC's allegations do not satisfy the *Twombly*

4    and *Iqbal* line of cases in terms of plausibly alleging that, per the demands of

5    *Stanson,* Peters was (A) an "official in control of public funds" which were

6    expended for the Pansky Report, and (B) that he himself "authorized" the

7    expenditure of the $176,195 paid for that Report as alleged. (FAC ¶¶254, 301,

8    Prayer re Second Cause of Action, ¶2).

9    To the extent FAC paragraph 236 seeks to premise Peters' "authorization" of

10   the $176,195 Pansky expenditure on his discussions with her *before* she and the City

11   executed the retainer agreement (or the City made any payment), the law does not

12   support it. The Charter of the City of Los Angeles states "[t]he City shall not be, and

13   is not, bound by any contract unless it complies with the requirements" of the

14   Charter. City of Los Angeles Charter, §370. One such requirement is that contracts

15   such as the Pansky retainer "shall be signed" by "the board, officer, or employee

16   *authorized* to enter into the contract." *Id.* (Emphasis added). As a matter of law,

17   nothing in Peters' interactions with Pansky could have resulted in authorization of

18   payment since absent the signature of an "authorized employee" on a written

19   contract, no contract binding the City to make any expenditure existed, and thus no

20   obligation for, much less any authorization for, any City expenditure existed.

21

_____

22   [4] Indeed, authority exercised in expending such funds would have ultimately rested with the City Attorney himself, not with an underling. *See* City of Los Angeles

23   Charter, §272 (providing that the "City Attorney shall manage all litigation of the City" and that client decisions are to be made by the Mayor, the City Council, or the

24   relevant board of commissioners); City of Los Angeles Administrative Code, §20.20 (The City Attorney's Office "is under the control and management of the City

25   Attorney."); City of Los Angeles Administrative Code, §20.27 (providing that the City Attorney "shall approve in writing the draft of all contracts before the same are

26   entered into by or on behalf of the City"). As the Court has already found, the City Charter is a proper subject of judicial notice. (Dkt. 49 at 7.)

27                                              11

28   DEFENDANT THOMAS H. PETERS' MOTION TO
     DISMISS PLAINTIFF'S FIRST AMENDED
     COMPLAINT                                    2:20-cv-11502- VAP-JCx

1    To the extent they exist at all in the FAC, any allegation of Peters' requisite

2    control of the public funds and exercise of authority to expend $176,195 of those

3    funds for the Pansky Report is demonstrably implausible and purely conclusory. The

4    FAC, including its new paragraph 236 and repeated substitution of the word

5    "authorized" for the word "caused," is legally unavailing to the section 526a claim

6    against Peters. *Twomby, Iqbal* and their progeny require the section 526a cause of

7    action against him be dismissed.

8    **IV.   The section 526a claim against Peters should be dismissed because the**

9    **FAC concedes he left City employment March 22, 2019, and did not have**

10    **control over, nor could have authorized, the expenditure of the $176,195**

11    **allegedly paid for the Report which issued October 22, 2019.**

12    The FAC states the hiring of Pansky was announced on March 8, 2019 (FAC

13    ¶235),[5] yet admits Peters ended his employment with the City two weeks later on

14    March 22, 2019 (FAC ¶254). The Pansky Report did not issue until October 22,

15    2019 (FAC ¶301), seven months after Peters departed. Nothing in the FAC would

16    support the idea that anyone authorized payment of $176,195 to Pansky on or before

17    March 22, 2019, for a report she had yet to compose and which would not issue until

18    seven months later. Yet the FAC seeks that amount, plus attorneys' fees, personally,

19    from the long-departed Peters.

20    The tense used in the rule of *Stanson*—that a public official may be

21    personally liable only when the official fails to use due care "in authorizing …

22    improper expenditures" (17 Cal. 3d at 226-27)—strongly implies, if not establishes,

23    a temporal requirement that the authorizing public official in control of the relevant

24

25

26    _____

[5] Though, again, no retainer agreement with Pansky had yet been executed by the City as of the morning of March 11, 2019. (Dkt. 40-1, at 19.)

