1
2
3
4
5
6
7
8
9
10
11

United States District Court
Central District of California

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Antwon Jones,

            Plaintiff,

v.

City of Los Angeles et al.,

            Defendants.

Case No. 2:20-cv-11502-VAP-(JCx)

**Order DENYING Motion to Strike (Doc. No. 59) and GRANTING Motions to Dismiss (Doc. Nos. 60, 61, 65)**

12      Defendant the City of Los Angeles ("City") filed a Motion to Strike on

13  August 16, 2021.  (*See* Doc. No. 59.)  Defendants Michael Feuer ("Feuer"),

14  Thomas Peters ("Peters"), and James Clark ("Clark") each filed a Motion to

15  Dismiss on August 16, 2021.  (*See* Doc. Nos. 60, 61, 65.)  Plaintiff Antwon

16  Jones ("Jones") opposed each of the motions on September 7, 2021.[1]  (*See*

17  Doc. Nos. 67, 68, 70, 71.)  The City, Feuer, Peters, and Clark (collectively,

18  "Defendants") each replied on September 20, 2021.  (*See* Doc. Nos. 71-75.)

19
20      After considering all papers filed in support of, and in opposition to,

21  the motions, as well as the arguments advanced at the hearing, the Court

22  **DENIES** the Motion to Strike and **GRANTS** each of the Motions to Dismiss.

23
24

25      [1] The City and Feuer point out that Jones filed his oppositions after the 4:00
    p.m. deadline set out in the Court's Standing Order (Doc. No. 10).  The
26  Court has considered the oppositions.

1

## I.    BACKGROUND

Defendants each filed a Motion to Dismiss Jones's Complaint on March 15, 2021.  (*See* Doc. Nos. 21, 24, 25.)  On June 25, 2021, the Court issued its Order granting, in part, the Motions to Dismiss filed by the City and Feuer, with leave to amend.  (*See* Doc. No. 49.)  Jones amended his Complaint and filed his First Amended Complaint ("FAC") on July 9, 2021.  (*See* Doc. No. 50.)

The 127-page FAC alleges many of the same facts contained in the Complaint.[2]  (*See id.*)  In summary, the FAC alleges Clark was responsible for the City's defense in *Jones v. City of Los Angeles*, Los Angeles Superior Court, No. BC577267 ("*Jones Class Action*"), and the litigation of its claims in *City of Los Angeles v. Pricewaterhouse Coopers, LLP et al.*, Los Angeles Superior Court, No. BC574690 ("*PwC Action*").  (FAC ¶ 19.)  Clark reported directly to Feuer who was the lead attorney for the City and the policymaker in the Los Angeles City Attorney's Office ("LACAO").  (*Id.* ¶¶ 18-19.)  Peters, who reported to Clark, was responsible for supervising Paradis and his co-counsel in the *PwC Action*.  (*Id.* ¶ 20.)  Peters was also involved in defending and settling the *Jones Class Action.*  (*Id.*)

//

//

---

[2] The Court discusses the background of the action in more detail in its June 25, 2021 Order.  (*See* Doc. No. 49.)

United States District Court
Central District of California

United States District Court
Central District of California

1   Jones again alleges that the attorneys involved covered up their

2   misconduct, thus preventing it from coming to light until 2019.[3]  (*See id.* ¶

3   325.)  This "cover-up" involved perjury, discovery abuses,

4   misrepresentations to the Court, and suppression and destruction of

5   evidence in the *PwC Action*, as well as the commissioning of an ethics

6   report, ("the Pansky Report"), that falsely exonerated the City's officials for

7   their role in the misconduct.  (*Id.* ¶¶ 9, 325, 327.)  As a result, Jones

8   contends that his discovery of the misconduct came too late for him to

9   initiate timely legal action against the City, and he was thus deprived of his

10   constitutional right to access the courts.  (*Id.* ¶ 10.)

