Kathleen A. Kenealy (State Bar No. 212289)
  Chief Deputy City Attorney
  kathleen.kenealy@lacity.org
Joseph A. Brajevich (State Bar No. 156144)
  General Counsel, Department of Water and Power
  joseph.brajevich@ladwp.com
LOS ANGELES CITY ATTORNEY'S OFFICE
221 N. Figueroa Street, Suite 1000
Los Angeles, California 90012

Eric M. George (State Bar No. 166403)
  egeorge@egcfirm.com
Guy C. Nicholson (State Bar No. 106133)
  gnicholson@egcfirm.com
Kathryn L. McCann (State Bar No. 245198)
  kmccann@egcfirm.com
Jason Y. Kelly (State Bar No. 274144)
  jkelly@egcfirm.com
ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
City of Los Angeles

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANTWON JONES, an individual and California taxpayer,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL N. FEUER, in his individual and official capacities; JAMES P. CLARK, in his individual and former official capacities; and THOMAS H. PETERS, in his individual and former official capacities,<br><br>                    Defendants. | Case No. 2:20-CV-11502-VAP-JCx<br><br>Hon. Virginia A. Phillips<br>Magistrate Jacqueline Chooljian<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:   Hon. Virginia A. Phillips<br>Date:    March 21, 2022<br>Time:    9:00 a.m.<br>Crtrm:   8A |

1  TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on Monday, March 21, 2022, at 9:00 a.m., or as

3  soon thereafter as this matter may be heard before the Honorable Virginia A. Phillips,

4  in Courtroom 8A, First Street Courthouse, 350 West 1st Street, Los Angeles,

5  California 90012, Defendant City of Los Angeles ("Defendant" or "City") will move,

6  and hereby does move, pursuant to Federal Rule of Civil Procedure 56 for summary

7  judgment against Plaintiff Antwon Jones ("Plaintiff" or "Jones") on the viability of

8  the First Cause of Action in the First Amended Complaint (Dkt. No. 50; the "FAC"),

9  which is the sole remaining claim in this action, that alleges that the City violated

10  Plaintiff's constitutional right to access the courts in violation of 42 U.S.C. § 1983

11  (the "Section 1983 Claim").

12       The grounds for this Motion are as follows: based on the undisputed facts, the

13  City is entitled to judgment as a matter of law because Plaintiff cannot establish the

14  essential element of causation for his Section 1983 Claim.  In this regard, Plaintiff

15  contends that the loss of his right to bring state-law causes of action against his former

16  attorney, Paul O. Paradis ("Paradis"), and the City was caused by a "cover up" of facts

17  supporting those causes of action which he did not discover until the statutes of

18  limitation had expired.  The applicable statutes of limitation, however, were not even

19  triggered until Plaintiff discovered the wrongdoing – thus, regardless of the so-called

20  "cover up," Plaintiff had plenty of time to bring his state-law causes of action.  He

21  just missed the deadline.  The City did not cause Plaintiff to lose his right to access

22  the courts – Plaintiff did.

23       This Motion is based on this notice; the accompanying memorandum of points

24  and authorities; the separate statement of uncontroverted facts and conclusions of law

25  (the "SUF"); the Declaration of Kathryn L. McCann and exhibits attached thereto (the

26  "McCann Declaration"); the accompanying record in this matter; and such other

27  further papers, evidence, and oral and written argument as may be submitted in

28  connection with this Motion.

1    This Motion is made following the conference of counsel pursuant to L.R. 7-3

2  which took place on February 4, 2022.  (McCann Decl. ¶ 14.)

3  DATED:  February 18, 2022          ELLIS GEORGE CIPOLLONE
                                       O'BRIEN ANNAGUEY LLP
4                                         Eric M. George
5                                         Guy C. Nicholson
                                          Kathryn L. McCann
6                                         Jason Y. Kelly

7

8                                   By: _____/s/ Guy C. Nicholson_____
9                                          Guy C. Nicholson
                                    Attorneys for Defendant City of Los Angeles
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS .......................................................................... 2

    A.  This Action's Remaining Parties And Claim For Relief ....................... 2

    B.  Jones Retained Paradis To Pursue Claims Involving Overbilling Of Electricity And Water ................................................................... 3

    C.  Paradis's Relationship With The City ................................................ 4

    D.  Paradis's Continuing Representation Of Jones .................................. 4

    E.  The "Cover-Up" ............................................................................. 6

    F.  Plaintiff's Government Claim Against The City .................................. 8

    G.  Plaintiff Files This Action Asserting A Section 1983 Claim Against The City ............................................................................ 9

III. LEGAL STANDARD .............................................................................. 10

IV. ARGUMENT ........................................................................................ 11

    A.  The City Did Not Cause Plaintiff To Lose His Right To Bring Causes Of Action Against Paradis In State Court ............................. 12

        1.  The Limitations Period To Bring Causes Of Action Against Paradis Was Not Triggered Until February 13, 2019, Leaving Plenty Of Time To Sue ..................................... 13

        2.  Even Though The Misconduct Began More Than Four Years Before It Was Discovered, Plaintiff Still Had Time To Sue ................................................................................ 15

        3.  In The Alternative, The Deadline To File Against Paradis Was Tolled Until June 27, 2019 When The Attorney-Client Relationship Ended .......................................... 16

    B.  Although Plaintiff Filed A Government Claim With The City, He Neglected To Sue Within Six Months Of The Date The Government Claim Was Rejected ........................................................ 17

