1  Jeffrey B. Isaacs (SBN 117104)
   Jerome H. Friedberg (SBN 125663)
2  Adam Kargman (SBN 212109)
   Janine F. Cohen (SBN 203881)
3  **ISAACS | FRIEDBERG LLP**
   555 South Flower Street, Suite 4250
4  Los Angeles, California 90071
   Phone:    (213) 929-5550
5  Facsimile:   (213) 955-5794
   Email:    *jisaacs@ifcounsel.com*
6            *jfriedberg@ifcounsel.com*
             *akargman@ifcounsel.com*
7            *jcohen@ifcounsel.com*

8  *Attorneys for Plaintiff Antwon Jones*

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11  **ANTWON JONES,**                    Case No. 2:20-CV-11502-VAP-JCx
                                         Hon. Virginia A. Phillips
12            Plaintiff,                 Magistrate Judge Jacqueline Chooljian

13      vs.                              **PLAINTIFF ANTWON JONES'S**
                                         **MEMORANDUM OF POINTS AND**
14  **CITY OF LOS ANGELES, et al.,**     **AUTHORITIES IN OPPOSITION**
                                         **TO DEFENDANT CITY OF**
15            Defendants.                **LOS ANGELES'S MOTION FOR**
                                         **SUMMARY JUDGMENT**
16

17                                       *[Filed concurrently with:*
                                         *(i) Declaration of Adam Kargman;*
18                                       *(ii) Declaration of Antwon Jones;*
                                         *(iii)Declaration of Jeffrey Isaacs;*
19                                       *(iv) Declaration of Jerome Friedberg;*
                                         *(v) Declaration of Deanna Noe;*
20                                       *(vi) Request for Judicial Notice;*
                                         *(vii) Compendium of Exhibits;*
21                                       *(ix) Statement of Genuine Issues in*
                                         *Dispute; (viii) Objections to Defendant's*
22                                       *Statement of Undisputed Facts;*
                                         *(x) [Proposed] Orders]*
23

24                                       **HEARING:**
                                         Date:      May 9, 2022
25                                       Time:      2:00 p.m.
                                         Crtrm:     8A
26
                                         Complaint filed:   Dec. 21, 2020
27                                       FAC filed:         Jul. 9, 2021
                                         Trial date:        None set
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ...................................................................................9

II.   RELEVANT FACTS. ........................................................................... 11

    A.    Statement of Relevant Facts. ..................................................... 11

        1.    Background. ...................................................................... 11

        2.    The Parallel Litigation Scheme. ...................................... 11

        3.    The "White Knight" Scheme. .......................................... 12

        4.    The Sham Mediation Sessions and Preliminary Approval of the Jones Settlement. ................................................... 13

        5.    Paradis's Contracts with LADWP. .................................. 14

        6.    Payment of Attorney Fees and the Kickbacks. ................ 15

        7.    The *City v. PwC* Litigation. ........................................... 15

        8.    Jones is Deposed in Connection With the Ongoing Discovery Dispute Over the Draft Complaint. ................ 15

        9.    Jones Learns that He Was a Pawn Used to Implement a Fraudulent Scheme. ....................................................... 16

        10.   The Appointment of Kabateck as New Class Counsel. ............ 18

        11.   The Special Master's Report. .......................................... 18

        12.   Judge Berle's Findings and Rulings. .............................. 19

        13.   The City Denies Jones's Government Code Claim as Untimely. ........................................................................ 19

        14.   The Guilty Pleas. ............................................................. 19

    B.    Relevant Procedural History. .................................................... 20

III.  ARGUMENT. ....................................................................................... 21

    A.    Legal Standard. ......................................................................... 21

        1.    Summary Judgment. ........................................................ 21

        2.    42 U.S.C. Section 1983 Claims. ..................................... 22

    B.    The City Has Failed to Meet Its Initial Burden on Summary Judgment. ................................................................................. 23

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

C.    The City's Motion Entirely Ignores the City's Deprivation of Jones's Claims for Provisional Relief. ..................................23

D.    The City's Motion Must be Denied Because a Civil Action Against the City After Denial of Jones's Government Claim Would Have Been Untimely. ...............................................26

E.    There are Disputed Issues of Fact as to Whether Jones's Claims Against Paradis Were Barred by the Statute of Limitations. .............28

      1.    California Code of Civil Procedure Section 340.6. ..................28

      2.    There are Genuine Factual Disputes Regarding the Wrongful Acts Giving Rise to Jones's Lost Claims Against Paradis. .........................................................29

      3.    There Are Genuine Factual Disputes Regarding When Jones Was on Notice of His Lost Claims Against Paradis. ......30

      4.    There are Genuine Factual Disputes Regarding as to Tolling. ..............................................................31

            a.    Willful Concealment. ......................................31

            b.    Continued Representation. ...............................32

IV.    CONCLUSION ...............................................33

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................21

*Bank of Am. Nat'l Trust and Sav. Ass'n v. Allstate Ins. Co.*,
29 F. Supp. 2d 1129 (C.D. Cal. 1998) .................................30

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................21

*Christopher v. Harbury*,
536 U.S. 403 (2002).........................................................22, 24

*DeMartini v. Johns*,
2015 WL 12781178 (N.D. Cal. Jan. 22, 2015) ....................29

*General Bedding Corp. v. Echevarria*,
947 F.2d 1395 (9th Cir. 1991) .....................................21, 22

*Johnson v. Duffy*,
588 F.2d 740 (9th Cir. 1978) ...............................................22

*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Co., Inc.*,
210 F. 3d 1099 (9th Cir. 2000) ............................................21

*Orantes-Hernandez v. Thornburgh*,
919 F.2d 549 (9th Cir. 1990) ...............................................24

*ShopKo Stores Operating Co., LLC v. Balboa Capital Corp.*,
2017 WL 3579879 (C.D. Cal. Jul. 13, 2017) ......................22

**California Cases**

*Gonzalez v. Kalu*,
140 Cal. App. 4th 21 (2006) ................................................32

*Heckman v. Ahmanson*,
168 Cal. App. 3d 119 (1985) ...............................................24

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

*Koch v. Citadel Financial Corp.*,
  2002 WL 31677057 (Cal. Ct. App. Nov. 27, 2002) (unpublished) ................... 31

*Lofton v. Wells Fargo Home Mortgage*,
  230 Cal. App. 4th 1050 (2014) ......................................................................... 24

*McCann v. Welden*,
  153 Cal. App. 3d 814 (1984) ...................................................................... 29, 30

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP*,
  69 Cal. App. 4th 223 (1999) ............................................................................. 24

*Nguyen v. Ford*,
  49 Cal. App. 5th 1 (2020) .......................................................................... 32, 33

*Nielsen v. Stewart*,
  2017 WL 3124207 (Cal. Ct. App. Jul. 24, 2017) (unpublished) ....................... 31

*Pointe San Diego Residential Community, L.P. v. Procopio, Cory,
  Hargreaves & Savitch, LLP*,
  195 Cal. App. 4th 265 (2011) ........................................................................... 29

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
  223 Cal. App. 4th 1105 (2014) .................................................................... 28, 29

