Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
Adam Kargman (SBN 212109)
Janine F. Cohen (SBN 203881)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:    (213) 929-5550
Facsimile:   (213) 955-5794
Email:    *jisaacs@ifcounsel.com*
            *jfriedberg@ifcounsel.com*
            *akargman@ifcounsel.com*
            *jcohen@ifcounsel.com*

*Attorneys for Plaintiff Antwon Jones*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANTWON JONES,** | Case No. 2:20-CV-11502-VAP-JCx |
| Plaintiff, | Hon. Virginia A. Phillips |
| vs. | Magistrate Judge Jacqueline Chooljian |
| **CITY OF LOS ANGELES, et al.,** | **DECLARATION OF JEFFREY B. ISAACS IN SUPPORT OF PLAINTIFF ANTWON JONES'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

*[Filed concurrently with: (i) Plaintiff's Memorandum of Points and Authorities; (ii) Declaration of Adam Kargman; (iii) Declaration of Antwon Jones; (iv) Declaration of Jerome Friedberg; (v) Declaration of Deanna Noe; (vi) Request for Judicial Notice; (vii) Compendium of Exhibits; (viii) Statement of Genuine Issues in Dispute; (ix) Objections to Defendant's Statement of Undisputed Facts; and (x) [Proposed] Orders]*

**HEARING:**
Date:          May 9, 2022
Time:          2:00 p.m.
Crtrm:         8A

Complaint filed:    Dec. 21, 2020
FAC filed:          Jul. 9, 2021
Trial date:         None set

1

## **DECLARATION OF JEFFREY B. ISAACS**

I, Jeffrey B. Isaacs, declare as follows:

1.     I am an attorney licensed to practice law before this Court and the courts of the State of California and a partner in the law firm of Isaacs | Friedberg LLP (the "**IF Firm**"), counsel of record for Plaintiff Antwon Jones in this case.

2.     I make this declaration in support of Plaintiff's Opposition to Defendant City of Los Angeles's Motion for Summary Judgment.  Except for those matters based on my review of documents or stated on information and belief, I make this declaration based upon my personal knowledge, and, if called upon to do so, I could and would so testify.

3.     Unless otherwise indicated, references in this Declaration to **Exhibits** are to the Exhibits included in Plaintiff's concurrently filed Compendium of Exhibits in Opposition to Defendant City of Los Angeles's Motion for Summary Judgment.

4.     For purposes of this Declaration, references to "**PwC**" are to PricewaterhouseCoopers, LLP; references to the "**City**" are to Defendant City of Los Angeles; references to "***Jones v PwC***" are to the never-filed case, *Antwon Jones v. PriceWaterhouseCoopers LLP*; references to "***City v. PwC***" are to *City of Los Angeles v. PriceWaterhouseCoopers, LLP, et al.*, Los Angeles Superior Court, Case No. BC574690; references to "***Jones v. City***" are to *Antwon Jones v. City of Los Angeles, et al.*, Los Angeles Superior Court, Case No. BC577267; references to "**LADWP**" are to the Los Angeles Department of Water and Power; references to "**Judge Berle**" are to Los Angeles Superior Court Judge Elihu Berle, who presided over the *City v. PwC* case before it was dismissed in September 2019, and who continues to preside over the *Jones v. City* case and related class actions; and references to "**PLG**" are to Paradis Law Group PLLC.

5.     Any discussion in this Declaration relating to the IF Firm's representation of Mr. Jones is not intended to waive the attorney-client privilege or any other privilege or protection applicable to any confidential communications

between the IF Firm and Mr. Jones.

**A.      The Jones's Retention of the IF Firm's Retention by Mr. Jones.**

6.      In late January 2019, the IF Firm was retained by Mr. Jones for the limited purpose of representing him in connection with a deposition subpoena to testify and produce documents served on him by PwC in the *City v. PwC* case (the "**Subpoena**").  The Subpoena's document requests to Mr. Jones related mostly to documents prior to April 1, 2015.  Our representation at that time was limited to assisting Mr. Jones in responding to PwC's document requests and representing Mr. Jones at his deposition.

**B.      Events Leading to Mr. Jones Being Subpoenaed in the *City v. PwC* Case.**

7.      Mr. Jones was not a party in the *City v. PwC* case.  The issue for which he was being subpoenaed to testify began as a narrow one, concerning a discovery dispute between PwC and the City over the City's refusal to produce a draft of the *Jones v. PwC* complaint in its files, based on attorney-client privilege and attorney work product assertions.  The following is my understanding of the history of that dispute and how it resulted in Mr. Jones being subpoenaed to testify and produce documents, in a case in which he was not a party and long after the *Jones v. City* case had settled, based on my review of relevant court records in the *City v. PwC* case.

8.      In February 2017, PwC filed its first motion to compel production of documents in the *City v. PwC* case, in which PwC contended that the City had improperly withheld documents as privileged.  *See* Declaration of Deanna Noe ("**Noe Decl.**"), ¶ 6; **Exh. 21**.

9.      In March 2017, Judge Berle granted PwC's motion in part, overruling the City's work product claims and ordering the City to produce most of the documents at issue, but permitting the City to serve a revised privilege log.  *See id.*, ¶ 7; **Exh. 22**.

10.      On September 29, 2019, the City served a Revised Privilege Log. Document number 70 on the Revised Log referenced a January 24, 2015 email with

3

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

518357.8

the subject line: "FW: Jones v. Price Waterhouse Coopers, LLP (Consumer Class

Action)."  Document No. 71 on the Revised Privilege Log was a document titled

"*Jones v. PwC* – Initial Complaint – FINAL.DOC," dated January 24, 2015.

*See* **Exh. 1**, ¶¶ 190-191.

11.    On November 3, 2017, PwC moved to compel production of documents

listed on the Revised Privileged Log, including Document Nos. 70 and 71.  *See* Noe

Decl., ¶ 8; **Exh. 23**.