27

28    DEFENDANT THOMAS H. PETERS' MOTION TO
     DISMISS PLAINTIFF'S FIRST AMENDED
     COMPLAINT                                           2:20-cv-11502- VAP-JCx

1   public funds must be acting at the time those expenditures are authorized, not, as

2   alleged here, seven months earlier.

3         Notwithstanding *Stanson*'s express cabining of potential liability to only those

4   public officials in control of public funds who improperly authorize their

5   expenditure, the FAC never alleges how Peters could have plausibly been "in

6   control of public funds" paid for a report issued seven months after his resignation

7   from City employment, nor is there any allegation as how he could have plausibly

8   been empowered to authorize the expenditure of the $176,195 allegedly billed for

9   the Report. Peters never had any such control or authority, as the FAC concedes *sub*

10  *silentio*. Indeed, and once again fatal to the claim against Peters, the Opposition fails

11  to rebut the FAC's express admission (FAC ¶249) that Peters resigned public

12  employment in March 2019, long before the expenditure of any of the monies at

13  issue is alleged to have occurred.

14        In conceding Peters was never in control of the relevant $176,195 of City

15  funds and, indeed, was not even a public employee when the subject $176,195 was

16  authorized for payment to Pansky by whomever was then employed by the City and

17  then in control of those funds, the FAC exempts Peters from the population of

18  public employees who could plausibly be held liable under section 526a for payment

19  of that amount.

20  **V.   Section 526a has not been used in the manner urged here and to allow it**

21        **to be would result in limitless personal exposure of governmental**

22        **employees contrary to established law and sound public policy.**

23        No known decision has ever affirmed the deployment of section 526a in the

24  manner urged by plaintiff. Section 526a is traditionally a mechanism by which

25  taxpayers who object to the improper expenditure of public money *in connection*

26  *with a political campaign* may seek judicial intervention to stop such expenditures

27

28

1  and to enjoin and (at least theoretically) hold personally responsible those public

2  officials in control of the relevant public funds who authorize their expenditures.[6]

3  *See, e.g., Stanson, supra,* 17 Cal. 3d 206 (alleged section 526a violation resulting

4  from official authorizing expenditure of public funds for promotional campaign

5  materials supporting a bond measure); *Stevens v. Geduldig*, 42 Cal. 3d 24 (1986)

6  (alleged advocacy by public officials of a Reagan gubernatorial era tax reduction

7  ballot measure; finding of personal liability reversed); *Vargas v. City of Salinas,* 46

8  Cal.4th 1 (2009) (supporters of local ballot measure seeking to repeal a utility tax

9  sue municipality for allegedly improperly "campaigning" against that measure with

10  public funds); *Peninsula Guardians, Inc. v. Peninsula Health Care Dist.,* 200 Cal.

11  App. 4th 1108 (2011) (public funds allegedly wastefully expended to distribute

12  campaign materials supporting construction of a public hospital).

13      There is a California Supreme Court case in which a taxpayer invoked section

14  526a to enjoin the authorization of an expenditure of public money for a city-owned

15  zoo's elephant exhibit which was claimed to have been cruel. *Leider v. Lewis,*

16  2 Cal.5th 1121 (2017). Other inapposite factual settings exist (*see, e.g. Weatherford*

17  *v. City of San Rafael,* 2 Cal. 5th 1241 (2017) (taxpayers object to a city's practice of

18  impounding vehicles allegedly without proper notice)), but nothing remotely

19  resembling the instant matter.

20      Moreover, even if the *Stanson* rule was somehow unclear—and it is not—and

21  even if room existed for debate about potential section 526a liability for a former

22  employee like Peters who is not plausibly alleged to have either been in control of

23  the public funds at issue nor to have authorized their expenditure, allowing the claim

24  to go forward against him personally would fly in the face of California public

---

[6] Our research found no case in which a current or former governmental employee has ultimately been held personally liable for damages under section 526a, even in the context of political expenditures.

1   policy favoring indemnification of employees by their employers. *See, e.g.,* Cal.

2   Labor Code §2802; *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, 952 (2008)

3   ("California has a strong public policy that favors the indemnification (and defense)

4   of employees by their employers for claims and liabilities resulting from the

5   employees' acts within the course and scope of their employment…. [T]he purpose

6   of Lab. Code §2802 is 'to protect employees from suffering expenses in direct

7   consequence of doing their jobs'…. Lab. Code §2802 'shows a legislative intent that

8   duty-related losses ultimately fall on the business enterprise, not on the individual

9   employee.'") (internal quotations and citations omitted).