11

12   Jones asserts two claims in his individual capacity: a claim against the

13   City pursuant to 42 U.S.C. section 1983 ("section 1983") for deprivation of

14   his constitutional rights, and a claim against all Defendants for waste of

15   taxpayer funds under California Code of Civil Procedure section 526a

16   ("section 526a").  (FAC ¶¶ 314-48.)  The City filed a Motion to Strike

17   amendments to the section 1983 claim (*see* Doc. No. 59.), and Feuer, Clark,

18   and Peters each filed a Motion to Dismiss the section 526a claim.  (*See*

19   Doc. Nos. 60, 61, 65.)

20   //

21   //

22

23

24   _____

25   [3] In 2019, Judge Berle appointed new class counsel and a special master
to investigate the fairness of the settlement and related misconduct, includ-

26   ing the relationships between the City's counsel and Plaintiff's counsel in
the *Jones Class Action*.  (FAC ¶¶ 261, 273.)

3

## II.    LEGAL STANDARD

### A.   Motion to Strike Pursuant to Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)

In determining whether to grant a motion to strike, a district court views the pleadings in the light most favorable to the non-moving party.  *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted).  Whether to grant a motion strike is within the sound discretion of the district court.  *Id.*

### B.   Motion to Dismiss Pursuant to 12(b)(1)

Dismissal under Rule 12(b)(1) is proper if the Court lacks subject matter jurisdiction to adjudicate claims asserted in a plaintiff's complaint. Fed. R. Civ. P. 12(b)(1).  To satisfy Article III's standing requirements, the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A motion to dismiss under a Rule 12(b)(1) challenge to subject matter jurisdiction may be facial or factual.  Here, Defendants present a facial attack, which

"accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has jurisdiction to hear his claims.  *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Id.* at 13-14 (internal quotation marks and citation omitted) (alteration in original).

### C.   Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th

Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

## III.    JUDICIAL NOTICE

In connection with the Motion to Dismiss, Defendant Feuer requests, in part, judicial notice of Jones's Notice of Filing a Government Claim and the Denial Letter from the City of said claim.  (*See* Doc. No. 63.)  The Notice of Filing a Government Claim is a proper subject of judicial notice and the

United States District Court
Central District of California

United States District Court
Central District of California

1   Court GRANTS the request.  *See, e.g., Johnson v. Quality Loan Serv. Corp.*,

2   No. 18-09140, 2018 WL 6978196, at *3 (C.D. Cal. Dec. 18, 2018)

3   ("Documents are properly incorporated into the complaint by reference in

4   situations where the complaint necessarily relies upon a document or the

5   contents of the document are alleged in a complaint, the document's

6   authenticity is not in question and there are no disputed issues as to the

7   document's relevance.") (internal quotations and citations omitted).  The

8   Court also GRANTS the request as to the Denial Letter because it is a

9   government record.  *See Lifeway Foods, Inc. v. Millenium Prods., Inc.*, No.

10   16-7099, 2016 WL 7336721, at *1 (C.D. Cal. Dec. 14, 2016) ("Publicly

11   available government records are commonly subject to judicial notice.").

12   The Court does not reach the parties' remaining requests for judicial notice

13   as it does not rely on the underlying documents to resolve the Motions.

14   (*See* Doc. Nos. 62, 69.)

15

16   **IV.   DISCUSSION**

17   **A.  Motion to Strike**

18   After the Court's June 25, 2021 Order, Jones amended his section

19   1983 claims to allege that (1) the City and its employees "had mandatory

20   duties" (FAC ¶ 322), (2) the City and its employees failed to discharge

21   several newly alleged "mandatory duties imposed upon them" (*Id.* ¶ 323),

22   and (3) the City is liable to Jones under a theory of vicarious liability based

23   on the tortious conduct of City employees.  (*Id.* ¶ 324.)

24

25   The City contends that the Court should strike Jones's amendments

26   to his section 1983 claim because they exceed the Order's leave to amend

7

1    scope.  (*See* Doc. No. 59).  Specifically, the City argues that the Order limits

2    Jones's leave to amend only as to the section 526a claim and not the

3    section 1983 claim.  (*See* Doc. No. 58 at 4.)  City avers also that Jones's

4    amendments will "severely and substantially prejudice the City," and thus

5    the Court should strike the amendments.  (*See* Doc. No. 58 at 5.)