V.  CONCLUSION ..................................................................................... 18

1989369

-i-

Case No. 2:20-CV-11502-VAP-JCx

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) ................................................................. 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................ 11

*Clarke v. Upton*,
   703 F. Supp. 2d 1037 (E.D. Cal. 2010) ............................................... 17

*Delew v. Wagner*,
   143 F.3d 1219 (9th Cir. 1998) ........................................................... 12

*Dowell v. Contra Costa Cty.*,
   928 F. Supp. 2d 1137 (N.D. Cal. 2013) ............................................... 17

*Harper v. Wallingford*,
   877 F.2d 728 (9th Cir. 1989) ............................................................. 11

*Himes v. Gastelo*,
   No. 18-cv-327, 2019 WL 1865160 (C.D. Cal. Jan. 30, 2019) ........................ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................ 11

*Mortimer v. Baca*,
   594 F.3d 714 (9th Cir. 2010) ............................................................. 11

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*,
   121 F.3d 496 (9th Cir. 1997) ............................................................. 11

*Nidds v. Schindler Elevator Corp.*,
   113 F.3d 912 (9th Cir. 1997) ............................................................. 11

*Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
   18 F.3d 1468 (9th Cir. 1994) ............................................................. 10

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................................... 11

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Rogers v. Giurbino*,
    625 F. App'x 779 (9th Cir. 2015)................................................................ 14

*S. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) .................................................................... 11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987)..................................................................... 11

*Torres v. City of Los Angeles*,
    548 F.3d 1197 (9th Cir. 2008) ................................................................... 15

*Tran v. Young*,
    No. 17-cv-1260, 2021 WL 620229 (E.D. Cal. Feb. 17, 2021)........................... 15

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012) ................................................................... 12

**State Cases**

*Bergstein v. Stroock & Stroock & Lavan LLP*,
    236 Cal. App. 4th 793 (2015)............................................................... 13, 15

*Brandon G. v. Gray*,
    111 Cal. App. 4th 29 (2003).......................................................... 13, 15, 18

*Filbin v. Fitzgerald*,
    211 Cal. App. 4th 154 (2012).................................................................... 9

*Radovich v. Locke-Paddon*,
    35 Cal. App. 4th 946 (1995)..................................................................... 14

*Shaoxing City Maolong Wuzhong Down Prods., Ltd. v. Keehn & Assocs.*,
    238 Cal. App. 4th 1031 (2015).................................................................. 16

**Federal Statutes**

42 U.S.C. § 1983................................................................................. 1, 2

## TABLE OF AUTHORITIES
(Continued)

**Page**

**State Statutes**

Cal. Civ. Code § 3344 ................................................................................. 10

Cal. Code Civ. Proc. § 340.6 ...........................................10, 12, 13, 14, 15

Cal. Gov. Code § 911.2 ............................................................................... 17

Cal. Gov. Code § 913 ...........................................................................10, 17

Cal. Gov. Code § 945.6(a)(1) .........................................................9, 10, 17

**Other Authorities**

Fed. R. Civ. P. 56(c)(2) .............................................................................. 10

Fed. R. Civ. P. 56(e) ................................................................................... 11

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff, Antwon Jones ("Plaintiff"), is the named plaintiff in the class action lawsuit known as *Antwon Jones v. City of Los Angeles*, Los Angeles Superior Court Case No. BC577267 (the "Jones Action").  The Jones Action alleges that the City overbilled members of the class, including Plaintiff, for their utility services.

Plaintiff filed this lawsuit against the City on December 21, 2020, alleging that he was harmed by the City's "cover-up" and participation in wrongdoing by his former attorney, Paul O. Paradis ("Paradis"), which culminated in the Jones Action's settlement.  (Declaration of Kathryn L. McCann ("McCann Decl."), Ex. 1 (Dkt. No. 1).)  According to Plaintiff, by the time he discovered the wrongful conduct, the state-law statutes of limitation applicable to his purported causes of action for relief against Paradis and the City had expired which, in turn, deprived him of his federal civil rights under 42 U.S.C. § 1983 ("Section 1983") to access the courts to bring suit asserting those causes of action.  That is, but for the City's purported decision to conceal the existence of Plaintiff's purported state-law causes of action, he would have been able to timely bring them.

Whether the City participated in any wrongful act or omission, or assisted others to avoid detection of their misconduct, is immaterial for purposes of this motion.  As discussed below, Plaintiff – who was represented by the same counsel who represents him in this action – knew, or was on inquiry notice of, his purported state-law causes of action as early as February 13, 2019.  Consequently, Plaintiff still had at least one additional year, running from February 13, 2019, to file any cause of action sounding in malpractice against Paradis.  He never did so.

As to the purported state-law causes of action against the City, Plaintiff was required to submit a Government Claim form prior to filing suit and, upon rejection of that claim, had a full six months post-rejection to file a timely lawsuit against the City.  Plaintiff filed his Government Claim form on July 2, 2019.  On September 6,

2019, the City rejected the Government Claim, thereby establishing March 6, 2020 as the last day for Plaintiff to timely file a lawsuit against the City.

The uncontroverted evidence shows that Plaintiff lost the ability to bring his state-law causes of action because he neglected to timely file.  In other words, the City did not cause Plaintiff to lose supposedly valuable state-law causes of action – Plaintiff did that all by himself.  Because the City did not cause Plaintiff to defer filing his causes of action under state law, the City could not have violated his civil rights by supposedly denying him access to the courts.  The City is entitled to judgment in its favor as a matter of law.