*Shoaxing City Maolong Wuzhong Down Products, Ltd. v. Keehn &
  Associates, APC*,
  238 Cal. App. 4th 1031 (2015) ......................................................................... 33

*St. James Armenian Church of Los Angeles v. Kurkjian*,
  47 Cal. App. 3d 547 (1975) .............................................................................. 24

*Stanley v. Richmond*,
  35 Cal. App. 4th 1070 (1995) ........................................................................... 29

*State of California v. Superior Court*,
  32 Cal. 4th 1234 (2004) .............................................................................. 26, 27

*Toscano v. County of Los Angeles*,
  92 Cal. App. 3d 775 (1979) .............................................................................. 26

*Trantafello v. Medical Center of Tarzana*,
  182 Cal. App. 3d 315 (1986) ............................................................................ 31

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

**Federal Statutes**

42 U.S.C.
 § 1983 ...................................................................................20, 22, 23

**California Statutes**

Cal. Code Civ. Proc.
 § 340.6 .............................................................................10, 28, 29, 31

Cal. Gov. Code
 § 911.2 ...............................................................................................26
 § 911.4 ...............................................................................................27
 § 911.6 ...............................................................................................28

**Other Authorities**

Fed. R. Civ. P.
 Rule 56 ...............................................................................................21

3 Mallen & Smith, *Legal Malpractice* § 23:53 ......................................32

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

## <u>TABLE OF ABBREVIATIONS AND SHORTENED NAMES</u>

| | |
|---|---|
| Aventador ................................. | Aventador Utilities Systems, LLC |
| CC&B System .......................... | Customer Care and Billing System |
| Clark ........................................ | James Clark |
| City .......................................... | City of Los Angeles |
| *City v. PwC*.............................. | *City of Los Angeles v. PriceWaterhouseCoopers, LLP, et al.*, Los Angeles Superior Court, Case No. BC574690 |
| GID............................................ | Plaintiff's Statement of Genuine Issues in Dispute |
| Isaacs Decl. .............................. | Declaration of Jeffrey B. Isaacs |
| Jones Decl................................. | Declaration of Antwon Jones |
| *Jones v. City* ............................. | *Antwon Jones v. City of Los Angeles*, Los Angeles Superior Court, Case No. BC577267 |
| *Jones v. PwC* ........................... | *Antwon Jones v. PriceWaterhouseCoopers, LLP, et al.* [Never filed] |
| Judge Berle ............................... | Los Angeles Superior Court Judge Elihu Berle |
| Kabateck ................................... | Brian Kabateck and Kabateck LLP |
| Kiesel........................................ | Paul Kiesel and Kiesel Law, LLP |
| LACAO ..................................... | Los Angeles City Attorney's Office |
| LADWP...................................... | Los Angeles Department of Water and Power |
| Landskroner............................... | Jack Landskroner |
| Libman....................................... | Michael Libman |
| Liner ......................................... | Liner LLP |
| Paradis ...................................... | Paul Paradis |
| Peters ........................................ | Thomas Peters |
| PLG ........................................... | Paradis Law Group LLC |
| Report ....................................... | Special Master's Report |

7

Special Master ........................... Edward M. Robbins, Jr.

Tufaro ....................................... Gina Tufaro

USAO ....................................... U.S. Attorney's Office for the Central District of
California

Wright....................................... David Wright

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

1   Plaintiff Antwon Jones hereby opposes the City's Motion for Summary

2   Judgment (the "Motion").  The Motion is meritless, it should be denied with

3   prejudice and a trial date before the end of the year should be set.[1]

4   ## I.   INTRODUCTION.

5   The Motion argues that the City's concealment of its misconduct and

6   collusion with Jones's former attorneys, PLG, especially Paradis, and others, did not

7   cause the deprivation of Jones's right of access to the court.  The City does not

8   dispute, and indeed hardly even discusses, that its top management engaged in

9   elaborate fraudulent and corrupt schemes that have now resulted in multiple federal

10   convictions; findings of fraud by the Superior Court; and a scathing report by the

11   court-appointed Special Master tasked with investigating these schemes and those

12   responsible for them.  The schemes began in December 2014, continued for several

13   years, involved Jones's former attorneys, the LACAO and LADWP, and centered

14   around a lawsuit purportedly filed on Jones's behalf, but the City nevertheless

15   claims that, as a matter of law, its concealment did not impair Jones's right of

16   access.  The City's Motion fails on multiple grounds and should be denied.

17   ***First***, the City has failed to meet its initial burden as the moving party of

18   informing the Court of the basis of its motion and identifying the evidence that

19   demonstrates the absence of a triable issue of fact.  The City never identifies the

20   underlying wrongful acts giving rise to Jones's lost claims, when they occurred, or

21   the resultant relief that Jones could have obtained.  Nor does it describe the nature,

22   scope and duration of the City's concealment of that misconduct or the acts of

23   concealment by Paradis which the City alleges tolled the statute of limitations as to

24   the claims against him.  The City also altogether fails to address Jones's claim that

25   he was denied the opportunity to obtain injunctive and other provisional relief, even

26   though those claims were specifically addressed by Jones in opposing the City's

27

28   ---

[1] The abbreviations and acronyms used herein are set forth in the Table of Abbreviations and Shortened Names.

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

1  Motion to Dismiss and by the Court in denying that motion.  The City's failure to

2  meet its initial burden is, alone, grounds to deny the Motion.

3      ***Second***, and relatedly, the Motion proceeds from the false premise that Jones

4  is claiming that his right to access was impaired solely because the City caused the

5  statute of limitations to run on his claims against Paradis and the City.  Although the

6  City did indeed cause the statute of limitations to run on those claims, it also

7  deprived Jones of the opportunity to obtain effective preliminary injunctive and

8  other provisional relief against Paradis, the City and others, including the

9  disqualification of Paradis and the LACAO, preliminary injunctive relief against

10  Paradis and the City, and the imposition of a constructive trust on the illicit profits

11  obtained by Paradis and PLG, which totaled over $32 million.

12      ***Third***, the City argues that Jones could have brought timely state law claims

13  against it if he had merely sought relief from the LACAO's denial of his

14  Government Claim.  But this assertion is refuted by the LACAO's own denial letter,

15  which states that the claim "is being returned to you with no action taken on it

16  because ***it was not presented within one year of the accrual of the cause of action***."

17  Because, by the City's own admission, the one-year deadline had run, Jones was not

18  entitled to relief for a late-filed claim, and any state law action he filed against the

19  City would have been ineffectual as subject to demurrer that was certain to be

20  sustained.

21      ***Fourth***, the City has failed to show that Jones's claims against Paradis would

22  have been timely as a matter of law.  The applicable statute of limitations, California

23  Code of Civil Procedure Section 340.6, provides that an action by a client against

24  his attorney must be filed within four years of the occurrence of the wrongful act or

25  omission giving rise to the claim, and that the four-year period can be tolled by the

26  attorney's affirmative acts of willful concealment or his continuous representation of

27  the client.  Here, there are genuine disputes of material facts about (a) what

28  wrongful acts gave rise to Jones's causes of action against Paradis; (b) when the

four-year period ran as to each of those acts; (c) when Jones discovered, or was on notice, of his claims against Paradis; (d) whether Paradis engaged in any affirmative acts of concealment after March or April 2015; and (e) when Paradis's representation of Jones ended.