12.    At a December 4, 2017 hearing on PwC's motion to compel, the

following exchange took place between PwC's counsel, Daniel Thomasch, and

Judge Berle:

> **MR. THOMASCH**: . . . Now, your honor, there is no way that a
> nonparty can indirectly recover money unless Mr. Jones is a stalking horse or a
> proxy or has an agreement with the City.
>
> **THE COURT:**  Well, that's my concern here, that I'm not sure
> that we have all the facts.  I don't quite understand the setup here as to
> what the attorney was drafting on behalf of whom.  So I think some
> more submission ought to be made on that.
>
> * * *
>
> **MR. THOMASCH:** . . . [W]e are prepared to take a deposition
> of a PMQ on the circumstances surrounding the creation of that
> document.
>
> **THE COURT:**  I think you have to do it, because what we
> heard today was that the City Attorney himself drafted the complaint.
> Now we have to find out on behalf of whom or what were the
> circumstances.

Noe Decl., ¶ 9; **Exh. 24**, pp. 21:10-18, 23:12-18; *see also id*., ¶ 11; **Exh. 26**,

p. __.

13.    At the December 4, 2017 hearing, Judge Berle ordered the City to

4

produce a person most qualified ("**PMQ**") to be deposed on topics relating to the withheld draft *Jones v. PwC* complaint. *See id.*, ¶ 9; **Exh. 24**.

14.    On April 26, 2018, the City moved to quash PwC's PMQ deposition notice. *See id.*, ¶ 11; **Exh. 26**, p. 8. On June 21, 2018, the City withdrew its motion to quash. *See id.*, ¶ 11; **Exh. 26**, p. 9.

15.    On September 13, 2018, Thomas Peters, Chief of the LACAO's Civil Litigation Branch, appeared for deposition as the City's PMQ.  He was represented by Mr. Paradis, in his capacity as Special Counsel for the City.  When PwC's counsel began questioning Mr. Peters about the City's knowledge of the professional relationship between Mr. Paradis and Mr. Landskroner, Mr. Paradis abruptly ended the deposition.  As PwC later described that development in a November 2018 filing:

> On September 13, 2018, LADWP improperly and unilaterally terminated the PMQ deposition that the Court ordered for the purpose of examining whether a proper basis exists for LADWP's assertion of privilege over a draft complaint which purports on its face to be on behalf of Plaintiff Antwon Jones, an LADWP rate-payer who later sued LADWP.  LADWP suspended the deposition just as questions focused in on the pre-existing relationship between LADWP's Special Counsel and counsel for Mr. Jones, a topic that the Court wanted "fleshed out."  No justification can be proffered for this behavior.  The Court's questions about LADWP's assertion of privilege over a document prepared on behalf of a third party who later sued LADWP remain unanswered.

*Id.*, ¶ 11; **Exh. 26**, p. 4; *see also* Declaration of Kathryn L. McCann ("McCann Decl."), Exh. 2, p. 186, ¶ 206 & p. 189, ¶ 210; **Exh. 1**, ¶¶ 206 & 210.

16.    On November 2, 2018, PwC filed a motion to compel and for sanctions related to the aborted PMQ deposition. *See* Noe Decl., ¶ 11; **Exh. 26**.

17.    When PwC's motion to compel originally came on for hearing on

5

December 5, 2018, Judge Berle expressed his concern about why the City had abruptly ended Mr. Peters's PMQ deposition.  The following exchange occurred:

THE COURT:  Have you thought about deposing Mr. Jones and counsel for Mr. Jones?

MR. THOMASCH:  Yes, I have, your Honor.  At the moment we wanted to start, and I expect that may well be necessary, we want to start with the City.  Antoine [sic] Jones is the named plaintiff.  Your Honor asked how did that come to be.  It is certainly not a coincidence, your Honor.

THE COURT:  I'm still curious about that.

MR. THOMASCH:  We still don't know.  We asked that specific question you asked and we were told it's privileged . . . .

* * *

THE COURT:  Well, let me get back to the initial question that was asked months ago; and that is, how did this complaint come about?

* * *

THE COURT:  What was Mr. Antoine [sic] Jones' involvement in this, his counsel from Ohio?

MR. PARADIS:  Your Honor, Mr. Peters testified that he directed us to prepare the complaint at Mr. Peters' direction –

THE COURT:  That doesn't answer the question.  You do realize that Mr. Thomasch is not going away.  You've heard him. He's not going away, and you would think that counsel would want to cooperate and get this over as quickly as possible rather than make it more difficult and drag it out.  If Mr. Thomasch doesn't get the information from Mr. Peters or from the person most knowledgeable of the City, than he's going to take the deposition of Mr. Antoine [sic]

6

1  Jones, he's going to take the deposition of the attorney in Ohio, and

2  we're going to find out what happened here.  Mr. Thomasch is not

3  going away.

4                                    *  *  *

5          **THE COURT:**  . . . The Court will order the [PMQ] deposition

6  to be resumed, and the Court will order Mr. Peters to return to his

7  deposition to answer questions.  And if Mr. Peters is not the person

8  most qualified, then LADWP is going to have to designate somebody

9  else that is the most qualified person to answer questions with regard

10  to the subjects identified in the notice of deposition and the witness

11  must be prepared . . . .

12          Secondly the Court is going to order the Defendant Price

13  Waterhouse and authorize Price Waterhouse to go forward with the

14  deposition of Antoine [sic] Jones, as well as the deposition of Jack

15  Landskroner, to take place as soon as those depositions can be

16  arranged . . . .

17   *Id*., ¶ 12; **Exh. 27**, pp. 5:15-19, 23-26, 9:15-10:3, 16:7-22.