10       Plaintiff's conception of section 526a would invite unbridled and crippling

11  harassment of public officials. Were courts to endorse plaintiff's view, every

12  municipal settlement in litigation could be challenged under section 526a by any

13  taxpayer who felt the settlement was "too big" and blamed as a reason some

14  municipal lawyer's alleged failure to use due care in, *e.g.*, not trying the case, or

15  taking the wrong depositions, or propounding the wrong discovery, or not providing

16  a complete and accurate summary of the case to those governmental decision

17  makers who actually did control public funds and were authorized to expend them to

18  settle matters. Any of these—and boundless other—plausible critiques of attorney

19  conduct which could be characterized as the product of a lack of due care would

20  then expose that attorney to unlimited personal liability.

21       In sum, plaintiff seeks to make public employees personal indemnitors for

22  any payment of public funds traceable to the employees' asserted misconduct. Were

23  plaintiff's vision of section 526a liability to become the law, every public

24  employee—every police officer, every school bus driver, every municipal janitor,

25  every public hospital doctor, nurse, orderly and more—whose alleged failure to use

26  due care can be said to have eventually caused a public expenditure to be authorized

27

28

1  would face ruinous personal liability. And that exposure would include not just

2  reimbursement of monies paid out in settlements and judgments, but also the cost of

3  remediating a malfunctioning system (as was, for example, the case with the multi-

4  million dollar DWP customer care and billing system purchased from PwC

5  notwithstanding irregularities in the purchasing process that DWP employees

6  allegedly failed to properly address (*see* FAC ¶ 45)), the cost of additional

7  equipment (*e.g.*, the multi-million dollar implementation of body cameras for LAPD

8  officers, department-wide, arguably due to one or more officers' alleged

9  misconduct), or the cost of extensive retraining (the payment of overtime and other

10 costs, for example, to retrain all sanitation workers in safe driving techniques

11 following a tragic accident). Such a staggering expansion of potential governmental

12 employee personal liability would chill the actions of such employees (and the

13 desire of anyone to seek public employment) to absolute zero.

14        The *Stanson* rule merely allows suit against those few public employees who

15 actually do control public funds, are empowered to authorize their expenditure, and

16 do so. *Stanson* does not create personal liability for every public employee (or

17 former one) who daily engages in conduct that, for want of due care, may cause the

18 eventual expenditure of public money to be authorized for expenditure by those who

19 control it. Plaintiff's attempt to radically expand the ambit of section 526a liability

20 so far beyond—indeed, breathtakingly beyond—what is authorized by the *Stanson*

21 rule should only succeed following deliberative legislative action by the Assembly,

22 Senate and Governor, or by an express recasting and expansion of the rule by the

23 California Supreme Court itself.

24        Until such an extraordinary change in the law occurs, public employees (such

25 as Peters) who lack control over public funds or the power to authorize their

26 expenditure must be excused from any suit seeking repayment of that expenditure,

27

28

16

1  no matter how heinous the employee's acts are claimed to have been.

2  No conceivable amendment to the complaint can overcome the limitations on

3  section 526a liability articulated by *Stanson*.[7]

4  **CONCLUSION**

5  Because the FAC has not and cannot plausibly allege that Peters ever had

6  control over the $176,195 in public funds at issue, and because it is implausible that

7  Peters himself authorized the expenditure of those funds for the Pansky Report,

8  no section 526a action lies against him. The case against Peters should therefore be

9  dismissed without leave to amend.

10

11  DATED: August 16, 2021        ROBIE & MATTHAI
                                    A Professional Corporation

12

13

                                    By:  /s/ T. John Fitzgibbons
14                                       EDITH R. MATTHAI
                                         T. JOHN FITZGIBBONS
15                                       Attorneys for Defendant,
                                         THOMAS H. PETERS
16

17

18

19

20

21

22

23

24

---

25  [7] Peters also joins the arguments of the other defendants, which include that Jones did not comply with pre-suit requirements, his section 526a claim is untimely, and

26  his section 526a claim is barred by the litigation privilege and the Noerr-Pennington doctrine.

27  17

28