6

7        According to Jones, the City fails to challenge the amendments on

8    any grounds enumerated in Federal Rules of Civil Procedure 12(f).  (*See*

9    Doc. No. 67 at 9-10.)  Jones argues also that the amendments to his section

10   1983 claim are within the scope of the Order.  (*See id.* at 10.)  Specifically,

11   the Order does not expressly prohibit amendments to the section 1983

12   claim because the only limitation is the filing deadline.  (*See id.* at 11-12.)

13   Jones avers also that even assuming the amendments exceed the Order's

14   scope, the City fails to show prejudice, and the Court may deny the Motion

15   to Strike in the interest of judicial economy.  (*See id.* at 12-15.)

16

17       Although Jones's amendments to the section 1983 claim exceed the

18   scope of the Order, the Court declines to strike his amendments.  "[D]istrict

19   courts often strike new claims, parties or factual allegations of an amended

20   complaint that are beyond the permissible scope of a court's prior order

21   granting leave to amend."  *Brown v. Stroud*, No. 08-2348, 2011 WL

22   13312050, at *3 (N.D. Cal. Jan. 28, 2011).  "[T]he court, [however,] may

23   choose not to strike the pleading in the interests of judicial economy" even

24   "when a pleading is improperly filed."  *Manzano v. Metlife Bank N.A.*, No.

25   11–00651, 2011 WL 2080249, at *3 (E.D. Cal. May 25, 2011) (collecting

26   cases).  "This is often true when leave to amend would have been granted

United States District Court
Central District of California

8

United States District Court
Central District of California

had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change."  *Id.*  (citation omitted).

Jones's argument that the Court can only strike amendments on the grounds enumerated in Federal Rules of Civil Procedure 12(f) fails.  The Court also may strike amendments that exceed the scope of the permission to amend.  *See Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1125 (C.D. Cal. 2015) (striking amendments "that exceed[ed] the leave to amend granted.").  The City therefore may challenge the amendments on that basis.

The Court examines its Order granting leave to amend to determine whether it limited the scope of the amendment.  *See Jameson Beach Prop. Owners Ass'n v. United States*, No. 13-01025, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014) ("courts looked at the specific language of the prior order to determine whether or not leave to amend was granted without limitation.") (citation omitted).  The Court's Order explicitly stated, "[t]he [section 526a] claim is therefore DISMISSED for lack of standing with leave to amend."  (Doc. No. 49 at 19.)  In other words, the Court's dismissal was specific to the section 526a claim and gave no express leave to amend any other claim.

Nevertheless, the Court, in the interest of judicial economy, denies the City's Motion to Strike.  Courts freely give leave to amend when justice so requires.  *See Manzano*, 2011 WL 2080249, at *3; Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.");

1    *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th

2    Cir. 2001) (policy favoring leave to amend "is to be applied with extreme

3    liberality").  Although the City cites *Barker v. Avila*, No. 09-00001, 2010 WL

4    3171067 (E.D. Cal. Aug. 11, 2010), in support of its contention to strike the

5    amendments, *Barker* is distinguishable.  The *Barker* court granted the

6    motion to strike new amendments after entering a Rule 16 Status (Pretrial

7    Scheduling) Order that expressly prohibited *any* further amendment absent

8    a showing of *good cause*.  *Id.* at *1-*2 (emphasis added).  The Order here,

9    in contrast to the one issued in *Barker*, does not contain any language

10   expressly prohibiting other amendments or require a good cause showing to

11   amend.