## II.  **STATEMENT OF FACTS**[1]

### A.  **This Action's Remaining Parties And Claim For Relief**

Following two rounds of motions and one amendment to the complaint, the only claim remaining in this case is against the City based on an alleged violation of 42 U.S.C. § 1983 (the "Section 1983 Claim").  (Dkt. Nos. 50, 77.)  Plaintiff alleges that his attorney, Paradis, represented him in the Jones Action against the City but failed to disclose the fact that he also represented the City at the same time.  (McCann Decl., Ex. 2 (Dkt. No. 50) ¶ 7.)  Plaintiff theorizes that his civil rights were violated when the City secretly conspired with Paradis to settle the Jones Action on terms favorable to the City, and thereafter assisted Paradis in concealing his own misconduct.  (*Id.*, Ex. 2 ¶¶ 334, 335.)  According to Plaintiff, the concealment went

---

[1]  The evidence supporting this Motion comes from Plaintiff himself, including: (1) judicial admissions set forth in the FAC (McCann Decl., Ex. 2), (2) Plaintiff's deposition testimony taken on February 13, 2019 (*id.*, Ex. 3), and (3) admissions contained in Plaintiff's Government Claim form dated July 25, 2019 (*id.*, Ex. 5).  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").  Subject to its Answer, the City does not concede or admit any of the allegations made in the FAC; however, for the limited purpose of deciding this Motion, the City accepts and applies the FAC's allegations cited herein.

on for so long that, by the time he discovered it, the statutes of limitation to assert those causes of action had long expired – thereby depriving him of access to the courts – a purported violation of his civil rights.  (*Id.*, Ex. 2 ¶¶ 325-33.)

## B.   Jones Retained Paradis To Pursue Claims Involving Overbilling Of Electricity And Water

In July 2010, the Los Angeles Department of Water and Power (the "LADWP") retained PricewaterhouseCoopers, LLP ("PwC") to overhaul its information and billing system.  (*Id.*, Ex. 2 ¶ 44.)  The new billing system went live in September 2013; but due to unforeseen issues, many LADWP ratepayers were, among other things, overbilled and assessed inaccurate late-payment charges.  (*Id.*, Ex. 2 ¶ 45.) These billing errors led to a barrage of ratepayer complaints and several class actions being filed against the City in 2014 and 2015.  (*Id.*, Ex. 2 ¶ 46.)

In August 2014, Plaintiff received an unusually large LADWP bill.  (*Id.*, Ex. 2 ¶ 50.)  He complained about the overcharges on several websites, including one where he indicated that he wanted an attorney to contact him about filing a lawsuit.  (*Id.*, Ex. 2 ¶ 51.)  Paradis contacted Plaintiff in early December 2014 in response to his online complaint; and on December 9, 2014, Paradis sent Plaintiff a retainer agreement to represent him as a named plaintiff and putative class representative for a class action suit against PwC and other defendants to recover damages (the overcharges) for the erroneous LADWP bills.  (*Id.*, Ex. 2 ¶ 52.)  Plaintiff executed and returned the retainer agreement to Paradis on December 11, 2014.  (Separate Statement of Uncontroverted Facts ("SUF") No. 1.)

Shortly thereafter, Paradis suggested to Plaintiff that he sue PwC before bringing an action against the City.  (McCann Decl., Ex. 2 ¶ 76.)  On January 9, 2015, Paradis sent Plaintiff a draft complaint against PwC that identified Paradis and his firm, among other attorneys, as his counsel.  (*Id.*, Ex. 2 ¶¶ 77, 78.)  Plaintiff authorized Paradis to file that complaint; but according to Plaintiff, it was never filed.  (*Id.*, Ex. 2 ¶ 80.)

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### C.   Paradis's Relationship With The City

Around the same time that he was soliciting Plaintiff as a client, Paradis was retained as Special Counsel for the City to represent the City in a lawsuit against PwC (the "PwC Action"). (*Id.*, Ex. 2 ¶¶ 56, 59, 66.) As a result, as of January 2015, Paradis was representing both (i) Plaintiff in his billing-grievance class action, and (ii) the City in the PwC Action against PwC. (*Id.*, Ex. 2 ¶¶ 66, 67.) Plaintiff claims that Paradis did not disclose to him that Paradis had been retained by the City or that Paradis was representing him and the City at the same time. (SUF No. 2.) Plaintiff also claims he did not know at the time he retained Paradis that Paradis had any involvement with the City or its LADWP-related cases. (SUF No. 2.)

Thereafter, the LADWP entered into contracts with Paradis's law firm and consulting company to provide oversight, project management, and implementation services for the LADWP's remediation of the billing system and to compensate overcharged customers. (McCann Decl., Ex. 2 ¶¶ 149-51, 177.) Plaintiff claims that Paradis did not disclose these City contracts to him. (SUF No. 11.)

### D.   Paradis's Continuing Representation Of Jones

On or about March 26, 2015, Paradis introduced Plaintiff via email to Jack Landskroner ("Landskroner") as another attorney who would be working with Paradis on the billing class action. (McCann Decl., Ex. 2 ¶ 111.) On March 29, 2015, Paradis emailed Plaintiff a draft class action complaint suing the City in connection with the billing issues, with a copy to Landskroner. (*Id.*, Ex. 2 ¶ 112.) Paradis represented to Plaintiff that he and Landskroner would work together to move that case forward. (*Id.*, Ex. 2 ¶¶ 114, 115.)