For all of these reasons, which are more fully explained below, the City's Motion should be denied with prejudice, and the matter should be set for trial.

## II.   RELEVANT FACTS.

### A.   Statement of Relevant Facts.

#### 1.   *Background.*

In 2010, LADWP contracted with PwC for the implementation of the CC&B System.  In September 2013, LADWP launched the CC&B System, with disastrous results.  The CC&B System erroneously billed hundreds of thousands of LADWP ratepayers, some of whom received massively inflated bills.  As a result, four putative class action lawsuits were filed against the City.  (GID 13, 14, 16, 17.)

Jones was one of the ratepayers who was overbilled by the CC&B System. He complained about the overcharges on the Internet.  In early December 2014, Jones was contacted by Paradis.  In December 2014, Jones retained Paradis and PLG to represent him as a named plaintiff and putative class representative in a class action lawsuit against PwC and other defendants.  (GID 23-26.)

At the same time Paradis was soliciting Jones as a client, attorney Kiesel introduced Paradis to Thomas Peters, the Chief of the Civil Litigation Branch of the LACAO.  In December 2014, the City retained PLG and Kiesel Law to represent it in contemplated litigation against PwC.  Jones was not informed of, and did not consent to, PLG's representation of the City.  (GID 29, 31.)

#### 2.   *The Parallel Litigation Scheme.*

In January and February 2015, the City pursued a strategy whereby Paradis and Kiesel would represent both the City and Jones in parallel litigation against PwC (the "parallel litigation scheme").  The City and Paradis conspired to shift the

blame for the LADWP overbilling debacle in the media from the City to PwC by (1) drafting a class action complaint for Jones which named only PwC and not the City, (2) convincing counsel in the pending class actions against the City to join Jones's action against PwC, and (3) filing an action by the City against PwC, thereby "training all guns" on PwC rather than the City.  (GID 38.)

In furtherance of the parallel litigation scheme, in January 2015, Paradis drafted a complaint styled *Jones v. PwC*, and sent the draft to the City without Jones's knowledge or approval.  Jones authorized Paradis to file the complaint but, unbeknownst to Jones, Paradis never did.  (GID 55, 57, 59-60.)

### 3.      The "White Knight" Scheme.

In February 2015, the City abandoned the parallel litigation scheme.  Paradis, Kiesel and the LACAO conceived a plan to repurpose Jones from being the plaintiff in *Jones v. PwC* to being the plaintiff in *Jones v. City*, a "white knight" lawsuit that would allow the City to settle the class action litigation on the City's desired terms – because it was secretly colluding with counsel for the class representative (the "white knight scheme").  (GID 75-77.)

In furtherance of the white knight scheme, Paradis contacted Jack Landskroner and asked him to play the role of Jones's counsel of record in the *Jones v. City* case.  Paradis explained that the case would be pre-settled on the City's desired terms.  Landskroner accepted the representation and agreed to pay Paradis a kickback of 20% of Landskroner's fees.  (GID 79-81.)  On March 26, 2015, Paradis introduced Jones to Landskroner, who he said was another attorney who would be working on his case.  Paradis did not disclose to Jones his financial arrangement with Landskroner, his representation of the City, or the white knight scheme.  (GID 84-87)

In March 2015, the City filed *City v. PwC*, in which Paradis, Kiesel and the LACAO appeared as counsel of record for the City.  (GID 93-97.)  On March 29, 2015, Paradis emailed the *Jones v. City* complaint to Jones, who approved its filing.

Neither Paradis nor the LACAO (or anyone else) advised Jones of Paradis's dual representation or obtained a conflict waiver from him.  (GID 112, 113, 115, 116.)

As part of the white knight scheme, *Jones v. City* was filed on April 1, 2015.  (GID 117.)  Jones was represented by Landskroner and Michael Libman, an attorney selected by Kiesel whom Jones had never met, did not retain, and did not know was representing him.  (GID 122-15.)  The case was related to the other ratepayer class actions and assigned to Superior Court Judge Elihu Berle.  Jones last heard from Paradis in late March 2015, shortly after being introduced to Landskroner.  Almost immediately after the *Jones v. City* complaint was filed, Paradis stopped having further communications with Jones.  (GID 126-27.)

*Jones v. City* was a sham lawsuit, in which the City colluded with Paradis and Landskroner to effectively sue itself.  (GID 118.)  The day after *Jones v. City* was filed, Landskroner sent the City a settlement demand letter that Paradis had drafted.  The parties quickly worked out the settlement terms, but decided to engage in a sham mediation "for optics."  (GID 128, 132.)

### 4. *The Sham Mediation Sessions and Preliminary Approval of the Jones Settlement.*

On July 11 and July 12, 2015, the City and Jones's counsel of record in *Jones v. City* engaged in mediation sessions before the Honorable Dickran Tevrizian (Ret.).  (GID 139-40.)  The mediation sessions appeared to be adversarial, but there was no actual adversity as the general terms of the settlement were understood by both sides from the outset.  (GID 143.)  Paradis represented the City in the mediation.  Jones was told by Landskroner that he did not need to attend, so he would not learn that Paradis was representing the City.  (GID 146.)  At the conclusion of the July 12, 2015 mediation session, the parties announced that they had reached an agreement in principle, which they memorialized in a Memorandum of Understanding.  (GID 152.)  In subsequent sham mediation sessions held on July 24 and July 31, 2015, the parties "ironed out" the remaining terms of the settlement.

1   (GID 154.)

2         On August 7, 2015, the parties entered into a Class Action Settlement and

3   Limited Release.  (GID 162.)  On August 17, 2015, Landskroner moved for

4   preliminary approval of the settlement.  (GID 181.)  The preliminary settlement

5   included approximately $13 million in attorney's fees.  (GID 184.)  On December

6   21, 2015, Judge Berle preliminarily and conditionally approved the settlement.

7   (GID 187.)

8         **5.    *Paradis's Contracts with LADWP.***

9         On October 20, 2015, the City entered into a contract under which it agreed to

10  pay PLG for performing oversight, project management and implementation

11  services relating to the Jones preliminary settlement.  Paradis was identified as the

12  Project Manager and his partner, Gina Tufaro, as the Deputy Project Manager.  The

13  total amount of the contract, as extended, was over $6 million.  Jones was not

14  informed that PLG had entered into a contract with LADWP.  (GID 169, 171, 176,

15  180.)

16        In February 2017, Paradis met with David Wright, a high-level LADWP

17  employee.  They agreed that Paradis would form a corporation (Aventador) to

18  secure a lucrative, sole source, no bid contract with LADWP.  Wright would ensure

19  that LADWP would award the contract to Aventador.  In exchange, Paradis agreed

20  that Wright would become the CEO of Aventador upon his retirement from

21  LADWP, with a salary of $1 million a year and the use of a new Mercedes as a

22  company car.  (GID 194-96.)