18  **C.**      **Mr. Jones's February 13, 2019 Deposition in the *City v. PwC* Case.**

19          18.     I represented Mr. Jones at his February 13, 2019 deposition.  The

20  deposition took place at the offices of Gibson Dunn & Crutcher LLP in downtown

21  Los Angeles.  Mr. Thomasch did the bulk of the questioning.

22          19.     The following attorneys were also present:

23                  (a)      Daniel Thomasch, James Santiago and Michael Dore, counsel for

24  PwC;

25                  (b)      Paul Kiesel, Special Counsel for the City; and

26                  (c)      Alan Himmelfarb, plaintiff counsel in two of the related the

27  ratepayers' class actions.

28          20.     **Exhibit 6** is a true and correct copy of excerpts of the court reporter's

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

518357.8

1   transcript of Mr. Jones's February 13, 2019 deposition.

2        21.    Mr. Jones testified that he assumed that Mr. Paradis continued to

3   represent him, along with Mr. Landskroner, in the *Jones v. City* case.  But he also

4   testified in response to Mr. Thomasch's questioning that his interaction in that case

5   after the April 1, 2015 filing of the complaint were exclusively with Mr. Landskroner.

6   By way of example:

7          **Q.**    And soon [after filing the *Jones v. City* complaint] you

8   instruct Mr. Landskroner to propose settlement; is that right?

9          **A.**    Yes.

10         **Q.**    Did that instruction also go to Mr. Paradis?

11         **A.**    No.

12                       \* \* \*

13         **Q.**    Why didn't you instruct Mr. Paradis?

14         **A.**    Because after this point I just started really having

15  correspondence with Jack.

16                       \* \* \*

17         **Q.**    And what I'm trying to do is see, and this is just a

18  recollection, may be right or wrong, but do you recall whether or not

19  your instruction to Mr. Landskroner to pursue the possibility of

20  settlement, was that before or after the last communication you had

21  with Mr. Paradis?

22         **A.**    After, I would say.

23                       \* \* \*

24         **Q.**    Did you have an understanding, when you -- when you

25  learned that your counsel had reached out to the City to discuss

26  settlement, when you first learned of that, did you understand who it

27  was that had reached out?

28         **A.**    Yes.

8

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   **Q.**   And who was it that had reached out to the City?

2   **A.**   Jack.

3                                    * * *

4   **Q.**   Paragraph 11 [of your May 5, 2017 declaration in support

5   of a Motion for Final Approval of the *Jones v. City* settlement] begins:

6                "My counsel regularly consulted with me while preparing

7        the settlement proposal."

8                Who were you referring to as the counsel that consulted

9   with you while preparing the settlement proposal?

10  **A.**   Jack.

11                                   * * *

12  **Q.**   "My counsel met with officials," is that reference to "my

13  counsel" to Jack Landskroner alone?

14  **A.**   Yes.

15                                   * * *

16  **Q.**   Do you recall your counsel seeking your permission to

17  engage in mediation?

18  **A.**   Yes.

19  **Q.**   And by that you meant Mr. Landskroner?

20  **A.**   Yes.

21                                   * * *

22  **Q.**   . . . [A]nd continuing through the present time, you were

23  involved in directing, monitoring and supervising, quote, "my

24  counsel"?

25  **A.**   Yes.

26  **Q.**   And did that include Paul Paradis and Jack Landskroner?

27  **A.**   That's Jack Landskroner.

28                                   * * *

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

518357.8

1    **Q.**    In paragraph 15 [of your declaration] there's a reference

2    to -- it begins:

3         "As a result, my counsel sought and obtained my

4         permission for the parties to again engage the services of Judge

5         Tevrizian . . ."

6         Do you see that?

7    **A.**    Yes.

8    **Q.**    That reference there, is that to Jack Landskroner?

9    **A.**    Yes.

10   **Q.**    Anyone else?

11   **A.**    Whoever – no.

12   **Exh. 6**, pp. 120.

13       22.    Mr. Jones also testified that he did not know whether Mr. Paradis still

14   represented him at the time he was served with the Subpoena in January 2019:

15   **Q.**    So as far as you were concerned, [Mr. Landskroner] was

16   still representing you [at the time you were served in January 2019];

17   correct?

18   **A.**    Yes.

19                                    * * *

20   **Q.**    As far as you were concerned, was Mr. Paradis still

21   representing you?

22   **A.**    I'm not sure.

23   **Exh. 6**, p. 125.

24       23.    When asked about whether he knew if Mr. Paradis had received a share

25   of the attorney's fees paid to Mr. Landskroner as part of the *Jones* settlement,

26   Mr. Jones testified that he did not:

27   **Q.**    . . . Did you have an understanding as to whether

28   Mr. Landskroner was going to be obtaining payment from the

10

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   attorney's fees component of the settlement?

2   **A.**   Yes.

3   **Q.**   Did you have an understanding as to whether Mr. Paradis

4   would be obtaining attorney's fees from the attorney's fees portion of

5   the settlement?

6   **A.**   No.

7   **Q.**   You didn't know either way or you didn't think he was?

8   **A.**   I didn't know either way.

9   **Q.**   Because you weren't in contact with him at that time?

10   **A.**   Yes.

11   **Exh. 6**, p. 123.

12       24.   During Mr. Jones's deposition, Mr. Thomasch requested an impromptu

13   telephonic hearing with Judge Berle.  As reflected in the transcript, Mr. Jones was not

14   present in the room for the hearing:

15   **MR. THOMASCH:**·  Okay.  I think we should call the court.

16   **MR. ISAACS:**·  Shall we go off the record while we're getting

17   in touch with the judge?  And I'd like -- is there any need for

18   Mr. Jones –

19   **MR. THOMASCH:**·  No, Mr. Jones does not need to be here.

20   Thank you, Mr. Jones.

21                       \* \* \*

22   **MR. THOMASCH:**  . . . You don't need to be a part.  There's

23   no issue about your testimony here.  This is a lawyer thing about

24   documents and you don't need to be part of it.

25   **Exh. 6**, p. 132.