12

13       The City also fails to show prejudice.  The City argues in a conclusory

14   sentence that the amendments will "severely and substantially prejudice the

15   City."  (*See* Doc. No. 58 at 5.)  Jones, however, correctly points out this case

16   is in its infancy, *i.e.*, the Court has not entered a scheduling order,

17   Defendants have not answered, and the parties have not served discovery

18   requests.  (*See* Doc. No. 67 at 13.)  Accordingly, it would be "premature to

19   strike portions" of his FAC that fail to comply with the Court's Order.  *See*

20   *Vahora v. Valley Diagnostics Lab'y, Inc.*, No. 16-01624, 2017 WL 2572440,

21   at *4 (E.D. Cal. June 14, 2017) ("This case is in its infancy and the Court

22   has not yet entered a scheduling order.  Consequently, Plaintiff may be able

23   to successfully move to amend his complaint, such that the entire Amended

24   Complaint would become the operative complaint in this action.  The Court

25   thus finds that it is premature to strike the portions of Plaintiff's Amended

26   Complaint that do not comply with the Court's Order.").

United States District Court
Central District of California

For the reasons stated above, the Court **DENIES** the City's Motion to Strike Jones's amendments to his section 1983 claim.

### B.   Motions to Dismiss

1.   Article III Standing

The Court now turns to the Motions to Dismiss Jones's section 526a claim.[4]  Clark contends that the Court should dismiss Jones's FAC because Jones lacks Article III standing.[5]  According to Clark, the FAC lacks any plausible, factual allegations that Clark had any authority to authorize expenditures for the Pansky Report, the challenged conduct.  (*See id.* at 6.) Clark argues also that Jones's alleged injury as a taxpayer is insufficient to confer standing, and that he fails to allege how he was harmed by the City's expenditure on the Pansky Report.  (*See id.* at 6-7.)

Jones argues he has Article III standing because he paid municipal taxes "directly to" the City.  (*See* Doc. No. 70 at 15.)  According to Jones, Clark, among others, authorized the expenditure of taxpayer funds on the Pansky Report.  (*See id.*)  Finally, Jones contends that the FAC alleges a specific expenditure of municipal taxpayer dollars and damage to the public fisc to establish direct injury under Article III standing.  (*See id.* at 16.)

---

[4] To the extent Clark's Motion to Dismiss challenges Jones's standing, the Court considers it under Rule 12(b)(1).

[5] Feuer's Motion to Dismiss joins Clark's Article III standing challenge as to causation and injury.  (*See* Doc. No. 60 at 13 n.3.)

United States District Court
Central District of California

The Supreme Court has reasoned that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate," and arises from the "peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation." *Frothingham v. Mellon*, 262 U.S. 447, 486–87 (1923); 74 Am. Jur. 2d Taxpayers' Actions § 13 (2021) ("Since the taxpayer is considered an equitable owner of municipal funds and is obliged to replenish the public treasury for any deficiency that would be caused by the misappropriation or wrongful expenditure thereof, the principle permitting taxpayers' actions in matters involving municipal corporations is based primarily on an analogy to a well-settled doctrine in equity governing private corporations whereby each stockholder has an interest in the property or funds of the corporation and may intervene to protect such property or funds from the illegal or fraudulent acts of the corporate officers."). A plaintiff who asserts a section 526a claim in federal court, however, is not relieved "of the obligation to establish a direct injury under the more stringent federal requirements for state and municipal taxpayer standing." *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). "[A] plaintiff must allege a direct injury caused by the expenditure of tax dollars" and the pleadings must "set forth the relationship between taxpayer, tax dollars, and the allegedly illegal government activity." *Id.* (internal quotation marks and citations omitted).

The FAC pleads factual allegations sufficient to establish the injury in fact requirement. Jones shows he paid specific municipal taxes—e.g., Electricity Users Tax, Gas User Tax, Communication User Tax, and Sales

12

United States District Court
Central District of California

Tax—"directly to" the City, which in turn fund the City's General Fund.  (FAC ¶¶ 340-343.)  Jones further pleads, and Clark does not dispute, that the City expended $176,195 from City taxpayer funds on the Pansky Report.  (FAC ¶¶ 340-343.); *cf. Cantrell*, 241 F.3d at 683 ("When a plaintiff has failed to allege that the government spent *specific amounts of tax dollars* on the challenged conduct, we have denied standing.") (emphasis added). Accordingly, Jones has a "good-faith pocketbook" action because his municipal taxes directly funded the City's General Fund that paid for the Pansky Report, and also there is injury to the public fisc.  *See Burwell v. Portland Sch. Dist.*, 857 F. App'x 377, 379-80 (9th Cir. 2021) ("municipal taxpayer standing is limited to 'good-faith pocketbook action[s].'") (quoting *Doremus v. Bd. of Educ.*, 342 U.S. 429, 434 (1952)); *Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991) ("[T]he *Doremus* requirement of a pocketbook injury applies to municipal taxpayer standing.").