On April 1, 2015, the underlying billing class action complaint against the City (*i.e.*, the Jones Action) was filed and, although the caption of the complaint did not identify Paradis as Plaintiff's attorney of record, Plaintiff still believed that Paradis was his lawyer and was still acting on his behalf. (SUF No. 3.) Indeed, Paradis "continued to have communications with" Plaintiff (SUF No. 4) and continued to

perform legal services on Plaintiff's behalf.  Those continuing services included, *inter alia*, drafting the April 2, 2015 settlement demand letter sent to the LADWP and, two years later, the declaration supporting a motion seeking court approval of the Jones settlement agreement in April 2017.  (SUF Nos. 5, 6.)  On February 13, 2019, Plaintiff testified during his deposition in the PwC Action that, "when [he] heard that a settlement offer had been made to the City," it was his "belief that that offer had been made by both Mr. Landskroner and Mr. Paradis on [his] behalf."  (SUF No. 14.)

A court order granting final approval of the settlement agreement for the Jones Action was entered on July 7, 2017.  (McCann Decl., Ex. 2 ¶ 183.)  Pursuant to that agreement, Jones received a full refund of all utility overcharges as well as a $5,000 service fee.  (*Id.*, Ex. 2 ¶¶ 184, 185.)

Paradis never withdrew from or terminated his attorney-client relationship with Plaintiff.  (SUF No. 9; *see also* SUF No. 25.)  As Plaintiff testified on February 13, 2019:

> Q. Did Mr. Paradis ever resign as being your attorney or withdraw from being your attorney?
>
> A. I don't have any formal communication saying that he's not my attorney anymore.
>
> Q. Did you ever fire him?
>
> A. No.

(SUF No. 9.)  Jones still believed that Paradis was his attorney since he "never received an email from Mr. Paradis saying that he wasn't my attorney anymore" and Jones never told Paradis that he was no longer his client.  (SUF No. 9.)  Instead, as Plaintiff set forth in his Government Claim form, it was Plaintiff who terminated the attorney-client relationship:

> In fact, Paradis and PLG's [Paradis Law Group] representation of Mr. Jones was only formally terminated recently, on June 27, 2019, when Mr. Jones' present

counsel sent counsel for Paradis, his partner Gina Tufaro
("Tufaro") and PLG a written notice of termination.

(SUF No. 25.)

### E.   The "Cover-Up"

Plaintiff alleges that Paradis and the City engaged in a cover up in the PwC Action and the Jones Action to conceal "their wrongful and actionable conduct against Mr. Jones from him."  (McCann Decl., Ex. 2 ¶ 325.)  This conduct included, *inter alia*, allegedly withholding and destroying evidence, making false statements to the Court, and committing discovery abuses.  (*Id.*, Ex. 2 ¶ 325.)  As alleged in his Government Claim, the efforts undertaken by Paradis and the City to conceal their misconduct ran so far and deep that: *"Prior to Mr. Jones's deposition on February 13, 2019, neither PwC, its counsel, plaintiffs' counsel in the Early Class Actions, nor the Court were aware that Paradis had been [representing Plaintiff and the City at the same time as a] result of Paradis' concerted efforts, in concert with the City and others, to keep these facts secret."*  (SUF Nos. 2, 26-29 (emphasis added).)

Plaintiff admits that he was completely in the dark as to Paradis's divided loyalties; that is, until his deposition was taken in the PwC Action on February 13, 2019.  (SUF No. 10.)  During that deposition, Plaintiff was represented by Isaacs Friedberg, LLP, the same counsel who filed, and represents him now in, the instant action.  (SUF No. 8.)  Plaintiff admitted at his deposition to learning for the first time that: (i) Paradis also represented the City (SUF No. 10), (ii) Paradis had entered into a separate contract with the City to oversee the work the LADWP was to conduct to implement the terms of the settlement agreement in the Jones Action (SUF No. 11), (iii) the allegedly collusive nature of the settlement (SUF No. 12), and (iv) to his great surprise, that Paradis had been sharing his case materials with the City without his knowledge or authorization (SUF No. 13).

Indeed, at a telephonic hearing that occurred during Plaintiff's deposition, Plaintiff's counsel even summarized his understanding of the facts as of that day:  "On

or about December 8th of 2014, Mr. Jones retained Mr. Paradis as his counsel. . . . He did not know that Mr. Paradis was also or may have been acting also as counsel for the City. . . . He had never authorized Mr. Paradis to communicate a copy or a draft of that draft Complaint to the City, did not know that Mr. Paradis was representing or was also special counsel for the City at that time, never waived the privilege." (SUF No. 15.)  Plaintiff's counsel further reiterated that "there is no written communication from Mr. Paradis that we have been able to find, or that Mr. Jones can recall or anybody else is aware of, by Mr. Paradis terminating his representing or Mr. Jones," and "as far as [Mr. Jones] was concerned, he was being represented by Mr. Paradis and Mr. Landskroner in the Jones versus DWP case." (SUF No. 9.)