23        In June 2017, LADWP awarded a $30-million contract to Aventador.  Wright

24  supported the contract and made a presentation to LADWP's Board of Governors in

25  which he told the Board that LADWP could not meet its obligations under the *Jones*

26  *v. City* settlement unless it contracted with Aventador.  Between February and

27  December 2018, LADWP paid Aventador over $17.5 million.  Prior to the

28  termination of the contract, LADWP paid Aventador approximately $24.5 million.

14

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1  Jones was told nothing about these payments or the Aventador contract. (GID 199,

2  206, 208, 211, 212, 216.)

3       **6.    Payment of Attorney Fees and the Kickbacks.**

4       In June 2015, Judge Berle granted final approval to the *Jones v. City*

5  settlement. Landskroner and Libman ultimately received an award of over $11.7

6  million in attorney's fees, based on false declarations in which they vastly

7  overstated the time that they had spent on *Jones v. City*. (GID 225-28.) On July 28,

8  2017, the City issued a check for over $19.2 million to Landskroner. Out of

9  plaintiff's settlement proceeds, Landskroner's law firm received over $10 million

10 and Libman received approximately $1.6 million. (GID 237-38.) Landskroner paid

11 Paradis his 20% kickback, which totaled $2,175,000. The funds were funneled

12 through shell corporations that Landskroner and Paradis set up. (GID 241-246.)

13 Jones received a $5,000 service award for the time he devoted to serving as a class

14 representative in *Jones v. City*. He was never told about the kickback, and did not

15 learn about it until November 2019. (GID 247.)

16      **7.    The City v. PwC Litigation.**

17      The City's litigation against PwC continued. In September 2017, the City

18 submitted a privilege log which referenced the draft *Jones v. PwC* complaint. In

19 November 2017, PwC moved to compel production of the draft complaint. The City

20 and its counsel vigorously fought the production of the draft complaint for fear that

21 producing it would reveal the collusive origins of the *Jones v. City* case. (GID 258-

22 260.) In opposing the production of the draft complaint, Paradis and Tufaro filed

23 false declarations and made false representations to Judge Berle, concealing their

24 representation of Jones and the scheme. Peters likewise filed a false declaration and

25 gave false deposition testimony. (GID 263-269, 275-276, 282, 288-289, 324-325.)

26      **8.    Jones is Deposed in Connection With the Ongoing Discovery Dispute**

27           **Over the Draft Complaint.**

28      On December 5, 2018, Judge Berle directed PwC's counsel to depose Jones

1   and Landskroner regarding the City's assertion that the draft *Jones v. PwC*

2   complaint was attorney work product.  On January 16, 2019, PwC served Jones with

3   a deposition subpoena.  Shortly thereafter, Jones retained his current counsel to

4   represent him in his deposition and in responding to the document requests.  (GID

5   292-96; Isaacs Decl., ¶¶ 6-7.)

6       Jones's deposition pertained to the narrow discovery dispute between PwC

7   and the City, not whether the Jones settlement was obtained through collusion.

8   Jones did not learn about the parallel litigation scheme, the white knight scheme, or

9   the collusive settlement during his deposition, and was never asked about them.

10  (GID 311-313.)  Nor did he learn about the PLG and Aventador contracts with

11  LADWP, or the kickback from Landskroner to Paradis. (GID 310.)  Jones was asked

12  whether he knew about certain matters during his deposition, such as the LADWP

13  contract with PLG, but he did not understand, and was not told, that those matters

14  had in fact occurred.  (GID 300-303; Jones Decl., ¶¶ 42-45.)  The focus of the

15  deposition was on the privilege issue for which Jones was being deposed.  At that

16  time, Jones was not on notice that he had any actionable claims.  Isaacs Decl., ¶ 41;

17  Jones Decl., ¶ 39.

18      *9.     Jones Learns that He Was a Pawn Used to Implement a Fraudulent*

19      *Scheme.*

20      Kiesel was deposed on May 28, 29 and 30, 2019.  His testimony provided

21  significant information about the fraudulent scheme.  He testified that: (a) sometime

22  prior to January 13, 2015, Paradis, Kiesel and the City conceived of a plan which

23  involved getting lead counsel in the existing class actions to voluntarily dismiss their

24  claims and join a proposed class action filed by Jones against PwC;  (b) the City

25  provided information to Paradis for Paradis to use in the proposed *Jones v. PwC*

26  case; (c) the City attempted to coordinate the dismissal of the filed class-actions and

27  the filings of the *City v. PwC* and *Jones v. PwC* complaints to "train all guns on

28  PwC at the same time"; (d) sometime between February 17, 2015 and March 3,

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

2015, Paradis and the City abandoned the plan to file the *Jones v. PwC* case and decided instead to use Jones to file an action against the City; (e) the City's ultimate plan was to settle the action by making sure that the *Jones v. City* complaint encompassed all causes of action included in the previously filed class-action complaints; (f) Clark and Peters were not only aware of the plan to repurpose Jones, they directed it; (g) the City wanted Landskroner and Libman to be counsel for Jones in *Jones v. City*; and (h) there was a plan to go to mediation before *Jones v. City* was even filed.  (GID 342-54; *see also* Isaacs Decl., ¶ 55.)  Jones was not aware of any of these facts prior to reviewing Kiesel's deposition transcripts in June 2019. (GID 358.)

Jones subsequently learned additional facts about the fraudulent schemes from various court documents and orders in the *City v. PwC* litigation; the Special Master's Report; the plea agreements signed by Paradis, Peters and Wright; other documents; and newspaper articles.  Among other things, he learned that the LACAO knew about and referred to the *Jones v. City* action as the "white knight" lawsuit before it was even filed; that the mediation was a sham and a charade; that the attorney's fees for his counsel had been negotiated within days after *Jones v. City* was filed; and that the settlement of his lawsuit, *Jones v. City,* was collusive and intended for the benefit of the City, rather than him or the ratepayers.  In short he learned that he had been used as a pawn to further the City's fraudulent schemes and that the City had paid his counsel handsomely for their part in the schemes.  He also learned that Paradis had bribed Wright to receive extraordinarily lucrative contracts from LADWP, that Kiesel had paid hush money to a former employee to keep the fraud from being exposed, and that various attorneys had lied to the Court as part of a coverup.  (GID 360-374.)  Shortly thereafter, Jones revised his engagement letter with counsel, which had originally been limited to defending his deposition and responding to the subpoena served on him.  (GID 385.)

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
515308.7

### 10.   The Appointment of Kabateck as New Class Counsel.

In April 2019, Judge Berle appointed Brian Kabateck as new class counsel, replacing Landskroner, who had filed a motion to be relieved as counsel. (GID 339.)  On June 27, 2019, Jones's current counsel, in consultation with Kabateck, wrote to Paradis's counsel requesting the production of Jones's original client file, which Kabateck needed in his representation of the Jones class.  To ensure that Paradis could not claim that he was required to maintain the file, the letter clarified that Paradis's representation of Jones in any and all matters had been terminated.  (GID 378-83.)  In fact, Paradis had discontinued representing Jones no later than on or about April 1, 2015, when *Jones v. City* was filed, and had stopped representing Jones's interests even earlier.