26       25.   The hearing with Judge Berle took place off the record and was limited

27   to a discussion of whether there had been a waiver of the attorney client privilege and

28   attorney work product doctrine with respect to the draft *Jones v. PwC* complaint.

11

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

26.     Mr. Jones was asked only a single question about his knowledge of a

contract between Mr. Paradis and the City; it was the last question in the deposition

and did not convey any information:

> **Q.**     Prior to being noticed for this deposition, did anyone ever
>
> inform you that Mr. Paradis had a contract with the City by which he
>
> was paid or authorized to be paid more than $6 million to oversee the
>
> City's performance of the work that was agreed to in the settlement of
>
> your case?
>
> * * *
>
> **THE WITNESS:**· No.
>
> **MR. THOMASCH:**· All right.  Mr. Jones, I want to thank you
>
> for your cooperation today.  I have no further questions at this time.

**Exh. 6**, p. 133.

27.     None of the questions Mr. Jones was asked, and none of his responses,

gave me reason to believe that he had any actionable claims for damages or

disgorgement against Mr. Paradis or the City.  While Mr. Jones did not ask me at that

time whether he had grounds to sue Mr. Paradis or the City, if he had, I would have

told him that he did not.

**D.     Document Production and Privilege Issues.**

28.     The February 13, 2019 deposition was the only time Mr. Jones was

deposed in the *City v. PwC* case, the *Jones v. City* cases, or the earlier-filed ratepayer

class actions.  However, he remained caught up in those proceedings – and thus we as

his individual counsel – both because of the City's continuing refusal to produce the

*Jones v. PwC* complaint and because of the documents that Mr. Jones possessed and

PwC wanted.

29.     With respect to the second issue, PwC's Subpoena had requested that

Mr. Jones produce certain categories of documents relating to his communications

with Mr. Paradis and Mr. Landskroner.  At the same time, however, he was required

12

1   to withhold those documents because Mr. Paradis and Mr. Landskroner had

2   instructed him to withhold them as their confidential work product.

3   **E.     Briefing in Response to Judge Berle's February 12, 2019 Order.**

4          30.    Following Mr. Jones's deposition, on February 21, 2019, Judge Berle

5   ordered counsel in the *Jones v. City* case, the *City v. PwC* case and the related class

6   actions to brief issues relating to application of the attorney-client privilege and work

7   product doctrine to the draft *Jones v. PwC* complaint.

8          31.    Because Judge Berle's Order implicated documents responsive to the

9   Subpoena that Mr. Jones had been directed by Mr. Paradis and Mr. Landskroner, to

10  withhold as confidential work product we prepared and filed a Brief responding to

11  Judge Berle's questions on behalf of Mr. Jones and to the extent they applied to him.

12  On the first page of the Brief, we reiterated the limited nature and scope of our

13  representation of Mr. Jones, stating:

14              The undersigned counsel only represents Mr. Jones as a non-

15              party in the *City v. PwC* case.  They do not represent him in the *Jones*

16              *v. [City]* case.  His counsel in that case remains Jack Landskroner,

17              Michael Libman and their respective law firms.

18         32.    Our purpose in filing the Brief was to show the Court that (a) Mr. Jones

19  had no choice but to follow the instructions of Mr. Paradis and Mr. Landskroner's

20  instructions and assert work product protection over documents and communications

21  he had received from them; and (b) he was not a proxy or stalking horse for Mr.

22  Paradis or a knowing participant in any fraud that would justify application of the

23  crime-fraud exception to any privilege he held.

24         33.    The City's Brief, filed on March 1, 2019, was submitted by Special

25  Counsel and signed by Mr. Paradis's partner, Gina Tufaro.  In it, the City asserted

26  that Mr. Paradis had only represented Mr. Jones in connection with the contemplated

27  *Jones v. PwC* case and had ceased communicating with Mr. Jones in late

28  March 2019, shortly after introducing Mr. Jones to Mr. Landskroner:

13

1             On December 9, 2014, [PLG] was retained by [Mr. Jones] to

2    represent Mr. Jones in connection with the commencement of a

3    putative consumer class action ***against PwC*** to recover damages that

4    Mr. Jones incurred as a result of improper billing.  Shortly thereafter,

5    [PLG] then reached out to [Kiesel], who also began working for

6    Mr. Jones as counsel.  Mr. Jones had retained counsel for the purpose

7    of bringing suit against PwC.

8             [PLG] and Kiesel Law continued to represent Mr. Jones in a

9    matter involving putative class claims ***against PwC*** until late

10    March 2015, and had no further communications of any type with

11    Mr. Jones relating to any litigation matters.

12 *Id*., ¶ 13; **Exh. 28,** pp. **284** (emphasis in original).

13 **F.**     **The March 4, 2019 Hearing.**

14      34.     I attended a March 4, 2019 hearing before Judge Berle in the *City v.*

15 *PwC* and *Jones v. City* cases, on behalf of Mr. Jones individually (the "**March 4,**

16 **2019 hearing**").  Mr. Jones also attended the hearing at our request, in the event that

17 Judge Berle had any questions for him.  **Exhibit 29** is a true and correct copy of the

18 transcript of the hearing.  *See* Noe Decl., ¶ 14; **Exh. 29.**

19      35.     The City was represented at the hearing by Thomas Peters, who, as

20 noted, was at the time Chief of the LACAO's Civil Litigation Branch; Assistant

21 General Counsel for LADWP, Richard Tom; Deputy City Attorney Deborah Dorny;

22 Mr. Paradis; Ms. Tufora; and Jeffrey Koncius, an attorney at Mr. Kiesel's firm.  The

23 City was also represented by Maribeth Annaguey and Kathryn McCann, partners at

24 Brown George Ross LLP (now Ellis George Cipollone O'Brien Annaguey LLP),

25 counsel for the City in this case.  (Parenthetically, Ms. Annaguey had been

26 representing the City in the LADWP litigation since 2014, as a partner with Liner

27 LLP, and continued to represent the City in that litigation after lateraling to the

28 Brown George Ross firm.)

14

36.     Mr. Landskroner appeared at the hearing on behalf of both the *Jones*
class and Mr. Jones in his capacity as class representative.  Mr. Landskroner was
represented at the hearing by attorney Mark Drooks.