Clark's reliance on *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) and *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011), is misplaced.  The *DaimlerChrisler* Court confirmed that the general bar on federal taxpayer standing applies also to state taxpayer standing.  *See* 547 U.S. at 346.  The Court, however, did not extend the same bar to municipal taxpayer standing.  *Id.*  As described above, municipal taxpayer standing differs because taxpayers' relationship to the municipality, like Jones's to the City, is "direct and immediate," akin to a stockholder's relationship to its private corporation.  *See Frothingham*, 262 U.S. at 486–87 ("The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate."); *see also Smith v. Jefferson Cnty. Bd. of School Com'rs*, 641

13

F.3d 197, 210 (6th Cir. 2011) (en banc) ("Plaintiffs seeking to establish municipal-taxpayer standing are required to meet a less rigorous injury standard than those seeking standing as federal or state taxpayers.")  *Winn* also is inapposite.  The *Winn* Court held the general bar on taxpayer standing applied because Arizona's form of state support relied on a tax credit scheme, and therefore the state did not extract directly from plaintiffs' pockets, *i.e.*, there was no pocketbook injury.  *Winn*, 563 U.S. at 142. Jones's action, in contrast, does not involve a tax credit scheme but rather the City's direct expenditure from its General Fund, which Jones paid into as a municipal taxpayer.  (FAC ¶¶ 340-343.)

The FAC, however, fails to plead sufficient factual allegations to establish causation as to Clark.  To establish causation, "the injury must be 'fairly traceable to the defendant's allegedly unlawful conduct.'"  *Turner v. City & County of San Francisco*, No. 11-1427, 2012 WL 6631490, at *4 (N.D. Cal. Dec. 19, 2012), *affirmed by* 617 F. App'x 674, 677 (9th Cir. 2015) (quoting *DaimlerChrysler*, 547 U.S. at 342).  The Court notes that causation exists as to the City, Feuer, and Peters.  The City itself, through its General Fund, paid for the Pansky Report; that payment constituted the alleged unlawful conduct.  (FAC ¶¶ 340-343.)  As to Feuer, he "approve[s] in writing the draft of all contracts," and he announced the hiring of Ellen Pansky to investigate and report.  (FAC ¶¶ 235, 237; Ex. 2, Doc. No. 62.)  Finally, Peters negotiated the terms of Pansky's retainer agreement.  (FAC ¶¶ 236-237.)  Accordingly, the City, Feuer, and Peters have a direct relationship to the alleged unlawful conduct.

14

The FAC, however, lacks factual allegations sufficient to show Clark's direct involvement with the expenditure on the Pansky Report.  Jones alleges only that Clark had supervisory authority in the *PwC Action*, "directed the entire [*Jones Class Action*] strategy" (FAC ¶¶ 19, 269), and reported directly to Feuer.  (FAC ¶ 19.)  Further, Clark allegedly was involved in key aspects of the "collusive scheme and coverup."  (*See* Do. No. 70 at 17.)  These facts, however, fail to show Clark was the person who authorized the expenditure for the Pansky Report or that he had any authority to do so, and thus fails to establish causation.  *See Cantrell*, 241 F.3d at 683.

The Court therefore GRANTS Clark's Motion to Dismiss for lack of Article III standing.