After learning of the alleged misconduct by Paradis, the City, and others, Plaintiff and his attorneys continued to demonstrate that they knew the factual basis for his purported state-law causes of action against Paradis and the City.  For example, Plaintiff and his attorneys appeared at the March 4, 2019 proceeding in the PwC Action where accusations were levied (1) about "[t]he unethical nature of the arrangements between and among the City, Special Counsel and Mr. Landskroner" (SUF No. 16) and (2) that Plaintiff was "chosen" to be the plaintiff in the Jones Action "before that case was filed, Mr. Paradis had located him, secured an attorney/client relationship with him then gone to the City and gotten hired by the City simultaneously and came up with the plan to file and settle the case on the City's terms . . . without disclosing to Mr. Jones what was occurred." (SUF Nos. 17-19).  The attorneys at the hearing also discussed the issue of "whether Jones and the class were denied independent counsel to zealously represent with undivided loyalty their interest." (SUF No. 20.)  They questioned class counsel, Mr. Landskroner, about the nature of his representation in the Jones Action and Paradis's involvement in the case at the hearing, but Landskroner refused to answer, asserting his Fifth Amendment right against self-incrimination.  (SUF No. 20.)

1989369

-7-                                                Case No. 2:20-CV-11502-VAP-JCx

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

By March 25, 2019, Plaintiff's counsel was representing him in the Jones Action, the PwC Action, and other actions.  (SUF No. 21.)  Plaintiff's counsel was calling for an investigation into, *inter alia*, the relationship between lawyers in the PwC Action and the Jones Action, as well as into whether the Jones Action "was an actual adversarial proceeding, or was a sham lawsuit engineered by the City and its Special Counsel."  (SUF No. 21.)

On April 14, 2019, Plaintiff and his attorney appeared at a hearing for the appointment of new class counsel in the Jones Action.  (SUF No. 22.)  Plaintiff himself represented to the court that he would be able to work with whomever was appointed the new class counsel.  (SUF No. 23.)

Months later, in a declaration signed June 19, 2019, Plaintiff waived all privileges and protections, including the attorney-client privilege, with respect to his communications with Paradis.  (SUF No. 24.)  Plaintiff filed this declaration in opposition to an *ex parte* application that Paradis filed to prohibit Jones from producing privileged and protected information.  (SUF No. 24.)  By that time, Plaintiff was represented by new class counsel in the Jones Action and by the same attorneys who represent him in this action; but not by Paradis.  (SUF Nos. 21, 22, 25.)

**F.     Plaintiff's Government Claim Against The City**

On July 22, 2019, Plaintiff submitted a detailed Government Claim for damages to the City based on the very same set of facts alleged in the FAC and discussed herein above.   (SUF Nos. 26-29; McCann Decl., Ex. 5.)    Fairly summarized, Plaintiff's Government Claim form alleges that the entire settlement of the Jones Action was the product of an illicit and collusive arrangement involving Paradis and the City, among others, spanning several years, which somehow resulted in the Jones Action settling on terms more favorable to the City than it otherwise would have agreed to accept under normal circumstances.  (SUF Nos. 26, 29.)  Given that Plaintiff received a full refund of the amount he overpaid for his utility services, not to mention the aforementioned $5,000 service fee, he does not allege in the FAC,

what any supposedly more favorable settlement terms might have been.[2]  Plaintiff also alleged in his Government Claim that the City "intentionally joined, participated in, aided, abetted, [and] encouraged" Paradis's "defrauding" of Jones and breaches of his fiduciary duties to Jones.  (SUF Nos. 27, 28.)

On or about September 6, 2019, the City denied Plaintiff's Government Claim. (SUF No. 30.)  Plaintiff neglected to file a lawsuit against the City within six months of the City's September 6, 2019 rejection as required by California Government Code sections 913 and 945.6.  (SUF Nos. 31.)

**G.    Plaintiff Files This Action Asserting A Section 1983 Claim Against The City**

On December 21, 2020, Plaintiff filed this action against the City and three individual defendants.  (SUF No. 32.)  The only claim remaining in the operative complaint, the FAC, is against the City for alleged violation of Section 1983 by depriving Plaintiff of access to the courts to assert state-law causes of action against Paradis and the City.  (Dkt. Nos. 50, 77.)  The FAC claims Plaintiff possessed "[v]aluable" state-law causes of action against Paradis and against the City; but because of the City's cover-up "beginning in or about April 2015," he has lost his ability to pursue those causes of action that would have entitled him to "[s]ubstantial [r]elief" against Paradis and the City.  (McCann Decl., Ex. 2 ¶¶ 314-36.)

---

[2]    In *Filbin v. Fitzgerald*, 211 Cal. App. 4th 154 (2012), the California Court of Appeal described the heavy burden a legal malpractice plaintiff faces in a "settle and sue" lawsuit:

> A claim regarding an inadequate settlement often fails because it is inherently speculative. . . . A client, who was a plaintiff, must establish not only that concluding such a settlement fell outside the standard of care, but also what would have been a reasonable settlement and that such sums would have been agreed to *[by the defendant] and could have and would have been paid.*

211 Cal. App. 4th at 167 (emphasis added).

Those purported state-law causes of action against Paradis would have included (a) breach of fiduciary duty, (b) aiding and abetting Class Counsel's [Landskroner's] breaches of fiduciary duty, (c) misuse of identity for commercial purposes in violation of California Civil Code section 3344, (d) violation of the California Unfair Competition Law, (e) conversion, (f) unjust enrichment, (g) constructive fraud, (h) promissory fraud and intentional and negligent misrepresentation, (i) concealment, and (j) professional negligence.   (McCann Decl., Ex. 2 ¶ 320.) Plaintiff correctly concedes that his causes of action against Paradis are subject to the statute of limitations set forth in California Code of Civil Procedure section 340.6 ("Section 340.6").   (*Id.*, Ex. 2 ¶¶ 10, 328, 329.)