### 11.   The Special Master's Report.

On June 17, 2019, Judge Berle appointed a Special Master, with the authority to investigate the disposition of the settlement funds in *Jones v. City* and whether the attorneys involved committed any ethical breaches or criminal offenses.  (GID 375-76.)  On July 13, 2021, the Special Master released a comprehensive, three-volume report, finding, among other things, that: (a) Paradis, Landskroner, Tufaro and Kiesel violated their ethical duties to Jones and the Court; (b) the LACAO violated its ethical duties to the Court; (c) Paradis, Tufaro and PLG had an inherent conflict of interest in representing both Jones and the City; (d) the LACAO knew that Paradis and PLG were representing Jones, but did not attempt to obtain a conflict waiver from him; (e) the mediations before Judge Tevrizian were a sham; and (f) the City's attorneys made numerous false representations to the Court.  (GID 404-15.)

The Special Master's Report summed up *Jones v. City* as follows:

> *Jones v. City* was a sham in substance; it was promoted as a
> real lawsuit, but in substance the City sued itself thus failing to
> qualify as a civil action under the law.  Additionally, the suit was
> fraudulent in that it was not what it was claimed to be.  *Jones v. City*

1  claimed to be a legitimate lawsuit.  It was not.

2  (GID 419-20.)  The Special Master made several other significant findings

3  regarding the fraud.  Isaacs Decl., ¶¶ 65-67.

4    ***12.    Judge Berle's Findings and Rulings.***

5      On July 25, 2019 and August 12, 2019, Judge Berle issued orders in the *City*

6  *v. PwC* litigation, which are now final, making detailed findings that the mediation

7  sessions were a "sham" and a "charade," and that "evidence has been presented in

8  connection with the purported mediation which was ultimately presented to the

9  Court for approval [that it] was based on collusion and misrepresentation."  He

10  further found that, "[t]he City asked Attorney Paradis if they could use Mr. Jones as

11  a class representative to assert a clam against the City so the City could resolve all

12  of LADWP's billing issues with the claim;" that the LACAO not only approved the

13  plan to use Jones as a named plaintiff in a comprehensive action to be filed against

14  the City, but that Paradis was directed to do so by the City;" and that Paradis

15  brought in Landskroner to file the case "with the City's knowledge and direction."

16  (GID III, 1, 3-6, 7, 9-21.)

17    ***13.    The City Denies Jones's Government Code Claim as Untimely.***

18      On July 23, 2019, Jones presented his Government Code claim.  (GID 394.)

19  On September 6, 2019, the LACAO denied Jones's claim, stating, "the claim which

20  you submitted to the City of Los Angeles on July 23, 2019 is being returned to you

21  with no action taken on it because it was not presented within one year of the

22  accrual of the cause of action."  The City's denial letter also stated, inconsistently,

23  that Jones's claim was "not presented within six months after the event or

24  occurrence" and that Jones's only recourse was to apply to the City for leave to

25  present a late claim.  (GID 398-400.)

26    ***14.    The Guilty Pleas.***

27      Paradis and Wright have now pled guilty and Peters has agreed to plead guilty

28  to federal charges arising from the fraudulent schemes described above, the details

19

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

of which were set forth in the Factual Basis attached to each of the Plea Agreements. Paradis, in particular, admitted that, among other things, he deprived Jones of his honest services as Jones's attorney.  Paradis and Wright have already entered their guilty pleas.  (GID 421-451.)

**B.**   **Relevant Procedural History.**

Jones filed his Complaint in this action on December 21, 2020, asserting a cause of action against the City for deprivation of his constitutional right of access to the courts, in violation of 42 U.S.C. section 1983 ("section 1983").  On March 15, 2021, the City filed a Motion to Dismiss.  Dkt. No. 24-1.  The City argued that the Complaint failed to plead causation because it failed to allege that it was foreseeable that the City's actions would violate Jones's right of court access.  *Id.* at 13. With respect to the underlying lost claims against the City, the City contended that Jones forfeited those claims because he did not seek leave to present a late claim after the City denied his government claim as untimely.  *Id.* at 12.  With respect to the lost claims against Paradis, the City argued, in part, that Jones failed to allege causation and that he has not been denied access to the courts because he is pursuing claims in Paradis's bankruptcy action.  *Id.* at 15.

By Order dated June 25, 2021, the Court rejected these arguments, ruling that Jones had properly pled a section 1983 claim against the City.  Dkt. No. 49.  As to the underlying claims against Paradis, the Court found that the right of access may be violated "by the loss of an opportunity to seek 'some particular order of relief.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 414 (2002)).  The Court noted Jones's allegation that he would have been entitled to certain equitable relief in state court which was not available as a remedy in bankruptcy, and found that the loss of this remedy was sufficient to allege a constitutional violation.  *Id.* at 15-16.  The Court also addressed causation, finding that "[i]t is plausible that the alleged cover-up would foreseeably result in Plaintiff's lack of awareness of the factual basis for his claims against the City and his attorney, thus preventing him from filing suit

timely." *Id.* at p. 16, n. 11.

On July 9, 2021, Jones filed the FAC. Dkt. No. 50. On August 16, 2021, the City filed a Motion to Strike, which the Court denied on October 5, 2021. Dkt. Nos. 59, 77. On November 5, 2021, the City filed its Answer to the FAC. Dkt. No. 78.

### III. ARGUMENT.

**A. Legal Standard.**

   **1. *Summary Judgment.***

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings and evidence that demonstrate the absence of a triable issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986*).* If the moving party fails to bear its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Co., Inc.*, 210 F. 3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmovant to demonstrate a genuine dispute of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Id.* at 255. In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Id.* at 255.

"Ordinarily we leave the question of whether a plaintiff knew or should have become aware of a fraud to the jury." *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) (internal quotations and citation omitted). In *General Bedding*, the Ninth Circuit held that even if the "inference" from the

1    evidence that plaintiff was placed on constructive notice of fraud is the "stronger"

2    inference, that "is not a sufficient basis for granting summary judgment," so long as

3    the contrary inference is reasonable, even if weaker.  *Id*. at 1398; *see also*, *ShopKo*

4    *Stores Operating Co., LLC v. Balboa Capital Corp.*, 2017 WL 3579879, at *5-7

5    (C.D. Cal. Jul. 13, 2017) (denying motion for summary judgment on fraud claim

6    based on California statute of limitations because "constructive or actual knowledge

7    of fraud is usually a question of fact" and defendant failed to establish that

8    "uncontradicted facts are susceptible of only one legitimate inference . . .") (internal

9    quotation marks and citation omitted).

10        **2.    *42 U.S.C. Section 1983 Claims.***

11        A "backward-looking access-to-court claim" based on official acts that caused

12   the inadequate settlement of a meritorious case require "the loss of the opportunity

13   to sue or the loss of the opportunity to seek some particular relief."  Dkt. No. 34 at

14   20 (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)).  To state such a

15   claim,  a plaintiff must show (1) an "underlying cause of action;" (2) "official acts

16   frustrating the litigation;" and (3) "a remedy that may be awarded as recompense but

17   [is] not otherwise available in some suit that may yet be brought."  *Harbury*, 536

18   U.S. at 415.

19        In *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978), the Ninth Circuit

20   has set forth the following standard for causation in a section 1983 action:

21            A person "subjects" another to the deprivation of a

22            constitutional right, within the meaning of section 1983, if he does

23            an affirmative act, participates in another's affirmative acts, or omits

24            to perform an act which he is legally required to do that causes the

25            deprivation of which complaint is made . . . .  Moreover, personal

26            participation is not the only predicate for section 1983 liability.