37.     The City and Mr. Landskroner took the position that, in essence:
(1) Mr. Paradis had transitioned his representation of Mr. Jones to Mr. Landskroner
and his firm, at the latest, with the filing of the *Jones v. City* complaint on April 1,
2015; and (2) prior to that, there was no adversity between the City and Mr. Jones
because they both were targeting PwC as a putative defendant.

38.     During the March 4 hearing, Mr. Thomasch, as counsel for PwC, argued
at length for an order requiring the City to disclose the draft *Jones v. City* complaint
and for further discovery concerning Mr. Paradis's relationship to Mr. Jones,
Mr. Landskroner and the City.  Much of his argument, however, was without any
evidentiary support (because he had none at the time), and was more in the form of
what he believed the evidence would show if the Court ordered the discovery he
sought.

39.     At the conclusion of the hearing, Judge Berle issued an order
"restrain[ing] the City of Los Angeles from paying any further sums to
Mr. Landskroner, to Mr. Paradis, or to any company in which Mr. Landskroner or
Mr. Paradis have an interest."  *Id.*, ¶ 29; **Exh. 29**.  He also set an Order to Show
Cause ("**OSC**") for the appointment of a special master/auditor.  *See id*.

40.     Judge Berle did not enter any discovery orders at that time.

41.     Nothing that I heard during the March 4 hearing gave me reason to
believe that Mr. Jones had any actionable claims for damages or disgorgement
against Mr. Paradis or the City.  While Mr. Jones did not ask me at that time whether
he had grounds to sue Paradis or the City, if he had, I would have told him he did not.

**G.     Mr. Landskroner's Withdrawal as Class Counsel.**

42.     Following the March 4 hearing, Mr. Landskroner and his firm sought to
withdraw as class counsel due to an asserted conflict of interest.  His counsel,

15

Mr. Drooks, requested that Mr. Jones, as the class representative, provide a declaration agreeing to the withdrawal.

43.     After discussing the issue with us, Mr. Jones concluded that it was in the best interest of the *Jones* class, and consistent with his fiduciary duties to the class, not to oppose Mr. Landskroner's withdrawal, and that Mr. Landskroner should be replaced as soon as possible by new, conflict-free class counsel.  We assisted Mr. Jones by drafting and filing his declaration stating his position because there were no other attorneys involved in the *Jones v. City* case who could.

44.     Mr. Jones's declaration was filed on April 3, 2019.

**H.     Mr. Jones's Brief in Response to Judge Berle's OSC.**

45.     On March 25, 2019, we filed a response to the OSC on behalf of Mr. Jones.  On the first page of the response, we reiterated the limited nature and scope of our representation of Mr. Jones as well as the reason we were filing a response on his behalf:

> To be clear, the undersigned counsel is not class counsel in the *Jones v. [City]* case, nor are we seeking to be appointed as such. Rather, class counsel in that case remains Jack Landskroner and his law firm, Landskroner Grieco Merriman LLC.  However, since Mr. Landskroner has declared himself conflicted and is seeking to withdraw as class counsel on that ground, the undersigned counsel is submitting this brief on behalf of Mr. Jones to ensure that he is satisfying his fiduciary duties, as class representative, to protect the interest of this class.

**I.     The Appointment of Brian Kabateck as New Class Counsel.**

46.     At a hearing on April 17, 2019 in the *Jones v. City* case, Judge Berle appointed Brian Kabateck and his law firm, Kabateck LLP, as the new class counsel. *See* Noe Decl., ¶ 29; **Exh. 41**.  The order appointing him gave him authority to investigate "how the [Jones] settlement was arrived," and "whether the settlement of

16

the class action was fair, reasonable, and adequate under all the circumstances." *Id.*

47.     Following Mr. Kabateck's appointment, Mr. Jones and I met with him and his partner, Anastasia Mazzella.  Mr. Kabateck had determined that it would be in the interest of the class for Mr. Jones to obtain his client file from Mr. Paradis and PLG.

48.     On June 27, 2019, in coordination with Mr. Kabateck, I wrote counsel for Mr. Paradis and PLG requesting that they release Mr. Jones's entire client file to the IF Firm and Kabateck LLP.  To ensure that Mr. Paradis had no basis for withholding the file, I began my letter by giving formal notice of Mr. Jones's termination of Mr. Paradis and PLG in the *City v. PwC* case, the *Jones v. PwC* matter, the *Jones v. City* case and any other matters involving Mr. Jones.  **Exhibit 7** is a true and correct copy of my June 27, 2019 letter.

49.     On July 9, 2019, Mr. Paradis's counsel responded that they were "evaluating [the] request . . . and will provide a response forthwith."  **Exhibit 8** is a true and correct copy of counsel's July 9, 2019 letter to me.

50.     On July 18, 2019, Mr. Paradis's counsel sent me a follow-up letter, stating that Mr. Paradis's client file consisted only of emails between Mr. Paradis and Mr. Jones, Mr. Jones's retainer agreement with Mr. Paradis and the draft *Jones v. PwC* complaint, all of which they claimed Mr. Jones was "already in possession of." No mention was made of the *Jones v. City* complaint.  Neither Mr. Paradis nor his counsel provided any documents.  **Exhibit 9** is a true and correct copy of counsel's July 18, 2019 letter to me.

51.     Mr. Paradis and PLG later filed two rounds of motions for protective orders to prevent Mr. Jones from disclosing documents in his possession, asserting that they represented Mr. Paradis and PLG's work product.  These motions generated extensive briefing both in the trial court and the Court of Appeal.  Mr. Jones was only able to disclose the documents after Judge Berle denied the motions for the most part and the Court of Appeal denied Mr. Paradis and PLG's writs.