2.   Supplemental Jurisdiction

Although Jones lacks Article III standing as to Clark, he has standing as to the City, Feuer, and Peters, *supra*.  The Court therefore considers whether to exercise supplemental jurisdiction over Jones's section 526a claim.  Feuer's Motion to Dismiss contends that the Court should decline supplemental jurisdiction because the section 526a claim raises specific questions about California law, namely, section 526a's pre-lawsuit requirement, the applicable statute of limitations, and issues of municipal government and local tax dollars.  (*See* Doc. No. 60 at 14-15.)  Feuer's relies on *Hous. Is a Hum. Right Orange Cnty. v. County of Orange*, No. 19-0388, 2019 WL 6481311, at *6 (C.D. Cal. Aug. 12, 2019), where the court declined supplemental jurisdiction over the plaintiff's section 526a claim

because there was "prior related litigation" in state court.  (*See* Doc. No. 60 at 14-15.)  According to Feuer, there exists prior litigation in state court here, and the state court must resolve several unanswered questions.  (*See id.* at 15.)

According to Jones, the Court should exercise supplemental jurisdiction over his section 526a claim for several reasons.  (*See* Doc. No. 68 at 21).  First, the Court has original jurisdiction over his section 1983 claim.  (*See id.* at 22.)  Second, Jones's section 526a claim does not predominate over his section 1983 claim.  (*See id.*)  Third, section 526a's statute of limitations and pre-lawsuit requirement are not novel or involve complex state issues.  (*See id.*)  And fourth, in addressing the section 1983 claim, the Court will resolve any question remaining about the underlying state court action.  (*See id.* at 22-23.)

Jones's arguments are unavailing.  A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  District courts may decline supplemental jurisdiction when "(1) the claim raises a

novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

Although the Court is not required to explain its reasons for declining supplemental jurisdiction under the first three factors, the Court notes the novel and complex issues of California law that warrant declining supplemental jurisdiction.  *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).  As to the pre-lawsuit requirement, there exist no novel issues that arise under California law.  In general, "a prerequisite to [a section 526a] suit [is that] a demand must be made upon the appropriate officials."  *Tenwolde v. County of San Diego*, 14 Cal. App. 4th 1083, 1093-94 (1993).  Where the "public agency[,] [however,] has expended funds illegally or for an unlawful purpose and its management is in the hands of the persons accused of the wrongdoing, a taxpayer is not required to make a demand on the public agency as it would be unavailing."  *Gilbane Bldg. Co. v. Superior Ct.*, 223 Cal. App. 4th 1527, 1533 (2015).

Feuer's reliance on *Gilbane* is misplaced when arguing that the FAC fails to plead facts that show LACAO would not have corrected Feuer's wrongdoing.  (*See* Doc. No. 59 at 10.)  The *Gilbane* court held only that it was *unlikely* that Defendant's school district officials would have initiated a lawsuit to correct its own wrongs because Plaintiff alleged the officials were involved in the wrongdoing.  223 Cal. App. 4th at 1533 (emphasis added).

In the present case, Jones similarly "allege[s] [LACAO] officials, including [Feuer], were involved in the wrongdoing subject to its lawsuit." (FAC ¶¶ 346-48); *Gilbane*, 233 Cal. App. 4th at 1522. Accordingly, "it is *unlikely* that [LACAO] officials would have initiated a lawsuit to correct its own wrongs." *Gilbane*, 233 Cal. 4th at 1522 (emphasis added). Further, that Jones submitted his July 2019 Government Claim for monetary damages to LACAO, and it rejected the claim without any explanation, provides further support for Jones's allegation that the City was unlikely to sue. (Ex. 2, Doc. No. 63-2; Ex. 3, Doc. No. 63-3.) These allegations sufficiently support a conclusion that Jones would not have expected a different outcome when making a pre-lawsuit demand for this action. *See Gilbane*, 233 Cal. App. 4th at 1522; (FAC ¶¶ 346-48); *see also Doe*, 419 F.3d at 1062; *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As to section 526a's statute of limitations, however, California law remains unclear. Federal courts apply state substantive law, including statutes of limitation, as derived from state statutes and decisions of the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The language of section 526a contains no statute of limitations, but the California Supreme Court in *City of Ontario v. Superior Ct.*, 2 Cal 3d. 335, 345 (1970), stated "the statute of limitation in an ordinary taxpayers' suit is one year (Code Civ. Proc. s 526a)." Since deciding *City of Ontario*, the California Supreme Court has not rejected the one-year statute of limitations to section 526a claims. California's lower courts, however, have expressly rejected reading section 526a as having a one-year statute of limitations. The *Plunkett v. City of Lakewood* court expressed in a footnote