Plaintiff's purported state-law causes of action against the City would have included (a) breach of fiduciary duty and constructive fraud, (b) aiding and abetting Paradis's breaches of fiduciary duty and fraud, (c) conspiracy with Paradis, and (d) intentional interference with contractual relations between Plaintiff and Paradis and Paradis Law Group.   (*Id.*, Ex. 2 ¶ 321.)   Plaintiff also contends that the City was vicariously liable for the tortious conduct of its employees (*id.*, Ex. 2 ¶ 324), but acknowledges, as he must, that all of his purported causes of action against the City are subject to the requirements of the Claims Act (*id.*, Ex. 2 ¶¶ 10, 331-33), including the inflexible requirement that his claims be filed within six months of denial of the aforementioned government claim.   Cal. Gov. Code § 945.6(a)(1); Cal. Gov. Code § 913.

## III.   **LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when the material facts are uncontroverted.   *See Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994) (citation omitted).   "Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is warranted when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

1  judgment as a matter of law.'" *Mortimer v. Baca*, 594 F.3d 714, 721 (9th Cir. 2010);

2  *see also S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

3      Once the moving party demonstrates the absence of a material fact without

4  which a claim cannot survive, or proffers other facts precluding any reasonable chance

5  of success, the burden shifts to the opposing party to present admissible contra

6  evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

7  (1986).  To defeat summary judgment, there must be "sufficient evidence 'that a

8  reasonable jury could return a verdict for the nonmoving party.'" *Nidds v. Schindler

9  Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997).

10      Thus, the opposing party cannot simply stand on its pleadings and most

11  definitely cannot disavow his or her judicial or other admissions to avoid summary

12  judgment.  *See* Fed. R. Civ. P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pac. Elec.

13  Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nor can the opposing party

14  rest on conclusory statements.  *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121

15  F.3d 496, 502 (9th Cir. 1997).  Rather, the party resisting summary judgment has no

16  choice other than to "set forth specific facts showing that there is a genuine issue for

17  trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Phillip

18  Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1071 (C.D. Cal. 2004) (requiring

19  movant to "'set forth specific facts showing that there is a genuine issue for trial'").

20  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists"

21  does not preclude summary judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th

22  Cir. 1989).

23  **IV.    ARGUMENT**

24      Section 1983 provides that any person who, under color of law, deprives

25  another of any rights, privileges, or immunities secured by the Constitution or laws of

26  the United States shall be liable to the injured party.  Plaintiff's Section 1983 Claim

27  is premised on the theory that the City engaged in a cover-up that deprived Plaintiff

28  of his ability to file timely state-law causes of action against Paradis and the City.

(McCann Decl., Ex. 2 ¶ 10.)  Stated another way, Plaintiff's Section 1983 Claim is a backward-looking access-to-courts claim that alleges that, "due to official action, a specific case 'cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.'"  *Himes v. Gastelo*, No. 18-cv-327, 2019 WL 1865160, at *5 (C.D. Cal. Jan. 30, 2019), *report and recommendation adopted*, 2019 WL 3240092 (C.D. Cal. Mar. 25, 2019).  To prevail on the Section 1983 Claim, Plaintiff must prove, among other things, "but for and proximate causation."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).  He "must demonstrate that the [City's alleged] cover-up violated [his] right of access to the courts by rendering 'any available state court remedy ineffective.'"  *Delew v. Wagner*, 143 F.3d 1219, 1222-23 (9th Cir. 1998).  (*See also* McCann Decl., Ex. 2 ¶ 310 (citing *Delew*, 143 F.3d at 1223).)

As explained below, summary judgment must be granted in favor of the City because the time limitations applicable to Plaintiff's state-law causes of action had not expired because of anything the City did or did not do.  For this essential reason, the City did not violate Plaintiff's civil rights by denying him access to the courts. The uncontroverted evidence proves that Plaintiff not only became aware of his state-law causes of action prior to expiration of any statute of limitations, he went so far as to submit the required Government Claim form to the City detailing his charges, yet failed to file a lawsuit within six months of the date that the Government Claim was rejected, as California law requires.  The City did not cause Plaintiff's loss of access to the state courts – Plaintiff did.  His civil rights were not violated.

A.     **The City Did Not Cause Plaintiff To Lose His Right To Bring Causes Of Action Against Paradis In State Court**

Although Plaintiff correctly acknowledges that the timeliness of his causes of action against Paradis are governed by the statute of limitations in Section 340.6 (McCann Decl., Ex. 2 ¶ 329), his supposition that the City violated his civil rights by helping Paradis conceal the wrongdoing until it was too late to bring those causes of

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

action reflects a base misunderstanding of when a period of limitations is triggered or tolled.  Critical information allegedly concealed from him did not render "ineffective" the "state remedies" available to him.  (*Id.*, Ex. 2 ¶ 317.)