27            Anyone who "causes" any citizen to be subjected to a constitutional

28            deprivation is also liable.  The requisite causal connection can be

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

515308.7

1   established not only by some kind of direct personal participation in

2   the deprivation, but also by setting in motion a series of acts by

3   others which the actor knows or reasonably should know would

4   cause others to inflict the constitutional injury.

5   This standard closely resembles the standard foreseeability formulation of

6   proximate cause. *See id.*

7   **B.      The City Has Failed to Meet Its Initial Burden on Summary Judgment.**

8          The City has not met its initial burden of informing the Court of the basis of

9   its Motion, and identifying those portions of the pleadings and evidence that

10   demonstrate the absence of a triable issue of material fact.  The City's Motion does

11   not even attempt to address the following key elements of causation in this case:

12   (1) the nature, extent and dates of the underlying wrongful act or acts that would

13   have given rise to Jones's claims against the City and Paradis; (2) the scope,

14   duration and effect of the City's coverup of that wrongful conduct; (3) Jones's

15   claims for provisional relief that he could have brought against Paradis and the City

16   but for the City's coverup; (4) the fact that the City denied Jones's Government

17   Claim as untimely by more than a year, which effectively barred him from pursuing

18   those claims in court; and (5)  the extent of Jones's actual or inquiry notice, or lack

19   thereof, of actionable misconduct, as a result of the City's coverup.  Because the

20   City has not met its burden as the party moving for summary judgment, the Motion

21   should be denied for this reason alone.

22   **C.      The City's Motion Entirely Ignores the City's Deprivation of Jones's**

23   **         Claims for Provisional Relief.**

24          The City mischaracterizes this action as only being about Jones's loss of his

25   ability "to bring his state-law causes of action."  Dkt. No. 94, p. 2.  However, as this

26   Court recognized in its June 25, 2021 Order, "the right to access may be violated by

27   ***the loss of an opportunity to seek 'some particular order or relief.'***"  Dkt. No. 49, p.

28   15 (emphasis added) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002);

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

*see also id. a*t 414 (backward denial-of-access claim is available when specific litigation "could have produced a remedy subsequently unobtainable").  Here, the City's fraud, collusion and subsequent coverup deprived Jones of the opportunity to obtain meaningful provisional relief against both Paradis and the City, including the disqualification of counsel, preliminary injunctive relief, and the imposition of a constructive trust over illicit gains.

The provisional relief that Jones could have obtained included all of the following: (a) enjoining the LACAO, Paradis and Kiesel from representing the City in *City v. PwC*; (b) disqualifying the LACAO from representing the City in *Jones v. City*; (c) enjoining Paradis and the City from colluding to settle *Jones v. City*; (d) enjoining Paradis from aiding and abetting Landskroner and Libman's breaches of their fiduciary duties to Jones in *Jones v. City*; and (e) enjoining the LACAO from interfering with Jones's rights to independent legal representation.  *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 567-68 (9th Cir. 1990) (affirming injunction prohibiting activities that interfered with attorney-client relationship); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft LLP*, 69 Cal. App. 4th 223, 229, 253-54 (1999) (affirming preliminary injunction disqualifying law firm from acting as counsel for water district due to conflict of interest).

Jones could have also obtained an order placing Paradis's illicit profits into a provisional constructive trust.  *St. James Armenian Church of Los Angeles v. Kurkjian*, 47 Cal. App. 3d 547, 553 (1975) ("The usual theory upon which a principal recovers secrets profits garnered by his agent is by imposition of a constructive trust."); s*ee also Heckman v. Ahmanson*, 168 Cal. App. 3d 119, 123 (1985) (affirming trial court's order granting preliminary injunction enjoining defendants from dissipating their illicit profits, "which, in effect, impose[d] a [constructive] trust and require[d] the [defendants] to render periodic accountings of the disposition of the entire proceeds"); *Lofton v. Wells Fargo Home Mortgage*, 230 Cal. App. 4th 1050, 1055 (2014) (holding that trial court properly issued TRO enjoining law firm "from

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

distributing or taking action to distribute the proceeds of its settlement to itself" based on evidence that the law firm had concealed the existence of the settlement from its clients, made false statements to clients and attempted to mislead the court).

By the time Jones learned of the fraudulent scheme, it was too late to obtain effective provisional relief.  Paradis had already represented the City for approximately four years and shared with the LACAO the work product he had developed while purporting to represent Jones (GID 32, 35); Libman had represented Jones for approximately four years, despite having never met or been retained by him (GID 95, 121, 124-125, 189, 395); Paradis and Landskroner had negotiated a collusive settlement on the terms the City desired, with neither attorney advocating the Jones's interests (GID 118, 366, 419); and Paradis, Landskroner and Libman had been, or were about to be, replaced as counsel.  (GID 337-39.)

Similarly, by 2019, it was too late for Jones to obtain the imposition of a constructive trust that would apply to future payments to Paradis, PLG, or Aventador, and undoubtedly too late to prevent the dissipation of the many millions of dollars that Paradis had already received from the City and Landskroner.  As noted, in 2015, PLG entered into a contract with LADWP from which it received payments totaling approximately $6 million.  (GID 176.)  Those payments ended in 2018 when LADWP began making payments pursuant to the Aventador contract, including payments in 2018 totaling approximately $18.5 million.  (GID 211-212.)  In addition, in 2017, the City paid Landskroner over $10 million of which Landskroner paid Paradis a kickback of approximately $2,175.000. (GID 245.)  These payments had all been made prior to March 4, 2019, the date on which Judge Berle issued an order enjoining the City from making further payments to Paradis. (GID 327.)[2]

Significantly, Jones's loss of the opportunity to seek meaningful provisional relief had nothing to do with the statute of limitations or Jones's purported neglect to

---

[2] In addition, Paradis declared bankruptcy in June 2020, as the City noted in its Motion to Dismiss.  Dkt. No. 24-1.

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   file a lawsuit against the City within six months of denial of his Government Claim.

2   Rather, he lost the opportunity to obtain provisional relief because the City's coverup

3   prevented Jones from learning about the wrongful conduct at issue.

4         It appears that he City deliberately disregarded Jones's lost provisional relief

5   even though it was alleged in the FAC and raised in connection with the City's

6   Motion to Dismiss and the meet and confer process preceding this Motion.  The

7   City's unexplained failure to address these lost claims should be regarded as a

8   concession that it has no basis to challenge them.