17

**J.     Paul Kiesel's May 28, 29 and 30, 2019 Deposition Testimony.**

52.     I attended Mr. Kiesel's deposition in the *City v. PwC* case on May 28, 29 and 30, 2019 as individual counsel for Mr. Jones, to address the continuing privilege and work product issues.

53.     **Exhibit 11** is a true and correct copy of excerpts of the transcript of Mr. Kiesel's deposition testimony on May 28, 2019.

54.     **Exhibit 12** is a true and correct copy of excerpts of the transcript of Mr. Kiesel's deposition testimony on May 29, 2019.

55.     During his testimony, Mr. Kiesel made many jaw-dropping revelations. He revealed the details of the initial scheme between the City, Mr. Paradis and Mr. Kiesel to shift public blame for the disastrous CC&B System rollout from LADWP to PwC:

> **Q:**     So the plan as originally conceived of sometime prior to
> January 13, 2015, involved attempting to get the lead plaintiff counsel
> in the existing class actions . . . arising out of the CC&B system to
> voluntarily dismiss their claims in return for which the City would toll
> any claim they might have against the City, and they would be invited
> to join in a proposed complaint to be filed by Jones as a class action
> against PricewaterhouseCoopers; is that correct?
>
> * * *
>
> **A:**     That would be correct.

**Exh. 11**, pp. 160-161.

56.     He also made the shocking admission that at a meeting in February 2015, between himself, Mr. Paradis, Mr. Peters and James Clark, who was then the Deputy Chief City Attorney, it was decided to re-purpose Mr. Jones from being the plaintiff in the abandoned *Jones v. PwC* case to being the plaintiff in a new class action to be brought against the City, that the new case would be used to resolve all of the class action claims pending against the City, and that Mr. Paradis would

18

1  recruit an attorney friendly to the City who would ostensibly represent Mr. Jones, but

2  whose job it would be to immediately seek to settle the new action on terms dictated

3  by the City:

4      **Q:**    Did there come such a time when there was a transition

5      from a plan to obtain voluntary dismissals of the existing actions and

6      train all guns on PwC and instead the game plan became sue PwC and

7      settle a to-be-filed lawsuit against the City?

8      **A:**    So precisely right.

9      There was an attempt to have the filed [related class] actions

10     tolled and dismissed without prejudice.

11     When that became not an option, and when in mid-February

12     [2015] a decision was made there could not be a consumer case

13     brought against PricewaterhouseCoopers, a decision was made by the

14     City to use the same plaintiff who was going to sue

15     PricewaterhouseCoopers [namely, Mr. Jones] to then file suit against

16     the City of Los Angeles with all of the causes of action that had been

17     asserted in the other claims, to have one complete lawsuit that would

18     then be the vehicle to resolve the Department of Water and Power's

19     CC&B issues.

20     And Mr. Paradis though, I had forgotten this, was the one who

21     was drafting that complaint which I forwarded where we began today

22     on March 3 when I requested from Mr. Libman on March 3, 2015, his

23     State Bar number to assist Mr. Paradis in the preparation of that

24     complaint.

25     **Q:**    So does it follow that the meeting you testified to in

26     which the City announced that plan was earlier than March 3, 2015?

27     **A:**    It was.

28     **Q:**    And can you identify without any specificity when it

19

1   was?

2          **A:**   No.  I can only say it was sometime between February 17

3   and March 3, but I can't identify a date.

4   **Exh. 11**, p. 167.

5          **Q:**   And in the course of that conversation, was it discussed

6   that by having such an action brought against the City[,] the City

7   could then act to settle it?

8          **A:**   Yes.

9          **Q:**   And was there any discussion of how to effectuate a

10  settlement how to accomplish that?

11         **A:**   Yes.

12         **Q:**   And what was discussed in that regard?

13         **A:**   First and foremost to make sure there was a lawsuit that

14  had all of the causes of action that had been asserted in the other

15  claims that had been filed already.  Once all the causes of action were

16  present in a single complaint the City could then move to settle that

17  case and get a release of all the other claims that had been brought

18  against it in one action.

19         And so Mr. Paradis was provided with copies of other

20  complaints that had been filed against the City in order to prepare one

21  comprehensive action which would be Jones versus City of Los

22  Angeles.

23                                    * * *

24         **Q:**   Did you have an understanding that if the plan was put

25  into motion that the plaintiffs' counsel of record would be looking to

26  settle the case?

27         **A:**   Yes.

28                                    * * *

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

518357.8

**Q:** Was it your understanding that the City had given Mr. Paradis approval to file an action against the City if he wanted to do so or that he was being directed to do so after having raised the issue?

**A:** After having raised the issue with the City, *I believe he was directed to do so by the City.*

**Exh. 12**, pp. 182-183 (emphasis added).

57.     Mr. Kiesel also made other startling revelations, including that:

(a)     The City had provided non-public information to Mr. Paradis for him to use in drafting the *Jones v. PwC* complaint;

(b)     The City had attempted to coordinate the dismissal of the earlier filed class-actions and the filings of the *City v. PwC* and *Jones v. PwC* complaints to "train all guns on PwC at the same time"; and

(c)     The plan was to go to mediation before the *Jones v. City* case was even filed.  **Exh**. 11, p. 166-167.

**K.     Judge Berle Appoints Edward Robbins, Jr. as Special Master.**

58.     On June 17, 2019, Judge Berle entered an order appointing Edward M. Robbins, Jr. as Special Master/Auditor.  *See* Noe Decl., ¶ 30; **Exh. 42**.  **Exhibit 13** is a true and correct copy of Mr. Robbins's resume.  It was submitted by PwC as an exhibit in the *Jones v. City* and *City v. PwC* cases on March 25, 2019, recommending that Mr. Robbins be selected to be the Special Master.