that "[t]he text of section 526a does not support the suggestion in *City of Ontario v. Superior Court*, 2 Cal.3d 335, 345 [85 Cal.Rptr. 149, 466 P.2d 693], that the section creates a one-year period of limitation.  By its terms the section authorizes an action by a taxpayer who has paid a tax within one year last past and thus relates to the standing of the litigant to sue and not to his diligence in commencing suit."  44 Cal. App. 3d 344, 346 n.1 (1975).  The *Nolan v. Redevelopment Agency* court similarly stated that section 526a's reference to one year "is not a statute of limitations, but a description of the class of persons entitled to bring such actions."  117 Cal. App. 3d 494, 502 (1981) (citing *Plunkett*, 44 Cal. App. 3d 344 at 346).  Although *City of Ontario* is dicta, the lower court cases rejecting the one-year statute of limitations also are dicta.  Accordingly, California courts are the proper forum to resolve such issues, and the Court will not impose its interpretation of the California Code of Civil Procedure.[6]  *See Erie*, 304 U.S. at 78.

The Court notes also that novel issues exist as to who is personally liable for government waste under section 526a.  In *Stanson v. Mott*, 17 Cal. 3d 206 (1976), the California Supreme Court held that "public officials must use 'due care,' *i.e.*, reasonable diligence, in authorizing the expenditure of public funds, and may be subject to personal liability for improper expenditures made in the absence of such due care."  *Id.* at 226-27.  Thus, *Stanson* suggests liability is limited only to those "officials who control public funds" and can "authoriz[e] the expenditure of public funds."  *Id.* at 226.

_____

[6] Jones cites no authority applying California Code of Civil Procedure section 338(a)'s three-year statute of limitations, or California Code of Civil Procedure section 343's four-year statute of limitations, on section 526a claims. (*See* Doc. No. 68 at 14.)

United States District Court
Central District of California

This interpretation, however, contravenes the plain language of section 256a extending liability to any officer, agent, or other person, acting on behalf of the local agency.  *See* Cal. Civ. P. § 526a(a).  Lower California courts have interpreted section 526a's text to extend liability more broadly. *See Vasquez v. State of California*, 105 Cal. App. 4th 849, 857 (2003) ("[A]lthough by its terms the statute applies to local governments, it has been judicially extended to all state and local agencies and officials.") (internal quotations and citations omitted); *Cal. Assn. for Safety Educ. v. Brown*, 30 Cal. App. 4th 1264, 1281 (1994) ("Taxpayer suits may be brought against a state agency or officer.").  Arguably, under *Stanson*, only the City and Feuer, those who control public funds and authorize expenditures, are personally liable for government waste.  17 Cal. 3d at 226.  Accordingly, these novel issues of California law are not for this Court to resolve.

For the reasons stated above, the Court declines to exercise supplemental jurisdiction and therefore GRANTS Feuer's Motion to Dismiss Jones's section 526a claim.  As Clark and Peters also challenge the section 526a claim, the Court GRANTS Clark's and Peters's Motions to Dismiss, for the same reasons as described above.

//

//

# V.    CONCLUSION

For the reasons stated above, the Court **DENIES** the City's Motion to Strike and **GRANTS** each of Feuer's, Clark's, and Peters's Motions to Dismiss the .

The Court grants the Motions by Defendants the City of Los Angeles, Michael Feuer, James Clark, and Thomas Peters to dismiss the second claim in the FAC; that claim is DISMISSED WITHOUT PREJUDICE to Plaintiff's right to refile it in the California Superior Court.

Defendants shall file their Answers to the remaining claim in Jones's First Amended Complaint no later than November 5, 2021.

**IT IS SO ORDERED.**

Dated:    10/5/21

Virginia A. Phillips
United States District Judge