**1.  <u>The Limitations Period To Bring Causes Of Action</u>**

**<u>Against Paradis Was Not Triggered Until February 13,</u>**

**<u>2019, Leaving Plenty Of Time To Sue</u>**

Even if Paradis and the City acted to "cover up" or conceal their wrongdoing from Plaintiff beginning in 2015, as Plaintiff asserts in the FAC and in his Government Claim, such conduct is of no consequence because not even the shortest potentially applicable limitations period (one year) was triggered until February 13, 2019.  It was on that date Plaintiff admits he discovered the misconduct for the first time.  (SUF Nos. 9-15.)[3]  Among other things, Plaintiff learned that while Paradis purported to represent only his interests in the Jones Action, he also represented his adversary, the City, allegedly to his detriment.  (SUF Nos. 10, 12, 13, 15.)  This is more than enough to put him on inquiry notice and therefore to trigger the one-year period.  *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 820 (2015) ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery'; so long as a 'suspicion of wrongdoing' exists, 'it is clear that the plaintiff must go find the facts . . . .") (citing *Jolly v. Eli Lilly*, & Co., 44 Cal. 3d 1103, 1111 (1988)).  Section 340.6(a) is crystal clear:

> An action against an attorney for a wrongful act or
> omission, other than for actual fraud, arising in the

---

[3]  "[T]he accrual date of a cause of action is delayed until the plaintiff is aware of his or her injury and its cause. . . ." *Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35 (2003).  The period of limitations begins "to run when the plaintiff has a 'suspicion of wrongdoing'; in other words, when he or she has notice of information or circumstances to put a reasonable person on inquiry." *Id.*

1    performance of professional services shall be commenced

2    within one year after the plaintiff discovers, or through the

3    use of reasonable diligence should have discovered, the

4    facts constituting the wrongful act or omission, or four

5    years from the date of the wrongful act or omission,

6    whichever occurs first.

7    Cal. Code Civ. Proc. § 340.6(a); *see also Radovich v. Locke-Paddon*, 35 Cal. App.

8    4th 946, 966 (1995).

9          Given Plaintiff's unqualified admission that he did not discover the wrongdoing

10   until February 13, 2019, Section 340.6(a) afforded him another full year, until

11   February 13, 2020, within which to sue Paradis in state court.  Plaintiff has only two

12   choices:

13          •   Stick with his testimony proving that he was on

14             inquiry notice of the wrongdoing as of February 13,

15             2019, or

16          •   Attempt to reverse course and claim that he never had

17             enough information to be suspicious of anything.

18   Either way, the instant lawsuit fails as a matter of law because (i) if Plaintiff sticks

19   with his prior testimony, he clearly had sufficient time within which to bring suit

20   against Paradis – which he did not do; or (ii) if he successfully recants, it means that

21   the delayed discovery rule still has not been implicated and the limitations period still

22   has not been triggered – meaning, yet again that the City did not cause Plaintiff to lose

23   the right to bring causes of action under state law in state court.

24         Plaintiff's decision not to file a lawsuit prior to February 13, 2020 means that

25   he cannot prove an essential element of his Section 1983 Claim against the City – that

26   element being causation.  *See Rogers v. Giurbino*, 625 F. App'x 779, 782 (9th Cir.

27   2015) (affirming dismissal of backward-looking access-to-courts claim where

28   plaintiff "did not lose an opportunity to sue or request relief based on an inability to

file timely"); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (finding that a defendant's remote conduct or contribution to the chain of events causing the injury is not sufficient to render them an "integral participa[nt]," which is required to find causation); *Tran v. Young*, No. 17-cv-1260, 2021 WL 620229, at *7 (E.D. Cal. Feb. 17, 2021) ("A failure to show a material issue of fact exists on the issue of causation is sufficient to support a finding that summary judgment should be granted for defendants.") (citing *Leer v. Murphy*, 844, F.2d 628, 634 (9th Cir. 1988)). The bottom line is that because a cause of action does not accrue until the aggrieved party discovers the wrongdoing (*Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35 (2003)), whether the City participated in a scheme to "cover up" the wrongdoing, has always been irrelevant.

### 2. Even Though The Misconduct Began More Than Four Years Before It Was Discovered, Plaintiff Still Had Time To Sue

In addition to the base one-year period quoted above, Section 340.6 provides that a malpractice cause of action is lost if not filed within 4 years of the wrongful act or omission. In other words, a claim is untimely if not filed within one year of discovery or, at the latest, within 4 years of the wrongful act or omission regardless of discovery – the latter period operating similar to a statute of repose.

Any attempt to dodge the delayed discovery rule by arguing that the date of discovery (February 13, 2019) is immaterial because the misconduct began more than 4 years earlier (in January 2015 when the conflict of interest arose (*see* McCann Decl., Ex. 2  ¶¶ 66, 67)), has absolutely no chance of success. Pursuant to Section 340.6(a)(3), the outside 4-year period also is tolled when an attorney "willfully conceals the facts constituting the wrongful act or omission . . . ." *See also Bergstein*, 236 Cal. App. 4th at 821 (finding that "[i]t has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations . . ."). This is exactly the circumstance Plaintiff described in the

FAC and his Government Claim that prevented him from learning the truth prior to February 13, 2019. (*E.g.*, McCann Decl., Ex. 2 ¶¶ 325-27; McCann Decl., Ex. 5.)