9   **D.**    **The City's Motion Must be Denied Because a Civil Action Against the City**

10         **After Denial of Jones's Government Claim Would Have Been Untimely.**

11        As alleged in the FAC, the City's coverup deprived Jones of the opportunity

12  to litigate multiple state law claims against the City, including claims for aiding and

13  abetting breach of fiduciary duty, constructive fraud, civil conspiracy and

14  interference with contract.  Dkt. No. 50, ¶¶ 321-27, 331-33.  To pursue these claims

15  in a damages action against the City, Jones would have had to allege timely

16  compliance with the claims presentation requirements of the Government Claims

17  Act.  *See, e.g., Toscano v. County of Los Angeles*, 92 Cal. App. 3d 775, 783 (1979)

18  ("The complaint should allege that a timely claim for damages has been filed with

19  the defendant.").  Indeed, it is well established that "failure to allege facts

20  demonstrating or excusing compliance with the claim presentation requirement

21  subjects a claim against a public entity to a demurrer for failure to state a cause of

22  action." *State of California v. Superior Court*, 32 Cal. 4th 1234, 1239 (2004).  Jones

23  could not allege timely compliance with the claims presentation requirements

24  because he was prevented from submitting a timely Government Code claim by the

25  City's coverup.

26        Government Code section 911.2 provides, in part, that "[a] claim [against a

27  public entity] relating to a cause of action for death or for injury to a person or to

28  personal property . . . shall be presented . . . not later than six months after accrual of

the cause of action.  A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

Jones's state law causes of action against the City accrued in late 2014 and early 2015, when the City entered into the parallel litigation and white knight schemes with Paradis and Kiesel.  The parallel litigation scheme began in December 2014 or January 2015 and ended in February 2015, when it was replaced by the white knight scheme.  (GID 35, 37.)  The white knight scheme began in February 2015 and ran through about November 2017 when Judge Berle approved the collusive settlement; attorney's fees were paid out in the Jones's settlement and Paradis secretly received his share in the form of a kickback from Landskroner. (GID 37, 187, 225-228, 245.)  Accordingly, Jones's claims were time-barred before he even learned about the fraudulent schemes.

The City admitted that Jones's Government Code claim was untimely when it denied that claim.  Jones submitted his Government Code Claim to the City on July 23, 2019.  On September 6, 2019, the City denied Jones's claim stating, "the claim which you submitted to the City of Los Angeles on July 23, 2019 is being returned to you with no action taken on it because it was not presented within one year of the accrual of the cause of action."  (GID 397-98.)  In light of the denial letter, Jones could not have filed an action under state law that would have survived demurrer.  Isaacs Decl, ¶¶ 62-64; *State of California*, 32 Cal. 4th at 1239.

The City's Motion simply ignores this language in the City's denial letter. Instead, the City focuses exclusively on the alternative language in the denial letter rejecting the claim because it was "not presented within six months after the event or occurrence," and stating that Jones's only recourse was to apply to the City for leave to present a late claim.  This selective and disingenuous reading of the City's own denial letter is clearly insufficient to avoid the effect of the City's admission, which, if not determinative, at least creates a triable issue of fact.

Furthermore, pursuant to California Government Code section 911.4(b), an

application to present a late claim must be presented "within a reasonable time not to exceed one year after the accrual of the cause of action" and must be the result of mistake, inadvertence, surprise or excusable neglect.  *See* Cal. Gov. Code § 911.6(b)(1).  Jones could not have submitted a timely application to file a late claim because, as stated above, his causes of action accrued in 2014 and 2015.  Moreover, the untimeliness was due to the City's cover-up, not any mistake or neglect by Jones.  Accordingly, Jones could not have obtained leave to file a late claim even under the six-month provision in the denial letter.

**E.**     **There are Disputed Issues of Fact as to Whether Jones's Claims Against Paradis Were Barred by the Statute of Limitations.**

The City contends that its concealment did not proximately cause Jones's loss of access to the courts because Jones had one year from the time he discovered his claims against Paradis to file an action against him. The date of discovery is not the correct legal test.  Moreover, the City's Motion fails because there are genuine factual disputes regarding: (1) when the wrongful act(s) or omission(s) occurred; (2) when Jones discovered his claims against Paradis; (3) whether willful concealment tolled the statute of limitations; and (4) when Paradis ceased representing Jones for purposes of Section 340.6(a)(2).  *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1121 (2014) (section 340.6 "applies to actions for any act or omission arising out of the performance of an attorney's professional duties").

**1.** **California Code of Civil Procedure Section 340.6.**

The parties agree that the applicable statute of limitations is Section 340.6, which provides, in pertinent part, that an action shall be commenced "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, **the facts constituting the wrongful act** or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (emphasis added). Section 340.6 further provides that the limitations period is tolled during the time "the attorney continues to represent plaintiff regarding the specific subject matter in

1   which the alleged wrongful act of omission occurred," and that the four-year

2   limitation period is tolled if "the attorney willfully conceals the facts constituting the

3   wrongful act or omission."  Cal. Code Civ. Proc. § 340.6(a)(2), (3).

4       "Section 340.6 states two distinct and alternative limitation periods: One year

5   after actual or constructive discovery, or four years after occurrence (the date of the

6   wrongful act or omission), whichever occurs first." *Prakashpalan,* 223 Cal. App. 4th

7   at 1121.

8       Where a plaintiff sues a defendant for legal malpractice alleging several

9   distinct wrongful acts or omissions, the action will be barred by the statute of

10   limitations only if each alleged wrongful act or omission is time barred.  *See Pointe*

11   *San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch,*

12   *LLP*, 195 Cal. App. 4th 265 (2011).  Discovery of a single wrongful act does not

13   commence the limitations period for suit on a related but separate act.  *See McCann*

14   *v. Welden*, 153 Cal. App. 3d 814, 820-21 (1984) ("[D]iscovery of the fact of a

15   wrongful act or omission starts the running of the statutory clock as to that wrongful

16   act or omission."); *DeMartini v. Johns*, 2015 WL 12781178, *10 (N.D. Cal. Jan. 22,

17   2015) (under section 340.6, discovery of a single wrongful act does not start the

18   limitations period running on related but separate wrongful acts).

19       **2.      *There are Genuine Factual Disputes Regarding the Wrongful Acts***

20       ***Giving Rise to Jones's Lost Claims Against Paradis.***

21       The City has failed to meet its initial burden because the Motion never

22   identifies the specific wrongful acts or omissions at issue, or states when each of

23   them allegedly occurred.  Instead, the Motion focuses on Jones's discovery that

24   Paradis had concurrently represented both him and the City.  While Paradis's

25   concurrent representation was unethical, it was not, by itself, the basis of any of

26   Jones's lost claims.  *See Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1097 (1995)

27   ("a violation of the Rules of Professional Conduct does not, in and of itself, render

28   an attorney liable for damages").

1    Rather, Jones's claims arise from two separate wrongful schemes: the parallel

2    litigation scheme and the white knight scheme.  The evidence shows that the parallel

3    litigation scheme began in December 2014 and was replaced by the white knight

4    scheme, which began in February 2015.  Accordingly, unless some basis for tolling

5    existed, the four-year statute of limitations ran in December 2018 for the parallel

6    litigation scheme and February 2019 for the white knight scheme.  At a minimum,

7    whether and when Jones's claims against Paradis became time-barred raises a

8    genuine issue of disputed fact.

9    ***3.***      ***There Are Genuine Factual Disputes Regarding When Jones Was on***

10   ***Notice of His Lost Claims Against Paradis.***

11   "The question of when a malpractice plaintiff actually discovered or through

12   the use of reasonable diligence should have discovered a wrongful act or omission

13   and suffered injury is generally one of fact."  *McCann*, 153 Cal. App. 3d at 824; *see*

14   *also Bank of Am. Nat'l Trust and Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d

15   1129, 1135 (C.D. Cal. 1998) (whether a plaintiff discovered or should have

16   discovered information sufficient to put a reasonable person on notice is generally a

17   question of fact).

18   The City contends that Jones discovered notice of his lost claims (which the

19   City never identifies) at the time of his deposition on February 13, 2019.  What facts

20   Jones learned of at that time is a disputed question of fact.  The City relies on

21   questions which were put to Jones at his deposition, but Jones did not understand

22   that the questions stated or were based on established facts (nor were they).  In fact,

23   all Jones learned was that Paradis had represented both him and the City in

24   connection with the LADWP overbilling debacle.  (GID 298-307; Jones Decl., ¶¶

25   41-45.)  Furthermore, Jones was never questioned about, and could not have learned

26   about, the parallel litigation scheme, the white knight scheme, the sham mediation

27   sessions, Landskroner's payment of a kickback to Paradis, or his having bribed

28   Wright to obtain the Aventador contract, nor did he learn that the *City v. Jones*

30

settlement was the product of collusion and a fraud on the court.  (GID 310-12.)
Accordingly, he was not on notice of his claims against Paradis until, at the earliest
when he read Kiesel's deposition testimony in June 2020.  (GID 343-57, 359-374.)
As to each of Jones's lost claims against Paradis, there is, at a minimum, a factual
dispute as to when Jones discovered or was on notice of the basis for those claims.

### 4.     *There are Genuine Factual Disputes Regarding as to Tolling.*

#### a.     Willful Concealment.

The City argues that Jones's claims against Paradis were tolled by Paradis's
willful concealment of the wrongful conduct.  "As a leading treatise explains, 'the
statute of limitations will remain tolled if the existence of a cause of action for
malpractice was fraudulently concealed by ***affirmative misrepresentations***.'  Mere
nondisclosure of alleged wrongful conduct even in the context of a fiduciary
relationship does not constitute active 'concealment.'"  *Nielsen v. Stewart*, 2017 WL
3124207, *3 (Cal. Ct. App. Jul. 24, 2017) (unpublished) (emphasis added) (quoting
3 Mallen & Smith, *Legal Malpractice* § 23:53); s*ee also Koch v. Citadel Financial
Corp.*, 2002 WL 31677057 (Cal. Ct. App. Nov. 27, 2002) (unpublished) (failure to
disclose facts not sufficient to show willful concealment under section 340.6;
*Trantafello v. Medical Center of Tarzana*, 182 Cal. App. 3d 315, 321 (1986) (tolling
of the statute of limitations for medical malpractice which is similar to §340.6,
"requires something more than a mere continuation of the prior nondisclosure. . . .").
As the leading treatise on legal malpractice explains:

> The California requirement of active concealment, instead
> of nondisclosure, was based on a pragmatic concern about the
> efficacy of the statute. . . . [The] drafters were legitimately
> concerned that the "nondisclosure" standard would virtually
> nullify the salutary effect of the statute. . . . In every such instance
> under a "nondisclosure" standard, however, a plaintiff could plead
> the attorney's prior knowledge of the error, thereby raising an

1    issue of fact concerning the attorney's state of mind, an issue that

2    could only be resolved after a trial.  On the other hand,

3    "concealment" requires an affirmative pleading of facts and proof

4    of wrongdoing. . . .

5    3 Mallen & Smith, *Legal Malpractice* § 23:53.

6        Here, Paradis stopped communicating with Jones in March or April 2015,

7    shortly after he introduced Jones to Landskroner.  (GID 120-21, 123.)  Accordingly,

8    the City cannot meet its initial burden on summary judgment because it cannot show

9    that Paradis made affirmative misrepresentations to Jones that would have delayed

10   discovery of the wrongful acts and omissions beyond June 2015, such that Jones

11   could still file claims against Paradis upon reviewing Kiesel's deposition testimony

12   in June 2019.  In short, the City has not established as a matter of law that the

13   limitations period was tolled by Paradis's willful concealment after March 2015.

14                    **b.    Continued Representation.**

15       The City claims that the statute of limitations was tolled by Paradis's

16   continued representation of Jones, relying on Jones's deposition testimony that he

17   assumed Paradis continued to represent him.  Notwithstanding what Jones may have

18   assumed, there is a genuine factual dispute about when Paradis's representation of

19   Jones objectively concluded.

20       "[T]he inquiry into when representation has terminated does not focus on the

21   client's subjective beliefs about whether the attorney continues to represent him or

22   her in the matter.  Instead, the test is objective and focuses on the client's reasonable

23   expectations in light of the particular facts of the attorney-client relationship."

24   *Nguyen v. Ford*, 49 Cal. App. 5th 1, 14 (2020).  "Whether the client actually and

25   reasonably believed that the attorney would provide further legal services regarding

26   a specific subject matter is predominantly a question of fact for the trier of fact . . . ."

27   *Gonzalez v. Kalu*, 140 Cal. App. 4th 21, 31 (2006).

28       "'[T]he failure to formally withdraw as attorney of record, standing alone,

                                        32

1     will not toll the statute of limitations under the rubric of continued representation.'"

2     *Nguyen*, 49 Cal. App. 5th at 12-13 (quotations omitted).  Courts instead look for

3     evidence "of an ongoing *mutual* relationship and of activities in furtherance of the

4     relationship."  *Shoaxing City Maolong Wuzhong Down Products, Ltd. v. Keehn &*

5     *Associates, APC*, 238 Cal. App. 4th 1031, 1039 (2015) (emphasis in original).

6          In this case, neither the subjective belief of Jones nor Paradis's failure to

7     formally terminate the representation is necessarily controlling.  After April 2015,

8     Jones and Paradis were not in communication and did not have the ongoing mutual

9     relationship required to maintain an attorney-client relationship.  (GID 120-21, 123.)

10    Indeed, the City has already admitted as much.  (GID 324-325.)  Furthermore, by

11    April 2015, Paradis represented the City, which was adverse to Jones, and all of his

12    actions relating to *Jones v. City* were solely on behalf of and for the benefit of the

13    City, not Jones.  *Cf. Shoaxing City,* 238 Cal. App. 4th at 1039.  Under the

14    circumstances, the date on which Paradis's representation of Jones ended is a

15    genuinely disputed issue of fact.

16                    **IV.   CONCLUSION**

17          For the foregoing reasons, the Court should deny the City's Motion with

18    prejudice and set this matter for trial later this year.

19

20                         Respectfully submitted,

21    DATED:  April 4, 2022         **ISAACS | FRIEDBERG LLP**

22

23

24                         Jeffrey B. Isaacs, Esq.
                           Jerome H. Friedberg, Esq.

25                         Adam Kargman, Esq.
                           Janine F. Cohen, Esq.

26                         *Attorneys for Plaintiff Antwon Jones*

27

28