59.     The June 17, 2019 Order set out Mr. Robbins's duties and responsibilities, which included, among other things, investigating and determining the disposition of the settlement funds in the *Jones v. City* case (including the $19 million paid in attorney's fees); the relationships among Mr. Paradis, Mr. Kiesel, Mr. Landskroner and Mr. Libman; and whether any of those attorneys committed any ethical violations or criminal offenses.  *See* McCann Decl., Exh. 2, p. 212, ¶ 273; **Exh. 1**, ¶ 273.

/ /

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**L.      The Expanded Scope of the IF Firm's Representation of Mr. Jones.**

60.     In light of Mr. Kiesel's deposition testimony and after developments, on June 30, 2019, the IF Firm entered into a new retainer agreement with Mr. Jones, which encompassed (a) continuing to represent him as a non-party in the *City v. PwC* case and individually in the *Jones v. City* case; (b) representing him as a witness in connection with a federal grand jury investigation that was being conducted by the United States Attorney's Office for the Central District of California ("**USAO**") relating to, among other things, the *Jones v. City* case; and (3) assessing bringing a potential action on his behalf against Mr. Paradis, the City and/or others.

**M.      Mr. Jones's Government Claim.**

61.     On July 22, 2019, we presented a Government Claim to the City on Mr. Jones's behalf pursuant to California Government Code sections 810 *et seq*. A copy of the Claim (without exhibits) is attached as Exhibit 5 to the McCann Declaration.  The Government Claim relied heavily on information that first came to light in Mr. Kiesel's May 28-30, 2019 deposition.  In fact, the Government Claim quoted Mr. Kiesel's testimony extensively and transcripts of those deposition sessions were included as exhibits to the Government Claim.

62.     On September 6, 2019, we received a letter from the LACAO rejecting Mr. Jones's Government Claim.  A copy of the letter is attached as Exhibit 6 to the McCann Declaration.  The letter stated, in part, that the claim was "being returned" because it was "not presented within six months after the event or occurrence," nor "within one year of the accrual of the cause of action."  *See* McCann Decl., Exh. 6, p. 408.

63.     By determining that the claim was not presented "within one year of the accrual of the cause of action," the LACAO foreclosed Mr. Jones from being able to administratively appeal the LACAO's determination and seek leave to present a late claim.  Under Government Code section 911.4(b), an application to present a late claim must be presented "within a reasonable time ***not to exceed one year after the***

22

1    ***accrual of the cause of action***.” *Id*. (emphasis added).

2         64.    Moreover, because of the LACAO's determination, any action Mr. Jones

3    filed against the City would have been subject to demurrer for noncompliance with

4    the time requirements for presentation of a Government Claim.  *See Rubenstein v.*

5    *Doe No. 1*, 3 Cal. 5th 903, 906 (2017) (“Complaints that do not allege facts

6    demonstrating either that a claim was timely presented or that compliance with the

7    claims statute is excused are subject to a general demurrer for not stating facts

8    sufficient to constitute a cause of action.”) (internal quotations omitted).

9    **N.    The City's Cover-Up.**

10        65.    On July 13, 2021, the Special Master filed with the Court and released to

11   the public his final report (the “**Report**”).[1]  The Report meticulously describes and

12   documents how senior members of the LACAO engaged in a cover-up spanning

13   several years, which was designed to prevent Mr. Jones, PwC, plaintiff's counsel in

14   the related class actions and Judge Berle from uncovering the schemes in which the

15   City had engaged with Mr. Paradis and others.  As the Report concluded, “[i]t was

16   critical for the City to conceal the fact that the City was, in substance, suing itself in

17   the *Jones v. City* civil action.”  Noe Decl., ¶ 33; **Exh. 44B**, p. 5.

18        66.    As detailed in the Report, the Special Master found that the City covered

19   up the following facts from Mr. Jones and others:

20        (a)    “Lawyers in the [LACAO], along with retained Special Counsel

21   for the City . . . hatched a three-part plan beginning in December 2014, to take control

22   of the ever-worsening [LADWP] billing debacle by: (1) shifting blame in the press

23   from [LADWP] to its billing-system consultant PwC; (2) suing PwC for damages

24   (*City v. PwC*); and (3) getting rid of the other class action suits filed against the City

25   through orchestrating a competing class action suit to become the lead suit, filed by a

26

27   [1] As discussed in Mr. Jones's concurrently filed Request for Judicial Notice
     (“**RJN**”), the Special Master's findings are admissible in this proceeding under the

28   public records and residual hearsay exceptions.  RJN, p. 15, ln. 25-p. 17, ln. 6.

23

1  ratepayer client who had unknowingly retained the City's Special Counsel (*Jones v.*
2  *PwC*)." *Id.*, p. 4.

3        (b)    "By mid-February 2015, Michael Feuer, James Clark,
4  Thomas Peters (the City Attorney and his two top deputies), Richard Brown,
5  Eskel Solomon, Richard Tom, Deborah Dorny ([LACAO] attorneys specifically
6  assigned to represent [LADWP]), and [LADWP] Board President Meldon Levine all
7  knew most or all of this three-part plan.  The plan included Paul Paradis and his
8  partner Gina Tufaro (two New York lawyers working for the City as Special
9  Counsel) who, along with a Los Angeles lawyer, Paul Kiesel, were simultaneously
10  representing both the City and [Mr. Jones] in the two suits contemplated against
11  PwC.  Mr. Clark, Mr. Peters, Mr. Solomon, Mr. Tom and Ms. Dorny all knew that
12  [Mr. Jones] was the ratepayer represented by Mr. Paradis, Ms. Tufaro and
13  Mr. Kiesel." *Id.*, p. 5.

14        (c)    "The City's outside retained counsel from Liner LLP . . . ,
15  Maribeth Annaguey and Angela Agrusa, voiced objections to the three-part plan,
16  which led the City to a mid-February [2015] decision to drop *Jones v. PwC* and swap
17  in *Jones v. City*, a 'white knight' suit that would be the prime class action and would
18  sideline the other ratepayer class action suits then pending against the City." *Id.*

19        (d)    "The 'white knight' suit was created through Mr. Paradis and
20  Mr. Kiesel's handpicking of friendly plaintiff's lawyers (Jack Landskroner of
21  Cleveland and Michael Libman of Los Angeles) to file a Paradis-drafted complaint
22  against the City (Mr. Paradis and Mr. Kiesel's client) and mail a Paradis-drafted
23  settlement offer to . . . the City." *Id.*

24        (e)    "Despite the City's public assertion that Mr. Paradis and
25  Mr. Kiesel, without the knowledge of anyone in the City, went 'rogue' in handing off
26  the *Jones v. City* complaint to Mr. Landskroner and Mr. Libman, the evidence
27  supports a finding the City directed and assisted in the City suing itself with a sham
28  lawsuit." *Id.*

24

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

1      (f)    "On April 1, 2015, Mr. Libman, at the direction of Mr. Paradis

2  and Mr. Kiesel, had the summons and complaint filed in *Jones v. City*.  Mr. Paradis

3  advised Mr. Kiesel to have Mr. Libman serve the summons and complaint on the

4  City." *Id.*, p. 25.

5      (g)    "[T]he Jones Settlement Proposal was drafted by Mr. Paradis and

6  the [confidential] information [in it] was obtained from the DWP by Mr. Paradis."

7  *Id.*, p. 26.

8      (h)    "Ms. Agrusa emailed Mr. Landskroner to confirm a meeting [with

9  Mr. Landskroner about the *Jones* Settlement Proposal] on April 8, 2015.  This was

10  done although the City Attorney had not tried to determine whether Mr. Jones had

11  filed the required notice of claim with the City, something which the record reflected

12  that the City Attorney's office apparently did in all other cases . . . ." *Id.*, p. 26.

13      (i)    "In a private conversation with Mr. Landskroner [on April 8,

14  2015], Ms. Agrusa told him she had settlement terms largely done and that a

15  'mediator will be good on addressing fees and for optics.'" *Id.*, p. 27.

16      (j)    "At the May 22[, 2015] status conference, when the Court asked

17  whether the parties had discussed alternative dispute resolution, Ms. Agrusa stated to

18  the Court it was 'the consensus of the parties that I have spoken to that it is premature

19  to consider an A.D.R. . . . .'  Ms. Agrusa's representation to the Court was false, as

20  she well knew." *Id.*, p. 27-28.

21      (k)    "On August 17, 2015, Mr. Landskroner filed an amended

22  complaint in *Jones v. City* . . . .  The changes were designed to aid the City in its suit

23  against PwC and not to aid the class . . . .  The Special Master has determined that the

24  amended complaint was filed to support the City's allegations against PwC and to

25  bolster the City's claims that PwC should be held liable for all the costs of settlement,

26  including all remediation costs and attorneys' fees.  It was one more step in the City's

27  'spin and sue' strategy." *Id.*, p. 31.

28      (l)    "Mr. Landskroner . . . misrepresented [facts] at the September 11,

25

1  2015, preliminary approval hearing. . . .  On behalf of the City, Ms. Agrusa

2  affirmatively adopted Mr. Landskroner's statements." *Id.*, p. 31.

3        (m)    "Mr. Landskroner made numerous misrepresentations in

4  subsequent pleadings and declarations he filed.  Counsel for the City, including

5  Ms. Agrusa, Ms. Annaguey, Mr. Tom, Mr. Solomon, Ms. Dorny, Mr. Clark,

6  Mr. Peters, Mr. Kiesel, Mr. Paradis and Ms. Tufaro, knew of these misrepresentations

7  and did nothing to either correct them or call them to the Court's attention." *Id.*, p.

8  31.

9        (n)    "The same counsel for the City, with Mr. Landskroner and

10  Mr. Libman, also failed to bring to the Court's attention, and actively concealed,

11  [material] facts . . . from the Court and plaintiffs' counsel in the other class actions."

12  *Id.*, p. 31.

13        (o)    "By no later than mid-April 2015, Ms. Agrusa and Ms. Annaguey

14  knew the City had decided to settle with Mr. Landskroner, excluding plaintiffs'

15  counsel in the other cases, and worked with the City to deceive counsel in the other

16  cases and the Court, including falsely representing to the Court, on the eve of the

17  mediation sessions with Judge Tevrizian, that it was too early to consider mediation."

18  *Id.*, p. 35.

19        (p)    "Counsel for the City, including Mr. Clark, Mr. Peters,

20  Ms. Agrusa, Ms. Annaguey, Mr. Tom, Mr. Solomon, Mr. Peters, Mr. Brown,

21  Mr. Paradis, Mr. Kiesel, and Ms. Tufaro, knew that the attorneys' fees recommended

22  by Judge Tevrizian in his mediator's proposals . . . were excessive, unjustified, and a

23  misappropriation of taxpayer funds but did nothing to alert Judge Tevrizian, the

24  [LADWP] Board or the Court to this."  *Id.*, p. 35.

25        (q)    "Counsel for the City and [Mr. Landskroner] knowingly misstated

26  [numerous facts] to the Court in pleadings filed in support of approval of the

27  settlement to perpetuate the coverup of their sham lawsuit . . . ." *Id.*, p. 36.

28        67.    In the end, the facts that the Special Master uncovered during his 22-

26

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1    month investigation led him to conclude that "a group of lawyers created a sham

2    lawsuit, lied about it to a Court to obtain a favorable judgment including millions in

3    fees, then obstructed the efforts to expose the sham lawsuit." **Exh. 44.C**, Appendix

4    F, p. 116.

5         68.    I declare under penalty of perjury under the laws of the United States of

6    America that the foregoing is true and correct.

7         Executed this 4th day of April 2022, at Los Angeles, California.

8

9

10                                    JEFFREY B. ISAACS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JEFFREY B. ISAACS ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

518357.8