### 3.   In The Alternative, The Deadline To File Against Paradis Was Tolled Until June 27, 2019 When The Attorney-Client Relationship Ended

Pursuant to Section 340.6(a)(2), the statute of limitations also was tolled during the period of time Paradis continued to serve as Plaintiff's counsel. "[T]he relationship can continue . . . if the objective evidence shows that the attorney continues to provide legal advice or services." *Shaoxing City Maolong Wuzhong Down Prods., Ltd. v. Keehn & Assocs.*, 238 Cal. App. 4th 1031, 1039 (2015). The facts derived from Plaintiff himself are (i) he retained Paradis as his attorney in December 2014 to recover damages for the LADWP's overbilling, (ii) the Jones Action was filed on April 1, 2015, (iii) Paradis communicated with and performed legal services for Plaintiff in the Jones Action after the complaint was filed, (iv) Plaintiff believed that Paradis continued to work for him after the Jones Action was filed, (v) Paradis never informed Plaintiff that he was no longer his attorney or had withdrawn from the representation, and (vi) it was Plaintiff who decided to end his attorney-client relationship with Paradis on June 27, 2019. (SUF Nos. 1-6, 9, 25.)

Assuming even if Plaintiff could somehow walk-back his unambiguous admissions that he first discovered Paradis's and the City's misconduct no earlier than February 13, 2019, he cannot deny that his attorney-client relationship with Paradis continued until June 27, 2019. Plaintiff either had one year from February 13, 2019 to bring suit or one year from June 27, 2019 to do so – either way, despite Plaintiff's professed knowledge of the wrongdoing done to him, he did not act.

**B.**     **Although Plaintiff Filed A Government Claim With The City, He Neglected To Sue Within Six Months Of The Date The Government Claim Was Rejected**

As the FAC concedes, any causes of action Plaintiff could have asserted against the City are governed by the California Government Claims Act (the "Claims Act"). (McCann Decl., Ex. 2 ¶¶ 321-23.)  The Claims Act mandates that "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."  Cal. Gov. Code § 911.2.  (*See also* McCann Decl., Ex. 2 ¶¶ 322-23.)   If the claim is rejected by written notice, the claimant must file suit against the public entity "not later than six months after the date such notice."  Cal. Gov. Code § 945.6(a)(1); Cal. Gov. Code § 913.  Any lawsuit filed after expiration of the six-month period is barred.  *See Clarke v. Upton*, 703 F. Supp. 2d 1037, 1044 (E.D. Cal. 2010) ("The six month period set forth in Section 945.6(a)(1) is mandatory and strict compliance is required."); *see also Dowell v. Contra Costa Cty.*, 928 F. Supp. 2d 1137, 1152 (N.D. Cal. 2013).

The uncontroverted facts are that, after his February 13, 2019 deposition, Plaintiff submitted his Government Claim form on July 22, 2019 (SUF No. 26) and the City rejected the Government Claim on September 6, 2019 (SUF No. 30) triggering the six-month deadline for him to file an action asserting his state-law causes of action against the City.  *See* Cal. Gov. Code § 945.6(a)(1).  No such action was filed against the City by March 6, 2020.  Indeed, he has never filed suit against the City asserting any of the state-law causes of action.  (SUF No. 31.)  Instead, Plaintiff waited more than 15 months after the City rejected his Government Claim to file this action, alleging that the City deprived him of access to the courts.  (SUF No. 32; Dkt. No. 1.)

1    Even if the City and/or Paradis engaged in any of the purported misconduct

2    alleged in the FAC, such actions only delayed Plaintiff from discovering the basis for

3    his potential causes of action and, in the process, also extended the deadline to submit

4    his Government Claim.  *See Brandon G.*, 111 Cal. App. 4th at 35.  But once his

5    Government Claim was rejected on September 6, 2019, Plaintiff could have - and was

6    required to - file an action against the City asserting his state-law causes of action.

7    Indeed, he and his counsel's representations and appearances in court confirm that

8    Plaintiff was well aware of the facts underlying his state-law causes of action.  (*E.g.*,

9    SUF Nos. 15-24, 26-29.)  But Plaintiff elected not to for reasons that have nothing to

10   do with the City purportedly depriving him of access to the courts.

11   Finally, it is worth noting that Plaintiff was not alone on February 13, 2019

12   when he first discovered the facts supporting his causes of action, nor was he without

13   competent legal counsel at any time thereafter.  Plaintiff was at all times represented

14   by the same counsel – the same counsel that represented him at his deposition,

15   represented him in subsequent hearings, assisted him in preparing court filings, as

16   well as the Government Claim form (consisting of 81 pages and 6 attachments), and

17   signed the Government Claim form on Plaintiff's behalf.  (SUF Nos. 8, 15, 16, 21,

18   22, 24, 25, 26, 32.)  Although irrelevant, Plaintiff cannot even profess ignorance of

19   the filing deadlines.

20   **V.    CONCLUSION**

21   Plaintiff's own allegations and admissions confirm that any alleged City cover

22   up did not cause him to be deprived of access to the courts to assert state-law causes

23   of action against Paradis and the City.  At most, they merely tolled the relevant

24   limitations requirements until February 13, 2019 when Plaintiff - represented by the

25   same attorneys who represent him here – was put on notice of his potential state-law

26   causes of action.  No one other than Plaintiff is responsible for his decision not to file

27   his causes of action against Paradis or the City.

28

1    Accordingly, for all the reasons stated above, the City respectfully requests that

2 this Court grant this Motion for Summary Judgment.

3 DATED:  February 18, 2022          ELLIS GEORGE CIPOLLONE
                                      O'BRIEN ANNAGUEY LLP
4                                          Eric M. George
5                                          Guy C. Nicholson
                                           Kathryn L. McCann
6                                          Jason Y. Kelly

7

8                                   By:  _____/s/ Guy C. Nicholson_____

9                                            Guy C. Nicholson
                                      Attorneys for Defendant City of Los Angeles
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF